UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SUNZ INSURANCE SOLUTIONS, LLC,

     Plaintiff,

                                 Case No. _____

v.

DOCKS SUTHERLAND, a/k/a
BENJAMIN PAUL SUTHERLAND,
DAVID HARVEY,
SHELDON ALTSCHULER,
WORKCENTRIC, LLC,
WORKCENTRIC 2, LLC,
WORKCENTRIC 3, LLC,
EMBRACEOR, LLC,
WC TOPCO, LLC, AND
WC CONTAINER, LLC,

     Defendants.

_____/

## **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff, Sunz Insurance Solutions, LLC ("<u>SUNZ</u>" or "<u>Plaintiff</u>"), sues

Defendants, Docks Sutherland a/k/a Benjamin Paul Sutherland ("<u>Docks</u>

<u>Sutherland</u>"), David Harvey, Sheldon Altschuler, WorkCentric, LLC,

WorkCentric 2, LLC, WorkCentric 3, LLC, Embraceor, LLC, WC TopCo, LLC,

and WC Container, LLC, (all, collectively, "<u>Defendants</u>") for injunctive relief

and damages:

73440649;4

**INTRODUCTION**

1.     This is an action against Defendants Embraceor, LLC, WorkCentric, LLC, WorkCentric 2, LLC, and WorkCentric 3, LLC (collectively, "WorkCentric" or "Insured") for breach of large deductible workers' compensation insurance policies (the "Insurance Policies") and related contracts (the "Transaction Documents") governing the insurance program (the "Insurance Program").

2.     Relatedly, this is also an action against WorkCentric's parent company and affiliates: WC TopCo, LLC, and WC Container, LLC, which entered into separate contracts obligating them to pay and secure repayment of money due from WorkCentric related to payment obligations under the Insurance Program.

3.     This is also an action against WorkCentric's former owner, Sheldon Altschuler, who executed a personal guaranty as to WorkCentric's obligations under the Insurance Program.

4.     Finally, this is also an action for breach of fiduciary duty against Docks Sutherland (a/k/a Benjamin Paul Sutherland), the current ultimate owner and controlling individual of WorkCentric, WC TopCo LLC, and WC Container, LLC, and for aiding and abetting breach of fiduciary duty against David Harvey, the current President of WorkCentric.

5.     Under WorkCentric's Insurance Program, in exchange for a substantial discount on its premium obligation, the Insured/WorkCentric is responsible to reimburse the first $500,000 of claim expenses for each claim brought by each of its injured workers. WorkCentric must provide collateral and security, typically in the form of money referred to as "<u>Loss Fund</u>," to reimburse the insurer for the claim expenses within its deductible layer (the $500,000 deductible).

6.     SUNZ has paid millions for claim expenses for the over 11,000 claims filed by WorkCentric's injured workers: Expenses all within the deductible layer.

7.     WorkCentric defaulted on its obligations to pay SUNZ amounts necessary to secure WorkCentric's reimbursement of these outstanding developed losses, although the Loss Fund has not yet been exhausted. WorkCentric also defaulted on their obligations to pay SUNZ amounts due for premium.

8.     WorkCentric and WC TopCo, LLC admitted they jointly owe SUNZ at least $25,800,582.90 as of October 11, 2023.

9.     During the development and growth of WorkCentric's Loss Fund deficit and to forestall and delay SUNZ from exercising its full rights under the Insurance Program, Defendants made hollow promises to pay. Despite repeated accommodations, and even a Forbearance Agreement, the

Defendants continue to breach their obligations and Defendants breached the Forbearance Agreement.

10.    As detailed below, SUNZ provided Defendants with written notices and opportunities to cure the defaults.

11.    Most recently, WorkCentric and WC TopCo, LLC were required to cure by making a payment to SUNZ on or before October 30, 2023, but WorkCentric and WC TopCo, LLC failed to pay the amounts due to SUNZ to continue the forbearance.

12.    Instead, Docks Sutherland and David Henry, respectively the owner and president of WorkCentric, WC TopCo LLC, and WC Container, LLC, have wasted WorkCentric corporate assets and harmed Plaintiff SUNZ, as the primary and secured creditor.

13.    SUNZ asks this Court to enforce the parties' agreements by awarding SUNZ damages for amounts Defendants have failed to pay.

14.    SUNZ also asks this Court to enforce WorkCentric and WC TopCo, LLC's stipulation to SUNZ's entitlement for immediate appointment of a receiver for the defendant entities and to injunctive relief in the event Defendants engage further in the actions described herein by immediately appointing a receiver and awarding injunctive relief.

15.    WorkCentric and WC TopCo, LLC have breached the contracts, including the security agreements, forbearance agreement, and pledge

agreement, as well as the underlying Insurance Program, all of which trigger WorkCentric and WC TopCo, LLC's stipulation to appointment of a receiver and to an award of injunctive relief to SUNZ.

16.    Upon information and belief, Docks Sutherland, with the assistance of David Harvey, is engaging in self-dealing and wasting assets and damaging the business, which serves as security for the amounts due to SUNZ.

17.    Absent control over WorkCentric being vested in a receiver immediately and the grant of injunctive relief against Docks Sutherland and David Harvey, the continuing harm to SUNZ will be irreparable.

## PARTIES, JURISDICTION, AND VENUE

18.    Plaintiff SUNZ Insurance Solutions LLC (defined above as "SUNZ") is a Florida limited liability company with its principal place of business in Manatee County, Florida.

19.    The sole member of Plaintiff SUNZ is SUNZ Insurance Services, LLC, whose sole member is Acrisure MGA, LLC, whose sole member is Acrisure, LLC, whose sole member is Acrisure Intermediate, Inc., which is a corporation incorporated in Delaware with a principal place of business in Michigan. Accordingly, for purposes of diversity jurisdiction, SUNZ is a citizen of Delaware and Michigan. *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004) ("a limited liability company is a citizen of any state of which a member of the company is a

citizen"); *Hart v. Terminex Int'l*, 336 F.3d 541, 543 (7th Cir. 2003); 28 U.S.C. §1332(c)(1) ("a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business").

20.    Defendant Docks Sutherland is an individual residing in New York City and is a citizen of New York.

21.    Defendant WC Container, LLC, is a limited liability company registered in Delaware, whose sole member is Docks Sutherland (a New York citizen). Accordingly, for purposes of diversity jurisdiction, Defendant WC Container, LLC is a citizen of New York.

22.    Defendant WC TopCo, LLC, is a limited liability company registered in Delaware, whose sole member is WC Container LLC, whose sole member is Docks Sutherland (a New York Citizen). Accordingly, for purposes of diversity jurisdiction, Defendant WC TopCo, LLC is a citizen of New York.

23.    Defendant Embraceor, LLC, is a limited liability company registered in Delaware, whose sole member is WC TopCo LLC, whose sole member is WC Container LLC, whose sole member is Docks Sutherland (a New York Citizen). Accordingly, for purposes of diversity jurisdiction, Defendant Embraceor, LLC is a citizen of New York.

24.    Defendant WorkCentric, LLC, is a limited liability company registered in Delaware, whose sole member is WC TopCo LLC, whose sole

member is WC Container LLC, whose sole member is Docks Sutherland (a New York Citizen). Accordingly, for purposes of diversity jurisdiction, Defendant WorkCentric, LLC is a citizen of New York.

25.    Defendant WorkCentric 2, LLC, is a limited liability company registered in Delaware, whose sole member is WC TopCo LLC, whose sole member is WC Container LLC, whose sole member is Docks Sutherland (a New York Citizen). Accordingly, for purposes of diversity jurisdiction, Defendant WorkCentric 2, LLC is a citizen of New York.

26.    Defendant WorkCentric 3, LLC, is a limited liability company registered in Delaware, whose sole member is WC TopCo LLC, whose sole member is WC Container LLC, whose sole member is Docks Sutherland (a New York Citizen). Accordingly, for purposes of diversity jurisdiction, Defendant WorkCentric 3, LLC is a citizen of New York.

27.    Defendant Sheldon Altschuler is an individual residing in Parkton, Maryland, and is a citizen of Maryland.

28.    Defendant David Harvey is an individual residing in Fairfield, Connecticut, and is a citizen of Connecticut.

29.    This action invokes this Court's subject matter jurisdiction under 28 U.S.C. § 1332(a) because the action is between citizens of different States and because the amount-in-controversy exceeds $75,000.

30.    This Court has personal jurisdiction over the Defendants because the causes of action against Defendants arise, in whole or in part, out of contracts and business dealings with SUNZ in Manatee County, Florida, causing SUNZ to suffer injury and damages in Manatee County, Florida. In addition, each Defendant consented to personal jurisdiction in Florida by contract.

31.    Venue is proper under 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to the claims occurred in Bradenton, Florida, where SUNZ is headquartered and because each Defendant consented to venue in Manatee County, Florida, which is within this District.

## GENERAL ALLEGATIONS

### A.    SUNZ's Business Operations

32.    SUNZ is the appointed managing general agent ("MGA") to the insurance companies under whose authority SUNZ caused workers' compensation insurance policies (the "Insurance Policies") to be issued to Defendants Embraceor, LLC, WorkCentric, LLC, WorkCentric 2, LLC, and WorkCentric 3, LLC (collectively, "WorkCentric" or "Insured").

33.    As the appointed MGA, it is SUNZ's obligation to bill and collect all money due (including, but not limited to, Premium, Loss Fund, Deductible Reimbursement, and other amounts) as related to the Insurance Policies so issued.

34.     SUNZ is routinely appointed by insurance carriers to act as a producer and program manager, to market and bind business, and to service accounts on behalf of insurance carriers.

35.     SUNZ specializes in helping professional employer organizations ("PEOs"), staffing companies, and large employers get workers compensation insurance that fits these specific type of companies' business needs and operational challenges.

36.     Staffing companies and PEOs are businesses that contract with client companies to handle the companies' personnel-related matters, such as workers' compensation insurance, payroll processing and payroll taxes, employee benefits, reemployment assistance tax, employee staffing support, and other similar personnel related matters. Unlike a PEO, a staffing company also engages in the employee-hiring process and associated tasks.

37.     As to Defendants, SUNZ served as the appointed MGA for insurance companies including: United Wisconsin Insurance Company ("UWIC"), and SUNZ's affiliate, SUNZ Insurance Company ("SIC").

38.     UWIC and SIC (the "Insurers") appointed SUNZ as MGA with the authority, among other things, to solicit, receive, accept, bind, issue, and transmit proposals for insurance programs on their behalf.

39.     The Insurers appointed SUNZ to act as a fiduciary to the Insurers and to hold all premiums SUNZ collected and received.

**B.** **WorkCentric Contracted with SUNZ for Workers' Compensation Insurance**

40. WorkCentric operates as both a staffing company and PEO, providing employees at various worksites of their clients.

41. WorkCentric contracted with SUNZ to procure Workers' Compensation Insurance to and for the benefit of WorkCentric with coverage beginning in December 2019.

42. SUNZ procured Workers' Compensation Insurance for WorkCentric with UWIC and SIC.

43. SIC agreed to reinsure, on a 100% indemnity reinsurance basis, the full amount of UWIC's liability arising under Insurance Policies placed by SUNZ. In other words, on the insurer's side of this transaction, the ultimate liability for losses, costs, and expenses falls on SUNZ and SIC.

44. Because SUNZ is the managing general agent for the Insurers that issued the Insurance Policies at issue and operates under authority granted to it by the Insurers, and also because SUNZ is the contracting party with WorkCentric, SUNZ has specific authority to sue for all relief sought herein, including on behalf of SIC and UWIC.

45. For each policy year and with respect to specific jurisdictions, the terms of the Workers' Compensation Insurance provided to WorkCentric are

set forth in an Insurance Policy (collectively defined above as the "Insurance Policies") identifying SUNZ as the producer.

46.    In addition to the Insurance Policies, there are several other related documents which constitute integral parts of the Insurance Program for each year.

47.    For example, for the most recent year, January 1, 2023 – January 1, 2024 (the "2023 Policy Period"), WorkCentric executed a Quotation Agreement (the "2023 Quotation"), which is attached as **Exhibit 1**. The 2023 Quotation uses the estimated payroll provided by WorkCentric to estimate WorkCentric's payment obligations and discounts related to the large deductible workers' compensation insurance policy.

48.    WorkCentric also executed the 2023 Loss Fund Management Agreement (the "2023 LFMA"), which is attached as **Exhibit 2**. The 2023 LFMA also describes WorkCentric's payment obligations with respect to Loss Fund.

49.    WorkCentric executed the Security Agreement for the Insurance Program (the "January 2023 Security Agreement"), which is attached as **Exhibit 3**. The January 2023 Security Agreement also describes WorkCentric's payment obligations and SUNZ's rights as a secured creditor.

50.    To further secure WorkCentric's promise to pay SUNZ, the then-owner of WorkCentric, Sheldon Altschuler, executed the Guaranty for the

Insurance Program (the "Altschuler Guaranty"), which is attached as **Exhibit 4**.

51.    The terms of the Workers' Compensation Insurance provided to WorkCentric are set forth in an Insurance Policy identifying SUNZ as the producer, issued by SIC/UWIC. A true and correct copy of the policy for the 2023 Policy Period (the "2023 Policy") is attached as **Exhibit 5**. Because the Insurance Policies are voluminous in page count and size, SUNZ attaches only the 2023 Policy and will provide copies if requested to Defendants and the Court.

**C.    WorkCentric's Payments Due to SUNZ are Based on Accurate Payroll Amounts and Classification Codes**

52.    WorkCentric is obligated to pay premiums to SUNZ for workers' compensation insurance coverage (the "Premiums").

53.    Insurance Premiums are calculated based upon the amount of WorkCentric's payroll and the classification codes associated with each employee on WorkCentric's payroll.

54.    Classification codes are determined based on the business operations of WorkCentric's clients (*i.e.*, the job sites where WorkCentric's employees are sent to work).

55.    The correct classification code for each employee is determined by establishing (a) the industry category for the client-company, (b) the type of product or service the client-company provides, and (c) the daily

responsibilities of the employee at the client-company. This is not an exhaustive list but provides an example of the inquiry required to establish the correct employee classification code to determine the correct premium to be charged.

56.    WorkCentric is obligated to report to SUNZ accurately both the amount of payroll and the classification codes for each submitted payroll.

57.    The Premium payment and periodic Loss Fund payments due from WorkCentric are always subject to change, as a function of each WorkCentric payroll amount and corresponding classification codes for the employees encompassed by that payroll amount.

## D.    WorkCentric Deductible Credit and Premium Discount

58.    To reduce the cost of the Premiums and obtain other favorable terms from SUNZ, WorkCentric requested a large deductible workers' compensation insurance program.

59.    WorkCentric applied and was approved for a large deductible insurance policy with a $500,000.00 per accident deductible (the "Large Deductible Amount"), meaning that WorkCentric is obligated to reimburse SUNZ up to $500,000.00 on each claim submitted by an injured WorkCentric employee (the "Deductible Reimbursement").

60.    In other words, in addition to paying Premiums, WorkCentric is also obligated to reimburse all claims and claim related expenses arising under

the subject insurance, up to the Deductible Reimbursement amount of $500,000 per accident.

61.    From a process standpoint, a claim is submitted by an injured WorkCentric employee, the claim is paid by SUNZ, and reimbursement is then sought by SUNZ from the Loss Fund paid by WorkCentric.

62.    The Loss Fund is then replenished on a weekly basis by weekly payments made by WorkCentric along with weekly premium payments.

63.    Because WorkCentric was approved for a large deductible plan, it received a substantial discount on the insurance premium each year.

64.    WorkCentric's premium discount reflected WorkCentric's promise to take on the first $500,000 of claim expenses per claim.

65.    If WorkCentric were to have received a standard insurance policy without a deductible component (typically called a guaranteed cost or first-dollar policy), WorkCentric would have paid the 100% full premium charge without any corresponding claim expense reimbursement obligation.

66.    WorkCentric desired the greatly reduced premium in exchange for promising to adhere to the large deductible payment protocol and Loss Fund payment obligations.

67.    For example, for the 2023 Policy Period, WorkCentric received a discount of over $6.1 million in premium because it was approved for a large deductible plan.

68.    In exchange for this massive reductions in premium obligations and other consideration, WorkCentric agreed to the Deductible Reimbursement obligation, which is explicitly set forth in the Insurance Policies.

69.    WorkCentric is also required to secure its reimbursement obligation, which is also explicitly set forth in the Insurance Policies.

70.    To secure its obligations to pay/reimburse SUNZ for Deductible Reimbursements, WorkCentric is obligated to reimburse SUNZ money to be used by SUNZ to reimburse Deductible Reimbursement amounts, among other expenses of WorkCentric, as such expenses arose. These payments are defined above as Loss Fund.

71.    WorkCentric agreed to provide and maintain a Loss Fund that SUNZ has used, and will continue to use, to pay claims and claim related expenses arising within the $500,000 deductible layer as required by the deductible endorsement to WorkCentric's Insurance Policies.

72.    WorkCentric agreed to maintain a minimum balance in the Loss Fund in an amount no less than the sum of 200% of open case reserves plus 100% of the per accident Deductible Amount (the "Minimum Loss Fund Amount"). *See* Ex. 5, 2023 Policy, Program Values Schedule, Schedule D (listing the "Minimum Loss Development Amount" as "200% of Case Reserves + 1 Deductible"); Ex. 2, 2023 LFMA, ¶ B.I.B. ("You agree to maintain a Loss

Fund at all times during the Insurance Program. Your Loss Fund or Minimum Loss Fund shall be the combined amount of (a) two hundred percent (200%) of open case reserves plus (b) one hundred percent (100%) of the per accident Deductible Amount under the policy.").

73.    Where there is a material change in the loss experience or risk, WorkCentric is required to pay more in Loss Fund to secure WorkCentric's obligation for the Deductible Reimbursement. *See* Ex. 2, 2023 LFMA, ¶ B.I.C. ("If Sunz, in its sole discretion, deems there is a material change in the loss experience or risk of Your Insurance Program, Sunz may require, and You agree to provide, additional Loss Fund in an amount set to fully developed loss using the then current advisory loss development factors as established by either (a) the National Council on Compensation Insurance (NCCI), or (b) the applicable rating bureau."); Ex. 5, 2023 Policy, Large Risk Alternative Rating and Insurance Program Agreement, ¶ 7 ("Security … if at any time UWIC determines that Security is inadequate, UWIC may, at its sole discretion, adjust Security.").

74.    There has been a material change in the risk based on (a) the sale of the WorkCentric business, (b) WorkCentric's binding business with a higher loss ratio than originally presented to SUNZ, and (c) because of WorkCentric's non-payment and breaches.

75.     Accordingly, SUNZ is contractually permitted to require WorkCentric to maintain the Loss Fund in an amount equal to all incurred losses and allocated loss adjustment expenses on a fully developed basis that includes IBNR (incurred but not reported losses), using the then current loss development factors as established by the NCCI (the National Council on Compensation Insurance), as its Loss Fund amount (the "Fully Developed Amount"). *See id.* While SUNZ has not exercised this right to seek the Fully Developed Amount, it reserves its right to do so.

76.     The parties agreed the Loss Fund would be governed by the most recent contracts for both the 2023 Policy Period, and all prior policy periods. *See* Ex. 5, 2023 Policy, Large Risk Alternative Rating and Insurance Program Agreement, § 7 Wrapped-Up Security; Ex. 2, 2023 LFMA, ¶ B.3.

77.     Claims filed by WorkCentric's injured employees arising under WorkCentric's Insurance Policies were adjusted and paid by the Insurers and continue to be adjusted and paid by the Insurers.

78.     For clarity, this dispute relates to the commercial relationship between WorkCentric and SUNZ as well as WorkCentric's reimbursement and payment obligations to SUNZ.

79.     This dispute does not relate to the individual submitted claims of injured WorkCentric employees pursuant to coverage afforded under the subject Insurance Policies.

80.    WorkCentric's injured employees will continue to receive, as they have at all times, all required benefit, care, and indemnity obligated to them.

81.    SUNZ and SIC are ensuring all injured employees continue to receive the care, treatment, and benefits to which they are entitled to under the Insurance Policies despite WorkCentric's refusing to pay the amounts due to SUNZ under the Insurance Policies.

## E.    **Docks Sutherland Purchases WorkCentric and Defendants' Repeatedly Fail to Honor their Financial Obligations and Commitments**

82.    After the relationship between SUNZ and WorkCentric began, Docks Sutherland purchased WorkCentric from Sheldon Altschuler.

83.    Following Docks Sutherland's purchase of WorkCentric, WorkCentric's financial position began to decline and WorkCentric sought accommodations and forbearances from SUNZ, in its capacity as a WorkCentric secured creditor.

84.    Prior to Dock Sutherland's purchase of WorkCentric, WorkCentric provided SUNZ with a $4 million Letter of Credit from First Horizon Bank as part of WorkCentric funding its Loss Fund obligations.

85.    On March 6, 2023, Docks Sutherland and David Harvey requested SUNZ reduce the collateral funding mechanisms to permit Docks Sutherland to contribute more capital. They further requested SUNZ permit them to

dissolve the Letters of Credit from First Horizon and replace them with Letters of Credit from First Republic Bank.

86.    On March 15, 2023, Docks Sutherland requested SUNZ permit the then-current $4 million Letter of Credit to expire on the condition that Docks Sutherland replace it with cash within two-weeks thereafter.

87.    On March 16, 2023, SUNZ provided Defendants with a draft promissory note for WorkCentric to sign, memorializing a twenty-one-day payment obligation to cover the time between when the First Horizon Letter of Credit would expire and when Docks Sutherland promised to replace the Letter of Credit with cash. SUNZ requested Dock Sutherland also execute a personal guaranty to secure the promissory note.

88.    Alternatively, SUNZ proposed cashing the $4 million letter of credit, for deposit into WorkCentric's Loss Fund account, to provide WorkCentric with the immediate benefit of the money as required by their Insurance Program.

89.    In response to the proposal to cash the letter of credit, David Harvey, on behalf of WorkCentric and Docks Sutherland, told SUNZ a "tax issue" weighed against WorkCentric pursuing SUNZ's proposal.

90.    In response to the draft note and request for personal guaranty, David Harvey, on behalf of WorkCentric and Docks Sutherland, told SUNZ that Dock Sutherland would provide a $3 million Letter of Credit from

Republic Bank to help obviate the need for WorkCentric to execute the proposed promissory note.

91.    Over the next couple of weeks, Docks Sutherland avoided phone calls and communications from SUNZ regarding the proposed note and replacement of the $4 million letter of credit.

92.    Upon information and belief, around April 30, 2023, when the $4 million letter of credit expired, Docks Sutherland and/or David Harvey caused the $4 million to be transferred to a separate entity ("Immediate Solutions, Inc.") affiliated or owned by Docks Sutherland, without any benefit to WorkCentric.

93.    On April 3, 2023, Docks Sutherland agreed to execute a promissory note of $4 million with a single payment due to SUNZ on or before April 24, 2023.

94.    Despite repeated communications and promises from the Defendants over the next month, Docks Sutherland refused to execute the note.

95.    On May 13, 2023, Docks Sutherland returned the note with material changes, including changing the payment date to August 11, 2023 (well beyond the initial April 2023 date).

96.    On May 15, 2023, SUNZ again sent Docks Sutherland a revised promissory note, which incorporated certain changes made by Docks

Sutherland and increased the amount to $8 million because WorkCentric's Loss Fund deficit had continued to worsen during the intervening period.

97.    On May 24, 2023, Docks Sutherland communicated to SUNZ that he was working with his lawyers on the note and that money was getting "freed up in the Caymans" to pay off the note quickly and to pay to SUNZ the full amount of WorkCentric's Loss Fund deficit.

98.    On May 31, 2023, Docks Sutherland sent SUNZ a revised promissory note and security agreement, as modified by Defendants' attorneys.

99.    On June 2, 2023, SUNZ again sent Docks Sutherland a revised note, accepting some changes made by Defendants and increasing the amount to $10,648,487 because the Defendants' Loss Fund deficit had continued to worsen during the intervening period.

100.    Between June 2, 2023 and June 14, 2023, the parties continue to discuss the note.

101.    On June 14, 2023, after the revised note had been sent to Docks Sutherland for his electronic signature, Docks Sutherland notified SUNZ he would not sign the documents but wanted them to be signed by David Harvey or Sheldon Altschuler instead.

102.    Docks Sutherland then returned the note and security agreement to SUNZ, unilaterally changing the payment date to September 12, 2023

(without notice to SUNZ of his changes) with the documents signed by David Harvey as "authorized signatory."

103. On June 15, 2023, Docks Sutherland continued to provide assurances to SUNZ, saying "SUNZ won't be left out in the cold." SUNZ asked for confirmation that David Harvey had authority to bind WorkCentric to the documents he executed.

104. Docks Sutherland refused to provide information on David Harvey's authority to sign and refused to respond to questions about his unilateral changes to the documents.

105. By July 17, 2023, WorkCentric's Loss Fund deficit was increasing by approximately $1 million per month.

106. To confirm, as stated previously, all claims were being paid by SUNZ for all WorkCentric's injured employees without abatement or delay.

107. Upon information and belief, WorkCentric began doing business with new clients with higher-loss ratios at the same time the WorkCentric was reducing and failing to make the required Loss Fund contributions.

108. On July 18, 2023, Docks Sutherland spoke with SUNZ and agreed to increase the loss funding rate, to bring payments current, and to sign a new note reflecting the then-current Loss Fund deficit of $13,993,287.

109. SUNZ immediately sent a new promissory note and security agreement to Defendants on July 18, 2023.

110.   David Harvey, as Executive Vice-President and Chief Operating Officer of Defendants Embraceor, LLC, WorkCentric 2, LLC, WorkCentric 3, LLC, and WC TopCo, LLC (collectively, "Payors"), executed a Commercial Promissory Note dated July 18, 2023 (the "July 2023 Note"), which is attached as **Exhibit 6.** In the July 2023 Note, Payors promised to pay SUNZ a single payment of $13,993,287 by September 12, 2023.

111.   To secure the July 2023 Note, David Harvey, as Executive Vice-President and Chief Operating Officer of, and on behalf of, the Payors, executed a Security Agreement dated July 20, 2023 (the "July 2023 Security Agreement"), which is attached as part of **Exhibit 6**.

112.   Payors sent the executed July 2023 Note and July 2023 Security Agreement to SUNZ on July 20, 2023.

113.   By August 14, 2023, WorkCentric's Loss Fund deficit had worsened to exceed $18 million.

114.   To address the growing deficit, SUNZ presented a variety of options to Defendants to ameliorate or otherwise stem the worsening deficit in the Loss Fund; Defendants refused to respond.

115.   SUNZ served a Notice of Default by letter dated August 28, 2023, to Payors through their officers: Mr. Sutherland as CEO, Mr. Harvey as COO and EVP, and Mr. Altschuler as President, which is attached as **Exhibit 7**, with respect to the 2023 LFMA and related documents for the Insurance

Program. As of the August 28, 2023 letter, WorkCentric owed SUNZ $20,931,510: $1,896,454 for Premiums and $19,035,056 for Loss Fund.

116.   On August 28, 2023, Docks Sutherland represented to SUNZ he had lenders lined up and ready to provide capital to WorkCentric and to Dock Sutherland that would enable WorkCentric and Docks Sutherland to repay SUNZ and bring all deficits current.

117.   On August 29, 2023, Docks Sutherland orally agreed to pledge stock in WorkCentric in exchange for forbearance by SUNZ on executing its rights to secure and/or liquidate the collateral under the January 2023 Security Agreement and July 2023 Security Agreement.

118.   But later that same day, SUNZ learned Defendants were trying to move their workers' compensation business away from SUNZ and to further impair Defendants' ability to repay the amounts due to SUNZ.

119.   Even after August 29, 2023, Docks Sutherland continued to provide SUNZ with verbal assurances and to appear to negotiate the terms of a potential forbearance agreement.

120.   With respect to the July 2023 Note, SUNZ served a Notice of Default Under Promissory Note by letter dated September 19, 2023, to Payors, Mr. Sutherland, Mr. Harvey, and Mr. Altschuler ("September 2023 Default Letter"), which is attached as **Exhibit 8**.

121.  As of September 19, 2023, Payors had failed to pay the full principal amount of $13,993,287, which was due to be paid by September 12, 2023. SUNZ provided Payors until September 29, 2023, to cure the default.

122.  The parties continued to negotiate, with SUNZ seeking to find an amicable business resolution.

123.  On October 5, 2023, after further delays by Defendants and a worsening collateral deficit, SUNZ served a notice of cancellation of the Insurance Policies.

124.  SUNZ also served a Notice of Default to Sheldon Altschuler on his personal guaranty, on October 5, 2023. A true and correct copy of the October 5, 2023 Notice to Sheldon Altschuler is attached as **Exhibit 9**.

**F.    The Forbearance Agreement and Pledge Agreement**

125.  Immediately after the Notices of Cancellation were served, Defendants requested forbearance, withdrawal of the notice of cancellation, and other financial accommodations from SUNZ.

126.  The parties and their counsel negotiated the terms for a forbearance agreement and pledge agreement in early October 2023.

127.  Defendants requested, as a term to providing the Forbearance Agreement, that SUNZ withdraw the Notices of Cancellation and reinstate the insurance. SUNZ performed as requested and withdrew the Notices of Cancellation.

128.   Defendants, Embraceor, LLC, WorkCentric, LLC, WorkCentric 2, LLC, WorkCentric 3, LLC, and WC TopCo, LLC (collectively, "Obligors") executed a Forbearance Agreement dated October 11, 2023.

129.   A true and correct copy of the Forbearance Agreement is attached as **Exhibit 10**.

130.   As stated in the Forbearance Agreement, the Obligors agreed and admit they owe SUNZ not less than **$25,800,582.90** for Premiums, Loss Fund, and taxes and surcharges.

131.   The Obligors recognized the validity of the July 2023 Note, in the original principal amount of $13,993,287, and the July 2023 Security Agreement, and the 2023 LFMA.

132.   The Obligors also executed a Pledge Agreement dated October 11, 2023.

133.   In addition to covenants of the Obligors, Dock Sutherland also executed the Pledge Agreement, for purposes of Sections 1 and 5 thereunder.

134.   A true and correct copy of the Pledge Agreement is attached as part of **Exhibit 10**.

135.   In the Pledge Agreement, the Obligors and Docks Sutherland granted SUNZ a continuing first priority security interest in all of their existing or arising property (as defined in the Pledge Agreement as "Pledged

Collateral"), to secure prompt payment and performance in full when due of all their obligations to SUNZ.

136.   In the Pledge Agreement, the Obligors promised they would not sell, convey, assign, transfer, or otherwise dispose of any of the Pledged Collateral.

137.   Upon information and belief, and based on the payment delays and defaults described herein, WorkCentric was insolvent on or before April 1, 2023.

**G.    Defendants Breach the Forbearance Agreement**

138.   The parties agreed the Forbearance Agreement would terminate if the reserves under the 2023 LFMA became underfunded by at least $23 million.

139.   The Obligors violated the Forbearance Agreement and Pledge Agreement with multiple, immediate failures to comply with the required payment and due diligence provisions.

   a.  The Obligors failed to provide the required payments to SUNZ or to provide an update on the timeline for payments.

   b.  The Obligors failed to provide all bank account information, including failing to identify the bank contacts for each bank account.

c.  The Obligors failed to provide PIPE Technology documents, evidencing any indebtedness owed, the security agreement, and description of collateral.

d.  The Obligors failed to provide the documents memorializing the sale of WorkCentric to Docks Sutherland.

e.  The Obligors failed to produce all communications with the IRS.

f.  The Obligors failed to provide information on the disbursements being made from the Obligors' accounts.

140.   Upon information and belief, there is a high likelihood Docks Sutherland, with the assistance of David Harvey, is dissipating SUNZ's Pledged Collateral (*i.e.*, the assets of WorkCentric and WC TopCo, LLC), especially in light of the violations of the Forbearance Agreement and Pledge Agreement alleged above.

141.   The parties agreed the Forbearance Agreement would terminate automatically if any Obligors transferred any Pledged Collateral to any third party outside the ordinary course without express written consent form SUNZ.

142.   The parties agreed that, upon termination of the Forbearance Agreement, SUNZ would be entitled to: (i) obtain judgment against the Obligors; (ii) seek any relief authorized by the underlying Transaction Documents; and (iii) Obligors would waive personal service.

**H.    <u>SUNZ Declares Defendants in Default</u>**

143.    On October 18, 2023, SUNZ served Defendants, Docks Sutherland, David Harvey, Sheldon Altschuler, WC Container, LLC, Embraceor, LLC, WorkCentric, LLC, WorkCentric 2, LLC, WorkCentric 3, LLC, and WC TopCo, LLC, with notice of a default under the Forbearance Agreement (the "<u>Default Notice</u>"). A true and correct copy of the Default Notice is attached as part of **Exhibit 10**.

144.    In the Default Notice, SUNZ provided Defendants with an opportunity to cure by making a payment to SUNZ of $6,074,717 by October 30, 2023.

145.    Defendants failed to make any payment to SUNZ and have failed to cure the default.

146.    Section 7(a) of both the January 2023 Security Agreement and July 2023 Security Agreement provides an "Event of Default" includes the situation, as here, where WorkCentric "fails to timely pay when due."

147.    Section 7(b)(ii) of both the January 2023 Security Agreement and July 2023 Security Agreement provides in the event of an Event of Default, SUNZ shall be entitled to take possession and control of all or any part of the Collateral (as defined in § 1, to include all WorkCentric's receivables, among other assets, and proceeds therefrom) and sue for any and all amounts due to SUNZ.

148.   Section 7(b)(ii) of both the January 2023 Security Agreement and July 2023 Security Agreement provides for the appointment of a receiver. *See* Ex. 3, January 2023 Security Agreement § 7(b)(ii) ("**Receiver.** Obtain the appointment of a receiver for all or any of the Collateral, Pledgor hereby consenting to the appointment of such a receiver and agreeing not to oppose any such appointment."); Ex. 6, July 2023 Security Agreement § 7(b)(ii) (same)

149.   Pursuant to the Pledge Agreement, Obligors were required to suspend certain actions until the they were able to cure a default after notice.

150.   Obligors have failed to comply with their obligations under the Pledge Agreement and, upon information and belief, have been making disbursements to benefit Defendant Docks Sutherland or to pay preferred unsecured creditors, to the detriment of WorkCentric and detriment of SUNZ as a secured creditor of WorkCentric.

151.   Upon information and belief, around October 27, 2023, Docks Sutherland and/or David Harvey, caused over $1 million to be transferred to a separate entity ("Two Baboons") owned by Docks Sutherland, without any benefit to WorkCentric.

## I.    The Amounts at Issue

152.   As of October 11, 2023, SUNZ has paid over $50 million for claims filed under the Insurance Policies, within the deductible layer. WorkCentric

previously provided the funds necessary to reimburse SUNZ for these payments.

153.    As of October 11, 2023, SUNZ was holding over $29 million in Loss Fund.[1]

154.    As of October 11, 2023, the open reserves were over $26 million.

155.    This minimum Loss Fund amount is calculated as 200% of reserves (limited by the deductible), plus one deductible (i.e., $500k) (the "200%+1 Figure").[2] And thus, the Loss Fund deficit due form WorkCentric to SUNZ is calculated by subtracting the money held in Loss Fund from the 200%+1 Figure.

156.    Accordingly, as of October 11, 2023, the minimum amount WorkCentric was obligated to pay for Loss Fund was over $23 million.

---

[1] As a frame of reference, SUNZ held $32,052,406 in the Loss Fund, at the inception of the 2023 Policy Year, at which time WorkCentric agreed to continue funding the Loss Fund account at "66% of Weekly Manual Premium" recognizing the need to increase the Loss Fund to address developing and future claims. *See* Ex. 5, 2023 Policy, Program Values Schedule, p.3, Schedule I. As claims continue to develop and new claims continue to be filed, increasing WorkCentric's Deductible Reimbursement obligation, the Loss Fund continues to decline.

[2] SUNZ is entitled to seek a larger, fully developed figure, rather than the minimum figure, as set forth above. *See* ¶¶ 72-75 *supra*. SUNZ reserves its rights to seek the fully developed figure.

157.   Separate and apart from the amounts due for Loss Fund, as of October 11, 2023, WorkCentric owes SUNZ over $2.3 million for unpaid Premiums.

158.   Separate and apart from the amounts due for Loss Fund and Premiums, as of October 11, 2023, WorkCentric owes SUNZ $456,024.92 for taxes and surcharges.

159.   Accordingly, as of October 11, 2023, WorkCentric owes SUNZ not less than $25,800,582.92 for Loss Fund, Premium, and taxes and surcharges, which amounts the Obligors have admitted in writing is owed to SUNZ.

160.   This Loss Fund amount is subject to modification based on continuing claim development (*i.e.*, activities on open claims, the filing of new claims, the re-opening of closed claims).

161.   The Premium amount is also subject to modification based on the continuing coverage and any offsets from Loss Fund held.

162.   Again, as of October 11, 2023, WorkCentric owes SUNZ not less than $25,800,582.92 for Loss Fund and Premium, which amounts continue to increase, and WorkCentric is also obligated to pay SUNZ interest, costs, and attorney's fees.

163.   All conditions precedent to filing this action have occurred or been waived.

164.  SUNZ is represented by the undersigned law firm and is obligated to pay the law firm a reasonable fee.

### COUNT I – BREACH OF CONTRACT (LOSS FUND)
### (SUNZ v. EMBRACEOR, LLC, WORKCENTRIC, LLC, WORKCENTRIC 2, LLC, AND WORKCENTRIC 3, LLC)

165.  SUNZ reincorporates and re-alleges paragraphs 1 through 164 as though fully set forth herein.

166. SUNZ has paid over $56 million for claims filed under the Insurance Policies, within the deductible layer, as of October 11, 2023.

167. As of October 11, 2023 Embraceor, LLC, WorkCentric, LLC, WorkCentric 2, LLC, and WorkCentric 3, LLC (defined above collectively as, "WorkCentric" or "Insured") owe SUNZ not less than **$25,800,582.90** to satisfy their obligations under the 2023 LFMA to provide additional cash for Loss Fund, Premiums, and taxes and surcharges.

168.  WorkCentric admitted it owed not less than $25,800,582.90 to SUNZ in the Forbearance Agreement.

169.  The Loss Fund adjusts based on the ongoing administration of claims for WorkCentric's injured employees and the terms of the WorkCentric's insurance program.

170. The Premiums remains due and owing from WorkCentric to SUNZ.

171.  WorkCentric has not paid the amounts due to SUNZ.

172.    WorkCentric has breached the terms of the Insurance Policies and 2023 LFMA by failing to pay SUNZ the amounts due.

173.    SUNZ has been damaged by WorkCentric's failure to perform its obligations under the Insurance Policies and 2023 LFMA, including WorkCentric's failure to pay the amounts due and owing for Loss Fund, Premiums, and the attorney's fees and costs incurred to enforce the terms of these contracts.

**WHEREFORE**, SUNZ respectfully requests this Court enter judgment against Embraceor, LLC, WorkCentric, LLC, WorkCentric 2, LLC, and WorkCentric 3, LLC for money damages in an amount to be determined at trial, but not less than **$25,800,582.90** as of October 11, 2023, plus any additional amounts due after this date, plus interest, in favor of SUNZ; awarding SUNZ its reasonable attorney's fees and costs pursuant to ¶ A.2 and A.8 of the 2023 LFMA; and awarding such additional and further relief as this Court deems just and proper.

### COUNT II – BREACH OF CONTRACT (SECURITY AGREEMENTS) (SUNZ v. EMBRACEOR, LLC, WORKCENTRIC, LLC, WORKCENTRIC 2, LLC, WORKCENTRIC 3, LLC, and WC TOPCO LLC)

174.    SUNZ reincorporates and re-alleges paragraphs 1 through 164 as though fully set forth herein.

175.   To secure WorkCentric's obligations, Defendants Embraceor, LLC, WorkCentric, LLC, WorkCentric 2, LLC, and WorkCentric 3, LLC (defined above collectively as "<u>WorkCentric</u>" or "<u>Insured</u>") made and delivered the January 2023 Security Agreement, which is attached as Exhibit 3.

176.   To further secure WorkCentric's obligations, including those obligations under the July 2023 Note, Defendants Embraceor, LLC, WorkCentric 2, LLC, WorkCentric 3, LLC, and WC TopCo LLC, made and delivered the July 2023 Security Agreement, which is attached as Exhibit 6.

177.   WorkCentric has not paid the amounts due to SUNZ for Loss Fund.

178.   Defendants Embraceor, LLC, WorkCentric, LLC, WorkCentric 2, LLC, and WorkCentric 3, LLC breached the terms of the Insurance Policies and the 2023 LFMA by failing to pay SUNZ Loss Fund.

179.   Defendants Embraceor, LLC, WorkCentric 2, LLC, and WorkCentric 3, LLC and WC TopCo LLC breached the July 2023 Promissory Note by failing to pay the balance due at maturity (September 12, 2023).

180.   SUNZ has been damaged by WorkCentric's failure to perform its obligations under the Insurance Policies and the 2023 LFMA, including WorkCentric's failure to pay the amounts due and owing for Loss Fund, and the attorney's fees and costs incurred to enforce the terms of these contracts.

**WHEREFORE**, SUNZ respectfully requests this Court enter judgment against Defendants Embraceor, LLC, WorkCentric, LLC, WorkCentric 2, LLC,

and WorkCentric 3, LLC and WC TopCo LLC in favor of SUNZ; awarding SUNZ possession of the collateral under both the January 2023 Security Agreement and July 2023 Security Agreement, and appointing a receiver over Defendants Embraceor, LLC, WorkCentric, LLC, WorkCentric 2, LLC, and WorkCentric 3, LLC and WC TopCo LLC to assist SUNZ in marshalling the assets and collateral of Defendants Embraceor, LLC, WorkCentric, LLC, WorkCentric 2, LLC, and WorkCentric 3, LLC and WC TopCo LLC as set forth in both the January 2023 Security Agreement and July 2023 Security Agreement; awarding SUNZ its reasonable attorney's fees and costs pursuant to § 3(B) and § 5(e) of the both the January 2023 Security Agreement and July 2023 Security Agreement; and awarding such additional and further relief as this Court deems just and proper.

## COUNT III – BREACH OF CONTRACT (PREMIUM)
### (SUNZ v. EMBRACEOR, LLC, WORKCENTRIC, LLC, WORKCENTRIC 2, LLC, AND WORKCENTRIC 3, LLC)

181.   SUNZ reincorporates and re-alleges paragraphs 1 through 164 as though fully set forth herein.

182.   As of October 31, 2023, the amount Defendants Embraceor, LLC, WorkCentric, LLC, WorkCentric 2, LLC, and WorkCentric 3, LLC (defined

above collectively as "<u>WorkCentric</u>" or "<u>Insured</u>") owe SUNZ has increased to **$3,037,185.36** for Premiums, including taxes (the "<u>Premium Balance</u>").[3]

183.   This Premium Balance includes amounts due from WorkCentric for the audit of the Insurance Policies for the January 1, 2022 through January 1, 2023 policy year (the "<u>2022 Policy Period</u>").

184.   The two audit statement invoices for the 2022 Policy Period (one on behalf of SIC and one on behalf of UWIC) totaling $1,617,900.51 are attached as **Composite Exhibit 11**.

185.   In addition, this Premium Balance includes amounts WorkCentric owes SUNZ for unpaid weekly premium installments for policies for the 2023 Policy Period, as of October 31, 2023 and credits for a midterm audit.

186.   As of October 31, 2023, WorkCentric owed SUNZ **$3,037,185.36** for Premiums, including taxes (defined above as the "<u>Premium Balance</u>").

187.   SUNZ has been damaged by WorkCentric's failure to pay the Premium Balance.

**WHEREFORE**, SUNZ respectfully requests this Court enter judgment against WorkCentric for money damages in an amount to be determined at trial, plus interest, in favor of SUNZ; awarding SUNZ its reasonable attorney's

---

[3] The difference between this figure and the amount Defendants stipulated to in the Forbearance Agreement is due to timing and the payment of some of WorkCentric's premium obligations with Loss Fund, as permitted under the contracts.

fees and costs; and awarding such additional and further relief as this Court deems just and proper.

## COUNT IV – BREACH OF PROMISSORY NOTE
### (SUNZ v. EMBRACEOR, LLC, WORKCENTRIC 2, LLC, WORKCENTRIC 3, LLC, and WC TOPCO, LLC)

188.   SUNZ reincorporates and re-alleges paragraphs 1 through 164 as though fully set forth herein.

189.   Defendants Embraceor, LLC, WorkCentric 2, LLC, WorkCentric 3, LLC, and WC TopCo, LLC (defined above collectively as, "Payors"), executed a Commercial Promissory Note dated July 18, 2023 (defined above as "July 2023 Note"). *See* **Exhibit 6.**

190.   Payors failed to pay all amounts due under the July 2023 Note at maturity on September 12, 2023.

191.   SUNZ served Payors with a demand for payment in the September 19, 2023 Letter (defined above as the "September 2023 Default Letter"). *See* Ex. 8.

192.   Despite demand, Payors failed to pay all the amounts due under the July 2023 Note.

193.   As of October 31, 2023, Payors owe SUNZ $13,993,287 on the July 2023 Note, plus interest, attorney's fees, and costs.

194.   SUNZ has been damaged by Payors' failure to perform its obligations under the July 2023 Note, including its failure to pay the amounts

due and owing under the July 2023 Note, and the attorney's fees and costs incurred to enforce the terms of the July 2023 Note.

WHEREFORE, SUNZ respectfully requests that this Court enter judgment against Payors for money damages in the amount of **$13,993,287**, plus default interest at 10% and late charges, in favor of SUNZ; awarding SUNZ its reasonable attorney's fees and costs pursuant to Section 12.2 of the July 2023 Note; awarding prejudgment interest; and awarding such additional and further relief as this Court deems just and proper.

## COUNT V – BREACH OF GUARANTY
### (SUNZ v. ALTSCHULER)

195.    SUNZ reincorporates and re-alleges paragraphs 1 through 164 as though fully set forth herein.

196.    Mr. Altschuler executed a Guaranty for the Insurance Program on January 1, 2023 (defined above as the "Altschuler Guaranty"), which is attached as Exhibit 4, as additional consideration for SUNZ procuring Workers' Compensation for WorkCentric.

197.    The amount of indebtedness due and owing to SUNZ by WorkCentric is over $50 million as of October 31, 2023.

198.    Mr. Altschuler has breached the terms of the Altschuler Guaranty by failing to pay SUNZ the amounts due and owing from WorkCentric.

199.   SUNZ has been damaged by Mr. Altschuler's failure to perform his obligations under the Altschuler Guaranty, including the failure to pay the amounts due and owing from WorkCentric, and the attorney's fees and costs incurred to enforce the terms of the Altschuler Guaranty.

WHEREFORE, SUNZ respectfully requests that this Court enter judgment against Mr. Altschuler for money damages in an amount to be determined at trial, but not less than the amount of WorkCentric's liability to SUNZ, plus interest, in favor of SUNZ; awarding SUNZ its reasonable attorney's fees and costs as set forth in ¶ 6(c) of the Altschuler Guaranty; awarding prejudgment interest; and awarding such additional and further relief as this Court deems just and proper.

## COUNT VI – BREACH OF FIDUCIARY DUTY
### (SUNZ v. DOCKS SUTHERLAND)

200.   SUNZ reincorporates and re-alleges paragraphs 1 through 164 as though fully set forth herein.

201.   WC Container, LLC, Embraceor, LLC, WorkCentric, LLC, WorkCentric 2, LLC, WorkCentric 3, LLC, and WC TopCo, LLC, (collectively, the "Pledgors"), pledged to SUNZ a 100% first priority security interest in each of the Pledgors. *See* Ex. 10, Pledge Agreement, p.1.

202.  Upon information and belief and based on the payment delays and defaults described herein, WorkCentric was insolvent on or before April 1, 2023, before the Pledge Agreement was executed.

203.  Defendant Docks Sutherland owed a duty to SUNZ, a secured creditor of the insolvent Pledgors, because Docks Sutherland is the ultimate owner and officer of the Pledgors and because he executed the Pledge Agreement as an Obligor.

204.  Docks Sutherland breached his fiduciary duty to SUNZ by engaging in self-interested transactions, making material misrepresentations and omissions, and wasting assets of the defendant entities.

205.  Docks Sutherland's breach of his fiduciary duties to SUNZ caused SUNZ damages.

WHEREFORE, SUNZ respectfully requests that this Court enter judgment against Mr. Sutherland for money damages in an amount to be determined at trial and awarding such additional and further relief as this Court deems just and proper.

**COUNT VII – AIDING AND ABETTING
BREACH OF FIDUCIARY DUTY
(SUNZ v. DAVID HARVEY)**

206.  SUNZ reincorporates and re-alleges paragraphs 1 through 164 as though fully set forth herein.

207. WC Container, LLC, Embraceor, LLC, WorkCentric, LLC, WorkCentric 2, LLC, WorkCentric 3, LLC, and WC TopCo, LLC, (collectively, the "Pledgors"), pledged to SUNZ a 100% first priority security interest in each of the Pledgors. *See* Ex. 10, Pledge Agreement, p.1.

208. Upon information and belief and based on the payment delays and defaults described herein, WorkCentric was insolvent on or before April 1, 2023, before the Pledge Agreement was executed.

209. Defendant David Harvey also owed a duty to SUNZ, a secured creditor of the insolvent Pledgors, because David Harvey is the President of the defendant entities.

210. David Harvey executed documents on behalf of the Pledgors at the instruction, or with the permission, of Docks Sutherland.

211. David Harvey had full access to the business records of the Pledgors.

212. Based upon his full access to the Pledgors' business records, SUNZ's frequent dealings with David Harvey, who was acting on behalf of the Pledgors, executing documents on behalf of the Pledgors, and relaying responses from and following the instructions of Docks Sutherland, David Harvey knew of Docks Sutherland's actions, including Docks Sutherland's self-dealing.

213. David Harvey breached his fiduciary duty to SUNZ by aiding and abetting Docks Sutherland with his self-interested transactions, and by making material misrepresentations and omissions, and permitting the wasting of assets of the defendant entities.

214. Upon information and belief, the self-interested transactions by Docks Sutherland, including but not limited to the financial payments to or for the benefit of Docks Sutherland's other entities, would not have been possible without the knowledge or assistance of David Harvey.

215. David Harvey's aiding and abetting Docks Sutherland's breach of fiduciary duties, if not his own breach of his fiduciary duties to SUNZ, caused SUNZ damages.

WHEREFORE, SUNZ respectfully requests that this Court enter judgment against Mr. Harvey for money damages in an amount to be determined at trial and awarding such additional and further relief as this Court deems just and proper.

Date: Novmeber 3, 2023          Respectfully submitted,

*/s/ Jason L. Margolin*
**JASON L. MARGOLIN, ESQ.**
Florida Bar No. 69881
Lead Trial Counsel
jason.margolin@akerman.com
**AKERMAN LLP**
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
Phone:  (813) 223-7333
Fax:   (813) 223-2837

**CHRISTOPHER S. CARVER, ESQ.**
Florida Bar No. 993580
christopher.carver@akerman.com
**JASON S. OLETSKY, ESQ.**
Florida Bar No. 9301
jason.oletsky@akerman.com
**AKERMAN LLP**
201 East Las Olas Boulevard, Suite 1800
Ft. Lauderdale, FL 33301
Phone:  (954) 463-2700
Fax:  (954) 463-2224

*Counsel for Plaintiff*