UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SUNZ INSURANCE SOLUTIONS, LLC,
individually and derivatively on behalf of
    WORKCENTRIC, LLC,
    WORKCENTRIC 2, LLC,          Case No. 8:23-cv-2517-SDM-CPT
    WORKCENTRIC 3, LLC,
    EMBRACEOR, LLC,

       Plaintiff,

v.

DOCKS SUTHERLAND, a/k/a
BENJAMIN PAUL SUTHERLAND,
DAVID HARVEY,
SHELDON ALTSCHULER,
WORKCENTRIC, LLC,
WORKCENTRIC 2, LLC,
WORKCENTRIC 3, LLC,
EMBRACEOR, LLC,
WC TOPCO, LLC, AND
WC CONTAINER, LLC,

       Defendants.

_____/

## AMENDED COMPLAINT FOR DAMAGES

Plaintiff, Sunz Insurance Solutions, LLC ("SUNZ" or "Plaintiff"), sues Defendants, Docks Benjamin Paul Sutherland ("Sutherland"), David Harvey ("Harvey"), Sheldon Altschuler ("Altschuler"), WorkCentric, LLC, WorkCentric 2, LLC, WorkCentric 3, LLC, Embraceor, LLC, WC TopCo, LLC, and WC Container, LLC, (all, collectively, "Defendants"):

**INTRODUCTION**

1.    This is an action against Defendants Embraceor, LLC, WorkCentric, LLC, WorkCentric 2, LLC, and WorkCentric 3, LLC (collectively, "<u>WorkCentric</u>" or "<u>Insured</u>") for breach of large deductible workers' compensation insurance policies (the "<u>Insurance Policies</u>") and related contracts (the "<u>Transaction Documents</u>") governing the insurance program (the "<u>Insurance Program</u>").

2.    Relatedly, this is also an action against WorkCentric's parent company and affiliates: WC TopCo, LLC, and WC Container, LLC, which entered into separate contracts obligating them to pay and secure repayment of money due from WorkCentric related to payment obligations under the Insurance Program. As a result, WorkCentric, WC TopCo, LLC, and WC Container, LLC (collectively, the "<u>Entity Defendants</u>") are jointly and severally liable for the total amount sought.

3.    This is also an action against WorkCentric's former owner, Altschuler, who executed a personal guaranty as to WorkCentric's obligations under the Insurance Program.

4.    This is also an action for breach of fiduciary duty or, in the alternative, aiding and abetting breach of fiduciary duty against Sutherland and Harvey. Sutherland has been the ultimate owner of the entity defendants

2

from August 2021 to the present. Sutherland and/or Harvey served as the managers of the entity defendants, from August 2021 through November 2023.

5.    Finally, this is also an action against Sutherland and Harvey for tortious interference with a written contract, resulting from Sutherland and Harvey's repeatedly, and through improper means, causing the entity defendants to divert money to the individuals' personal benefit, thereby causing the entities to breach their contracts with SUNZ.

6.    Under WorkCentric's Insurance Program, in exchange for a substantial discount on its premium obligation, the Insured/WorkCentric became responsible to reimburse SUNZ for the first $500,000 of claim expenses for each claim brought by each of its injured workers. WorkCentric was obligated to provide SUNZ money or other assets, referred to as "Loss Fund," from which SUNZ would pay the claim expenses within WorkCentric's deductible layer (the $500,000 deductible). WorkCentric explicitly agreed to maintain this Loss Fund at sufficient levels to cover incurred and anticipated expenses.

7.    SUNZ paid millions for claim expenses for the over 11,000 claims filed by WorkCentric's injured workers: expenses all within the deductible layer.

8.    WorkCentric defaulted on its obligations to pay SUNZ amounts necessary to maintain a minimum Loss Fund balance to ensure WorkCentric's

payment of these outstanding developed losses. SUNZ must continue paying claims despite WorkCentric's failure to maintain the Loss Fund. WorkCentric also defaulted on its obligations to pay SUNZ amounts due for premium.

9.      WorkCentric and WC TopCo, LLC admitted they jointly owe SUNZ at least $25,800,582.90 as of October 11, 2023.

10.     During the development and growth of WorkCentric's Loss Fund deficit and to forestall and delay SUNZ from exercising its full rights under the Insurance Program, Sutherland and Harvey, on behalf of WorkCentric and WC TopCo, LLC, made hollow promises to pay. Despite repeated accommodations, and even a Forbearance Agreement, Defendants continued to breach their obligations, including breach of their obligations under the Forbearance Agreement as further specified below.

11.     SUNZ provided Defendants with written notices and opportunities to cure the defaults.

12.     WorkCentric and WC TopCo, LLC were required to cure by making a payment to SUNZ on or before October 30, 2023, but WorkCentric and WC TopCo, LLC failed to pay the amounts due to SUNZ.

13.     Instead, Sutherland and Harvey, respectively the owner and president of WorkCentric, WC TopCo LLC, and WC Container, LLC, wasted WorkCentric's corporate assets by paying millions of dollars to themselves and

4

other entities they owned or controlled. This self-dealing harmed WorkCentric and, consequently, Plaintiff SUNZ, as the primary and secured creditor.

14.    SUNZ asks this Court to enforce the parties' agreements by awarding SUNZ damages for amounts Defendants failed to pay.

15.    SUNZ also asks this Court to rectify Sutherland and Harvey's wanton self-dealing and waste of corporate assets, which occurred when both knew WorkCentric was insolvent and knew the continued failure to pay the workers compensation claims of WorkCentric's injured employees would certainly destroy WorkCentric's value.

## PARTIES, JURISDICTION, AND VENUE

16.    Plaintiff SUNZ Insurance Solutions LLC (defined above as "SUNZ") is a Florida limited liability company with its principal place of business in Manatee County, Florida.

17.    The sole member of Plaintiff SUNZ is SUNZ Insurance Services, LLC, whose sole member is Acrisure MGA, LLC, whose sole member is Acrisure, LLC, whose sole member is Acrisure Intermediate, Inc., which is a corporation incorporated in Delaware with a principal place of business in Michigan. Accordingly, for purposes of diversity jurisdiction, SUNZ is a citizen of Delaware and Michigan.

18.     Defendant Sutherland is an individual who, when the original complaint was filed, resided in New York City and was a citizen of New York. Defendant Sutherland's current location is unknown.

19.     Defendant WC Container, LLC, is a limited liability company registered in Delaware, whose sole member is Sutherland (a New York citizen). Accordingly, for purposes of diversity jurisdiction, Defendant WC Container, LLC is a citizen of New York.

20.     Defendant WC TopCo, LLC, is a limited liability company registered in Delaware, whose sole member is WC Container LLC, whose sole member is Sutherland (a New York citizen). Accordingly, for purposes of diversity jurisdiction, Defendant WC TopCo, LLC is a citizen of New York.

21.     Defendant Embraceor, LLC, is a limited liability company registered in Delaware, whose sole member is WC TopCo LLC, whose sole member is WC Container LLC, whose sole member is Sutherland (a New York citizen). Accordingly, for purposes of diversity jurisdiction, Defendant Embraceor, LLC is a citizen of New York.

22.     Defendant WorkCentric, LLC, is a limited liability company registered in Delaware, whose sole member is WC TopCo LLC, whose sole member is WC Container LLC, whose sole member is Sutherland (a New York citizen). Accordingly, for purposes of diversity jurisdiction, Defendant WorkCentric, LLC is a citizen of New York.

23. Defendant WorkCentric 2, LLC, is a limited liability company registered in Delaware, whose sole member is WC TopCo LLC, whose sole member is WC Container LLC, whose sole member is Sutherland (a New York citizen). Accordingly, for purposes of diversity jurisdiction, Defendant WorkCentric 2, LLC is a citizen of New York.

24. Defendant WorkCentric 3, LLC, is a limited liability company registered in Delaware, whose sole member is WC TopCo LLC, whose sole member is WC Container LLC, whose sole member is Sutherland (a New York citizen). Accordingly, for purposes of diversity jurisdiction, Defendant WorkCentric 3, LLC is a citizen of New York.

25. Defendant Altschuler is an individual residing in Parkton, Maryland, and is a citizen of Maryland.

26. Defendant Harvey is an individual residing in Fairfield, Connecticut, and is a citizen of Connecticut.

27. This action invokes this Court's subject matter jurisdiction under 28 U.S.C. § 1332(a) because the action is between citizens of different States and because the amount-in-controversy exceeds $75,000.

28. This Court has personal jurisdiction over the Defendants because the causes of action against Defendants arise, in whole or in part, out of contracts and business dealings with SUNZ in Manatee County, Florida, causing SUNZ to suffer injury and damages in Manatee County, Florida. In

addition, each Defendant consented to personal jurisdiction in Florida by contract.

29.    Venue is proper under 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to the claims occurred in Bradenton, Florida, where SUNZ is headquartered and because each Defendant consented to venue in Manatee County, Florida, which is within this District.

## SUNZ'S DERIVATIVE STANDING

30.    As alleged below, WorkCentric was insolvent not later than April 30, 2023, and certainly no later than October 11, 2023, when Embraceor, LLC, WorkCentric, LLC, WorkCentric 2, LLC, WorkCentric 3, LLC, and WC TopCo, LLC (collectively, "Obligors") executed the "Forbearance Agreement" discussed below. SUNZ was a secured creditor of WorkCentric during this time, and remains a secured creditor of WorkCentric.

31.    As the largest and a secured creditor of each Entity Defendant, SUNZ will fairly and adequately represent the interests of any such similarly situated creditor in asserting these claims against Sutherland and Harvey.

32.    The action is not a collusive one to confer jurisdiction that the Court would otherwise lack.

33.    Further, as detailed herein, Harvey and Sutherland served as the manager of each Entity Defendant, manager of the member of each Entity Defendant, and/or ultimate owner of each Entity Defendant. As such, it would

8

have been futile to ask Harvey and Sutherland to assert actions against themselves before initiating this action.

## GENERAL ALLEGATIONS

### A.    SUNZ's Business Operations

34.    SUNZ is the appointed managing general agent ("MGA") to the insurance companies under which authority SUNZ caused workers' compensation insurance policies (the "Insurance Policies") to be issued to WorkCentric.

35.    As the appointed MGA, it is SUNZ's obligation to bill and collect all money due (including, but not limited to, Premium, Loss Fund, Deductible Reimbursement, and other amounts) as related to the Insurance Policies so issued.

36.    SUNZ is routinely appointed by insurance carriers to act as a producer and program manager, to market and bind business, and to service accounts on behalf of insurance carriers.

37.    SUNZ specializes in helping professional employer organizations ("PEOs"), staffing companies, and large employers obtain workers compensation insurance that fits their specific business needs and operational challenges.

38.    Staffing companies and PEOs are businesses that contract with client companies to handle the clients' personnel-related matters, such as

9

workers' compensation insurance, payroll processing and payroll taxes, employee benefits, reemployment assistance tax, employee staffing support, and other similar matters. Unlike a PEO, a staffing company also engages in the employee-hiring process and associated tasks.

39.    As to Defendants, SUNZ served as the appointed MGA for insurance companies including: United Wisconsin Insurance Company ("UWIC") and SUNZ Insurance Company ("SIC").

40.    UWIC and SIC (the "Insurers") appointed SUNZ as MGA with the authority, among other things, to solicit, receive, accept, bind, issue, and transmit proposals for insurance programs on their behalf.

41.    The Insurers appointed SUNZ to act as a fiduciary to the Insurers and to hold all premiums SUNZ collected and received.

**B.    WorkCentric Contracted with SUNZ for Workers' Compensation Insurance**

42.    WorkCentric operated as both a staffing company and PEO, providing employees at various worksites of their clients.

43.    WorkCentric contracted with SUNZ to procure Workers' Compensation Insurance to and for the benefit of WorkCentric and its client companies, with coverage beginning in December 2019.

44.    SUNZ procured Workers' Compensation Insurance for WorkCentric with UWIC and SIC.

45.    SIC agreed to reinsure, on a 100% indemnity reinsurance basis, the full amount of UWIC's liability arising under Insurance Policies placed by SUNZ. In other words, on the insurer's side of this transaction, the ultimate liability for losses, costs, and expenses fell on SUNZ and SIC.

46.    Because SUNZ is the managing general agent for the Insurers that issued the Insurance Policies at issue and operates under authority granted to it by the Insurers, and also because SUNZ is the contracting party with WorkCentric, SUNZ has specific authority to sue for all relief sought herein, including on behalf of SIC and UWIC.

47.    For each policy year and with respect to specific jurisdictions, the terms of the Workers' Compensation Insurance provided to WorkCentric are set forth in an Insurance Policy (collectively defined above as the "Insurance Policies") identifying SUNZ as the producer.

48.    In addition to the Insurance Policies, there are several other related documents which constitute integral parts of the Insurance Program for each year.

49.    For example, for the final policy period under the insurance program, January 1, 2023 – January 1, 2024 (the "2023 Policy Period"), WorkCentric executed a Quotation Agreement (the "2023 Quotation"), which is attached as **Exhibit 1**. The 2023 Quotation used the estimated payroll provided by WorkCentric to estimate WorkCentric's payment obligations and

discounts related to the large deductible workers' compensation insurance policy.

50.     WorkCentric also executed the 2023 Loss Fund Management Agreement (the "2023 LFMA"), which is attached as **Exhibit 2**. The 2023 LFMA also describes WorkCentric's payment obligations with respect to Loss Fund.

51.     WorkCentric executed the Security Agreement for the Insurance Program (the "January 2023 Security Agreement"), which is attached as **Exhibit 3**. The January 2023 Security Agreement also describes WorkCentric's payment obligations and SUNZ's rights as a secured creditor.

52.     To further secure WorkCentric's promise to pay SUNZ, the then-owner of WorkCentric, Altschuler, executed the Guaranty for the Insurance Program (the "Altschuler Guaranty"), which is attached as **Exhibit 4**.

53.     The terms of the Workers' Compensation Insurance provided to WorkCentric are set forth in an Insurance Policy identifying SUNZ as the producer, issued by SIC/UWIC. A copy of this one policy for the 2023 Policy Period (the "2023 Policy") is attached as **Exhibit 5**. Because the Insurance Policies are voluminous, SUNZ attaches only this 2023 Policy and will provide copies of other policies issued during the 2023 Policy Period if requested to the Court and Defendants.

**C.** **WorkCentric's Payments Due to SUNZ are Based on Accurate Payroll Amounts and Classification Codes**

54.    WorkCentric is obligated to pay premiums to SUNZ for workers' compensation insurance coverage (the "Premiums").

55.    The Premiums were calculated based upon the amount of WorkCentric's payroll and the classification codes associated with each employee on WorkCentric's payroll.

56.    Classification codes are determined based on the business operations of WorkCentric's clients (*i.e.*, the job sites where WorkCentric's employees are sent to work and the duties of those employees).

57.    The correct classification code for each employee is determined by establishing (a) the industry category for the client-company, (b) the type of product or service the client-company provides, and (c) the daily responsibilities of the employee at the client-company. This is not an exhaustive list but provides an example of the inquiry required to establish the correct employee classification code to determine the correct premium to be charged.

58.    WorkCentric was obligated to report to SUNZ accurately both the amount of payroll and the classification codes for each submitted payroll.

59.    The Premium payment and periodic Loss Fund payments due from WorkCentric were always subject to change, as a function of each WorkCentric

13

payroll amount and corresponding classification codes for the employees encompassed by that payroll amount.

**D.    WorkCentric's Deductible Credit and Premium Discount**

60.    To reduce the cost of the Premiums and obtain other favorable terms from SUNZ, WorkCentric requested a large deductible workers' compensation insurance program.

61.    WorkCentric applied and was approved for a large deductible insurance policy with a $500,000.00 per accident deductible (the "Large Deductible Amount"), meaning that WorkCentric became obligated to reimburse SUNZ up to $500,000.00 on each claim submitted by an injured WorkCentric employee (the "Deductible Reimbursement").

62.    In other words, in addition to paying Premiums, WorkCentric became also obligated to reimburse all claims and claim related expenses arising under the subject insurance, up to the Deductible Reimbursement amount of $500,000 per accident.

63.    From a process standpoint, a claim is submitted by an injured WorkCentric employee, the claim is paid by SUNZ, and any payments within the deductible layer are applied against the Loss Fund amounts periodically paid by WorkCentric.

64.    The Loss Fund was to be maintained on a weekly basis by payments made by WorkCentric, along with weekly premium payments.

14

65.    Because WorkCentric was approved for a large deductible plan, it received a substantial discount on the insurance premium each year.

66.    WorkCentric's premium discount reflected WorkCentric's promise to be responsible to pay the first $500,000 of claim expenses per claim.

67.    If WorkCentric had received a standard insurance policy without a deductible component (typically called a guaranteed cost or first-dollar policy), WorkCentric would have paid the 100% full premium charge without any corresponding claim expense reimbursement obligation.

68.    WorkCentric desired the greatly reduced premium in exchange for promising to adhere to the large deductible payment protocol and its Loss Fund payment obligations.

69.    For example, for the 2023 Policy Period, WorkCentric received a discount of over $6.1 million in premium because it was approved for a large deductible plan.

70.    In exchange for this massive reduction in premium obligations and other consideration, WorkCentric agreed to the Deductible Reimbursement obligation, as explicitly set forth in the Insurance Policies.

71.    WorkCentric was also required to maintain its reimbursement obligation through periodic payments, as also explicitly set forth in the Insurance Policies.

72. To maintain its obligations to pay/reimburse SUNZ for Deductible Reimbursements, WorkCentric was obligated to pay SUNZ money to be used by SUNZ to reimburse Deductible Reimbursement amounts, among other expenses of WorkCentric, as such expenses arose. These payments are defined above as Loss Fund.

73. WorkCentric agreed to provide and maintain the Loss Fund, which SUNZ has used to pay claims and claim related expenses arising within the $500,000 deductible layer as required by the deductible endorsement to WorkCentric's Insurance Policies.

74. WorkCentric agreed to maintain a minimum balance in the Loss Fund in an amount no less than the sum of 200% of open case reserves plus 100% of the per accident Deductible Amount (the "Minimum Loss Fund Amount"). *See* Ex. 5, 2023 Policy, Program Values Schedule, Schedule D (listing the "Minimum Loss Development Amount" as "200% of Case Reserves + 1 Deductible"); Ex. 2, 2023 LFMA, ¶ B.I.B. ("You agree to maintain a Loss Fund at all times during the Insurance Program. Your Loss Fund or Minimum Loss Fund shall be the combined amount of (a) two hundred percent (200%) of open case reserves plus (b) one hundred percent (100%) of the per accident Deductible Amount under the policy.").

75. In the event of a material change in the loss experience or risk, WorkCentric became required to pay more in Loss Fund to secure

WorkCentric's obligation for the Deductible Reimbursement. *See* Ex. 2, 2023 LFMA, ¶ B.I.C. ("If Sunz, in its sole discretion, deems there is a material change in the loss experience or risk of Your Insurance Program, Sunz may require, and You agree to provide, additional Loss Fund in an amount set to fully developed loss using the then current advisory loss development factors as established by either (a) the National Council on Compensation Insurance (NCCI), or (b) the applicable rating bureau."); Ex. 5, 2023 Policy, Large Risk Alternative Rating and Insurance Program Agreement, ¶ 7 ("Security … if at any time UWIC determines that Security is inadequate, UWIC may, at its sole discretion, adjust Security.").

76.     A material change in the risk arose based on (a) the sale of the WorkCentric business to Sutherland, (b) WorkCentric's binding business with a higher loss ratio than originally presented to SUNZ, and (c) because of WorkCentric's non-payment and breaches.

77.     Accordingly, SUNZ was contractually permitted to require WorkCentric to maintain the Loss Fund in an amount equal to all incurred losses and allocated loss adjustment expenses on a fully developed basis that includes IBNR (incurred but not reported losses), using the then current loss development factors as established by the NCCI (the National Council on Compensation Insurance), as its Loss Fund amount (the "Fully Developed

Amount"). *See id.* SUNZ did not immediately exercise its right to seek the Fully Developed Amount, although it always reserved its right to do so.

78.     WorkCentric and SUNZ agreed the Loss Fund would be governed by the most recent contracts for both the 2023 Policy Period and all prior policy periods. *See* Ex. 5, 2023 Policy, Large Risk Alternative Rating and Insurance Program Agreement, § 7 Wrapped-Up Security; Ex. 2, 2023 LFMA, ¶ B.3.

79.     Claims filed by WorkCentric's injured employees arising under WorkCentric's Insurance Policies were adjusted and paid by the Insurers and continue to be adjusted and paid by the Insurers.

80.     For clarity, this dispute relates to the commercial relationship between WorkCentric and SUNZ as well as WorkCentric's reimbursement and payment obligations to SUNZ.

81.     This dispute does not relate to the individual submitted claims of injured employees who were insured through WorkCentric pursuant to coverage afforded under the subject Insurance Policies.

82.     Employees who were insured through WorkCentric and were injured will continue to receive, as they have at all times, all required benefit, care, and indemnity owed to them under the subject Insurance Policies to them.

83.     SUNZ and SIC are ensuring all injured employees continue to receive the care, treatment, and benefits to which they are entitled to under

the Insurance Policies despite WorkCentric's failures to pay the amounts due to SUNZ under the Insurance Policies.

**E.    Sutherland Purchases WorkCentric and Defendants Repeatedly Fail to Honor their Financial Obligations and Commitments**

84.    In August 2021, after the relationship between SUNZ and WorkCentric began, Sutherland purchased WorkCentric from Altschuler.

85.    Upon information and belief, Sutherland structured his purchase of WorkCentric as a merger or stock acquisition. Upon information and belief, to fund his purchase of WorkCentric from Altschuler, Sutherland borrowed directly, or indirectly through his other company, the Immediate Company, from Pipe Technologies, Inc. ("Pipe").

86.    In preparation for or in the course of structuring Sutherland's purchase, WorkCentric was re-incorporated as an LLC managed by Defendant WC TopCo, LLC.

87.    WC TopCo, LLC, in turn, was managed by Sutherland and/or Harvey. Although Sutherland and Harvey have disputed which of them managed WC TopCo, LLC and, consequently, WorkCentric, WC TopCo, LLC's management could be changed at any time by its sole member – originally, The Immediate Company. Sutherland is the Immediate Company's founder, president, and majority shareholder.

88.    Before October 2023, membership of WC TopCo was transferred to WC Container LLC, but this entity was also owned and controlled by Sutherland. Thus, Sutherland always had the authority to manage WorkCentric or to effect a change in the management of WorkCentric.

89.    Following Sutherland's purchase of WorkCentric, WorkCentric's financial position began to decline and WorkCentric sought accommodations and forbearances from SUNZ, in its capacity as a secured creditor of WorkCentric.

90.    Prior to Sutherland's purchase of WorkCentric, WorkCentric provided SUNZ with a $4 million Letter of Credit from First Horizon Bank as part of WorkCentric funding its Loss Fund obligations.

91.    On March 6, 2023, Sutherland and Harvey requested SUNZ reduce the collateral funding mechanisms (*i.e.*, reduce WorkCentric's funding requirements, but not its ultimate liability). They further requested SUNZ permit them to dissolve the Letter of Credit from First Horizon and replace them with a Letter of Credit from First Republic Bank (in lieu of the obligation to replace it with cash).

92.    On March 15, 2023, Sutherland requested SUNZ permit the then-current $4 million Letter of Credit to expire on the condition that Sutherland replace it with cash within two-weeks thereafter.

93.    On March 16, 2023, SUNZ provided Defendants with a draft promissory note for WorkCentric to sign, which would have memorialized a twenty-one-day payment obligation to cover the time between when the First Horizon Letter of Credit was to expire and when Sutherland promised to replace the Letter of Credit with cash. SUNZ requested Sutherland also execute a personal guaranty to secure the promissory note.

94.    Alternatively, SUNZ proposed cashing the $4 million letter of credit, for deposit into WorkCentric's Loss Fund account, to provide WorkCentric with the immediate benefit of the money as required by the Insurance Program.

95.    In response to the proposal to cash the letter of credit, Harvey, on behalf of WorkCentric and Sutherland, told SUNZ a "tax issue" weighed against WorkCentric pursuing SUNZ's proposal.

96.    In response to the draft note and request for personal guaranty, Harvey, on behalf of WorkCentric and Sutherland, told SUNZ that Sutherland would provide a $3 million Letter of Credit from First Republic Bank to obviate the need for WorkCentric to execute the proposed promissory note.

97.    Over the next several weeks, Sutherland avoided phone calls and communications from SUNZ regarding the proposed note and need to replace the $4 million Letter of Credit.

98.    Based on the payment delays and defaults described herein, and discovery collected in related actions, it is now established that WorkCentric was insolvent on or before April 1, 2023.

99.    When the $4 million Letter of Credit expired, thereby freeing the funds pledged by WorkCentric to First Horizon under the Letter of Credit, Sutherland and/or Harvey caused the $4 million to be transferred to the Immediate Company without any benefit to WorkCentric.

100.   On April 3, 2023, Sutherland agreed to execute a promissory note of $4 million with a single payment due to SUNZ on or before April 24, 2023, to partially resolve the Loss Fund deficit exacerbated by the expiration of the First Horizon Letter of Credit.

101.   Despite repeated communications and promises from the Defendants over the next month, Sutherland refused to execute the note.

102.   On May 13, 2023, Sutherland returned the draft note with material changes, including changing the payment date to August 11, 2023 (well beyond the initial April 2023 date).

103.   On May 15, 2023, SUNZ again sent Sutherland a revised draft promissory note, which incorporated certain changes made by Sutherland and increased the amount to $8 million because WorkCentric's Loss Fund deficit had continued to worsen during the intervening period.

104.   On May 24, 2023, Sutherland communicated to SUNZ that he was working with his lawyers on the note and that money was getting "freed up in the Caymans" to pay off the note quickly and to pay to SUNZ the full amount of WorkCentric's Loss Fund deficit.

105.   On May 31, 2023, Sutherland sent SUNZ a revised promissory note and security agreement, as modified by Defendants' attorneys.

106.   On June 2, 2023, SUNZ again sent Sutherland a revised note, accepting some changes made by Defendants and increasing the amount to $10,648,487 because the Defendants' Loss Fund deficit had continued to worsen during the intervening period.

107.   Between June 2, 2023 and June 14, 2023, the parties continued to discuss the note.

108.   On June 14, 2023, after an agreed revised note and security agreement had been sent to Sutherland for his electronic signature, Sutherland notified SUNZ he would not sign the documents but wanted them to be signed by Harvey or Altschuler instead.

109.   Sutherland then returned the note and security agreement to SUNZ, unilaterally changing the payment date to September 12, 2023 (without notice to SUNZ of his changes) with the documents signed by Harvey as "authorized signatory."

23

110. On June 15, 2023, Sutherland continued to provide assurances to SUNZ, saying "SUNZ won't be left out in the cold."

111. SUNZ requested confirmation that Harvey had authority to bind WorkCentric to the documents he executed.

112. Sutherland refused to provide information on Harvey's authority to sign and refused to respond to questions about his unilateral changes to the documents.

113. By July 17, 2023, WorkCentric's Loss Fund deficit was increasing by approximately $1 million per month.

114. Throughout this period and continuing to date, all claims were paid by SUNZ for all WorkCentric's injured employees without abatement or delay.

115. Upon information and belief, beginning immediately after Altschuler transferred his interest in WorkCentric to Sutherland, WorkCentric began doing business with new clients with higher-loss ratios while WorkCentric failed to make the required Loss Fund contributions.

116. On July 18, 2023, Sutherland spoke with SUNZ and agreed to increase the loss funding rate, to bring payments current, and to sign a new note and security agreement to cover the then-current Loss Fund deficit of $13,993,287.

117. Harvey, as Executive Vice-President and Chief Operating Officer of Defendants Embraceor, LLC, WorkCentric 2, LLC, WorkCentric 3, LLC, and WC TopCo, LLC (collectively, "Payors"), executed a Commercial Promissory Note dated July 18, 2023 (the "July 2023 Note"), which is attached as part of **Exhibit 6.** In the July 2023 Note, Payors promised to pay SUNZ a single payment of $13,993,287 by September 12, 2023.

118. To secure the July 2023 Note, Harvey, as Executive Vice-President and Chief Operating Officer of, and on behalf of, the Payors, executed a Security Agreement dated July 20, 2023 (the "July 2023 Security Agreement"), which is attached as part of **Exhibit 6**.

119. Payors sent the executed July 2023 Note and July 2023 Security Agreement to SUNZ on July 20, 2023.

120. By August 14, 2023, WorkCentric's Loss Fund deficit had worsened to exceed $18 million.

121. To address the growing deficit, SUNZ presented a variety of options to Defendants to ameliorate or otherwise stem the worsening deficit in the Loss Fund; Defendants refused to respond.

122. SUNZ served a Notice of Default by letter dated August 28, 2023, to Payors through their officers: Sutherland as CEO, Harvey as COO and EVP, and Altschuler as President, with respect to the 2023 LFMA and related

documents for the Insurance Program. The Notice of Default is attached as **Exhibit 7**.

123.   As of August 28, 2023, WorkCentric owed SUNZ $20,931,510: $1,896,454 for Premiums and $19,035,056 for Loss Fund.

124.   On August 28, 2023, after receipt of the Notice of Default, Sutherland represented to SUNZ he had lenders lined up and ready to provide capital to WorkCentric and to Sutherland that would enable WorkCentric and Sutherland to repay SUNZ and bring all deficits current.

125.   On August 29, 2023, Sutherland orally agreed to pledge stock in WorkCentric in exchange for forbearance by SUNZ on executing its rights to secure and/or liquidate the collateral under the January 2023 Security Agreement and July 2023 Security Agreement.

126.   But later that same day, SUNZ learned Defendants were trying to move their workers' compensation business away from SUNZ and to further impair Defendants' ability to repay the amounts due to SUNZ.

127.   Even after August 29, 2023, Sutherland continued to provide SUNZ with verbal assurances and to purport to negotiate the terms of a potential forbearance agreement.

128.   With respect to the July 2023 Note, SUNZ served a Notice of Default Under Promissory Note by letter dated September 19, 2023, to Payors,

Sutherland, Harvey, and Altschuler ("September 2023 Default Letter"), which is attached as **Exhibit 8**.

129.   As of September 19, 2023, Payors had failed to pay the full principal amount of $13,993,287, which was due to be paid by September 12, 2023. Pursuant to the September 2023 Default Letter, Payors had until September 29, 2023, to cure the default.

130.   The parties continued to negotiate, with SUNZ seeking to find an amicable business resolution.

131.   On October 5, 2023, after further delays by Defendants and a worsening collateral deficit, SUNZ served Notices of Cancellation of the Insurance Policies.

132.   Also on October 5, 2023, SUNZ served a Notice of Default to Altschuler on his personal guaranty. A copy is attached as **Exhibit 9**.

**F.**   **The Forbearance Agreement and Pledge Agreement**

133.   Immediately after the Notices of Cancellation were served, Defendants requested forbearance, withdrawal of the Notices of Cancellation, and other financial accommodations from SUNZ.

134.   The parties and their counsel negotiated the terms for a forbearance agreement and pledge agreement in early October 2023.

135.    Defendants requested, as a condition of providing the Forbearance Agreement, that SUNZ withdraw the Notices of Cancellation and reinstate the insurance. SUNZ therefore withdrew the Notices of Cancellation.

136.    Defendants, Embraceor, LLC, WorkCentric, LLC, WorkCentric 2, LLC, WorkCentric 3, LLC, and WC TopCo, LLC (again, collectively, "Obligors") executed a Forbearance Agreement dated October 11, 2023.

137.    A copy of the Forbearance Agreement is attached as part of **Exhibit 10**.

138.    As stated in the Forbearance Agreement, the Obligors agreed and admitted they owed SUNZ not less than **$25,800,582.90** for Premiums, Loss Fund, and taxes and surcharges as of October 11, 2023.

139.    The Obligors agreed to the validity and enforceability of the July 2023 Note, in the original principal amount of $13,993,287, the July 2023 Security Agreement, and the 2023 LFMA.

140.    Also on October 11, 2023, the Obligors also executed a Pledge Agreement.

141.    In addition to the Obligors, Sutherland also executed the Pledge Agreement, for purposes of Sections 1 and 5 thereunder.

142.    A copy of the Pledge Agreement is attached as part of **Exhibit 10**.

143.    In the Pledge Agreement, the Obligors and Sutherland granted SUNZ a continuing first priority security interest in all of their existing or

arising property (as defined in the Pledge Agreement as "Pledged Collateral"), to secure prompt payment and performance in full when due of all their obligations to SUNZ.

144.    In the Pledge Agreement, the Obligors promised they would not sell, convey, assign, transfer, or otherwise dispose of any of the Pledged Collateral.

## G.    Obligors Breach the Forbearance Agreement, and Sutherland and Harvey Contrive a Scheme to Dissipate WorkCentric's Assets.

145.    The Obligors agreed the Forbearance Agreement would terminate if the reserves under the 2023 LFMA became underfunded by at least $23 million.

146.    The Obligors violated the Forbearance Agreement and Pledge Agreement with multiple, immediate failures to comply with the required payment and due diligence provisions.

> a.    The Obligors failed to provide the required payments to SUNZ or to provide an update on the timeline for payments.
>
> b.    The Obligors failed to provide all bank account information, including failing to identify the bank contacts for each bank account.
>
> c.    The Obligors failed to provide information and documentation about Pipe and potential lien first alleged and disclosed to Sunz

29

in the course of negotiating the Forbearance Agreement and
Pledge Agreement. Specifically, the Obligors failed to provide
any documents about Pipe, the alleged lien or any documents
evidencing any indebtedness owed, the security agreement, and
description of collateral.

d.   The Obligors failed to provide the documents memorializing the
sale of WorkCentric to Sutherland.

e.   The Obligors failed to produce all communications with the IRS.

f.   The Obligors failed to provide information on the
disbursements being made from the Obligors' accounts.

147.    In the Forbearance Agreement, the Obligors agreed it would
terminate automatically if any Obligor transferred any Pledged Collateral to
any third party outside the ordinary course without express written consent
form SUNZ.

148.    The Obligors further agreed that, upon termination of the
Forbearance Agreement, SUNZ would be entitled to: (i) obtain judgment
against the Obligors; (ii) seek any relief authorized by the underlying
Transaction Documents; and (iii) Obligors waived personal service.

149.    On October 18, 2023, SUNZ served Defendants, Sutherland,
Harvey, Altschuler, WC Container, LLC, Embraceor, LLC, WorkCentric, LLC,
WorkCentric 2, LLC, WorkCentric 3, LLC, and WC TopCo, LLC, with notice of

a default under the Forbearance Agreement (the "<u>Default Notice</u>"). A copy of the Default Notice is attached as part of **Exhibit 10**.

150.    Pursuant to the Default Notice, Defendants could cure the default by making a payment to SUNZ of $6,074,717 by October 30, 2023.

151.    Section 7(a) of both the January 2023 Security Agreement and July 2023 Security Agreement provides that an "Event of Default" includes failure by WorkCentric "to timely pay when due."

152.    Section 7(b)(ii) of both the January 2023 Security Agreement and July 2023 Security Agreement provides that, in the event of an Event of Default, SUNZ was entitled to take possession and control of all or any part of the Collateral (as defined in § 1, to include all WorkCentric's receivables, among other assets, and proceeds therefrom) and sue for any and all amounts due to SUNZ.

153.    Pursuant to the Pledge Agreement, Obligors were required to suspend certain actions until they cured a default after notice. Most notably, Pledgors agreed not to "sell, convey, assign, transfer or otherwise dispose of … any of the Pledged Collateral," explicitly including WorkCentric's assets. Ex. 10 at 22.

154.    WorkCentric made no attempt to cure. Instead, <u>after</u> receiving the Default Notice, on October 27, 2023, Sutherland caused WorkCentric to pay

$200,000.00 to Harvey and caused more than $1 million to be paid to an entity named "Two Baboons." *See* E-mail exchange attached as **Exhibit 11**.

155.   Two Baboons, LLC, was at the relevant time owned or controlled by, or affiliated with, Sutherland and Harvey. *See, e.g.*, Letter from N.Y. Workers' Compensation Board to Two Baboons LLC, attn: Harvey, attached as **Exhibit 12**.

156.   In response to Sutherland's email, WorkCentric's accountants asked "just to confirm nothing should be paid to SUNZ?" Ex. 11 at 1. The accountants further noted, "Monies were sent to many Docks legal invoices and other new vendors," leaving insufficient funds to pay SUNZ or other insurers for several weeks. *Id.* at 2 (emphasis added).

157.   Nonetheless, Harvey and Sutherland forced the accountants to effect the payments to Harvey and Two Baboons, which Harvey claimed provided "website and software development" in 2021 through 2023. *Id.* However, the invoices for such services were not sent until October 2023 and Harvey instructed the accountants to record all the purported expenses in 2023. *Id.*

158.   Moreover, after failing to cure the defaults under the Forbearance Agreement and the Pledge Agreement, Defendants frustrated SUNZ's efforts to foreclose its secured and Pledged Collateral, including by wrongfully

prohibiting SUNZ and its collateral agent from accessing information about the Pledged Collateral.

159.   Defendants' conduct greatly impaired SUNZ's ability to maintain the going concern value of the Pledged Collateral.

**I.    SUNZ Sues and the Pledgors Breach the Pledge Agreement**

160.   On November 3, 2023, after WorkCentric failed to cure any of the defaults, SUNZ initiated this action.

161.   In its Time-Sensitive Motion for the Appointment of a Receiver and for a Temporary Restraining Order, SUNZ noted that additional rights would accrue under the Pledge Agreement if the Pledgors failed to cure their default. (Doc. 9 at 10.) The Pledgors did not cure their default.

162.   On November 17, 2023, SUNZ exercised its pledge rights to appoint WorkCentric 1, LLC, a distinct legal entity, as the manager of each Entity Defendant. SUNZ does not own any WorkCentric entity.

**J.    WorkCentric's Breach and SUNZ's Rights are Confirmed During the Course of Bankruptcy Proceedings in Delaware.**

163.   On November 10, 2023, the Court directed the parties mediate their disputes and, if mediation failed, to proceed to arbitration (Doc. 23).

164.   Although Harvey and Sutherland, acting through the Entity Defendants, initially sought to challenge SUNZ's exercise of its pledge rights in the arbitration, they withdrew that request. During the arbitration, Harvey

and Sutherland, purporting to act on behalf of the Entity Defendants, disclosed the Entity Defendants had stopped operating and were no longer a going concern.

165.   Shortly after the arbitration began, an Involuntary Petition under Chapter 11 of the Bankruptcy Code was filed against WorkCentric, LLC, in the United States Bankruptcy Court for the District of Delaware (the "Involuntary Action").

166.   In the Involuntary Action, Sutherland and Harvey, through purported counsel for WorkCentric, LLC, continued to challenge SUNZ's rights under the Pledge Agreement.

167.   After extensive briefing and a hearing, the Bankruptcy Court concluded WorkCentric breached the several agreements, including the Forbearance and Pledge Agreements and failed to cure those breaches, which actions entitled SUNZ to exercise its rights, including, *inter alia*, appointing WorkCentric 1 as the sole manager of the Entity Defendants. Accordingly, "[WorkCentric 1] has been properly authorized to act" as manager of the Entity Defendants. *See* **Exhibit 13** (the "Control Order"); **Exhibit 14** (the transcript containing the "reasons stated by the Court on the record of the Hearing" referred to in the Control Order) at 83:3-4.

168.   On March 13, 2025, the Bankruptcy Court dismissed the Involuntary Petition in an order that expressly preserved "all findings of facts

and conclusions of law relied up on by the Court in entering the Control Order."
Order Granting Joint Motion for Summary Judgment and Dismissing
Involuntary Bankruptcy Case, *In re: WorkCentric, LLC*, (Bankr. D. Del., Mar.
13, 2025) (ECF No. 266) (**Exhibit 15**).

169.    No party appealed the dismissal; consequently, the dismissal and
the Control Order are final.

**K.    The Amounts at Issue**

170.    In the Forbearance Agreement, the Obligors admitted they owe not
less than $25,800,582.90, which sum consists of Loss Fund obligations,
Premiums, and taxes and other fess.

171.    This admitted amount due continues to increase as claims develop
and SUNZ continues to pay expenses within the deductible layer without
reimbursement from WorkCentric.

172.    Further, Sutherland and Harvey's self-dealing has caused more
than $1.2 million to be diverted to themselves or affiliated entities at the
expense of WorkCentric.

173.    All conditions precedent to filing this action have occurred or been
waived.

## COUNT I – BREACH OF CONTRACT (FORBEARANCE)
## (SUNZ v. EMBRACEOR, LLC, WORKCENTRIC, LLC, WORKCENTRIC 2, LLC, WORKCENTRIC 3, LLC, and WC TOPCO, LLC)

174.   SUNZ reincorporates and re-alleges paragraphs 1 through 173 as though fully set forth herein.

175.   Embraceor, LLC, WorkCentric, LLC, WorkCentric 2, LLC, WorkCentric 3, LLC, and WC TopCo, LLC, (collectively defined above as the "Obligors") executed the Forbearance Agreement with SUNZ.

176.   In the Forbearance Agreement, the Obligors admitted they owe SUNZ not less than **$25,800,582.90**, which amount would immediately "arise without offset, defense or counterclaim" after any default under the Forbearance Agreement. Ex. 10, Forbearance Agreement ¶ 1.

177.   Obligors committed several defaults under the Forbearance Agreement, including, but not limited to, the failure to maintain a Loss Fund deficit of not more than $23 million and transferring Collateral outside the ordinary course of business.

178.   Obligors did not cure these defaults and did not pay the amount that immediately became due and owing as a result of those defaults, thereby breaching the Forbearance Agreement.

WHEREFORE, SUNZ respectfully requests this Court enter judgment against Embraceor, LLC, WorkCentric, LLC, WorkCentric 2, LLC, and

WorkCentric 3, LLC, and WC TopCo, LLC for **$25,800,582.90**, plus interest, in favor of SUNZ; awarding SUNZ its reasonable attorneys' fees and costs pursuant to Paragraph 8 of the Forbearance Agreement; and awarding such additional and further relief as this Court deems just and proper.

### COUNT II – BREACH OF CONTRACT (PLEDGE AGREEMENT)
**(SUNZ v. EMBRACEOR, LLC, WORKCENTRIC, LLC,
WORKCENTRIC 2, LLC, WORKCENTRIC 3, LLC,
WC TOPCO, LLC, and WC CONTAINER, LLC)**

179.    SUNZ reincorporates and re-alleges paragraphs 1 through 173 as though fully set forth herein.

180.    WC Container, LLC, Embraceor, LLC, WorkCentric, LLC, WorkCentric 2, LLC, WorkCentric 3, LLC, and WC TopCo, LLC, (collectively defined above as the "Pledgors") executed the Pledge Agreement.

181.    In the Pledge Agreement, the Pledgors granted SUNZ a continuing first priority security interest in all Pledged Collateral, including "all distributions, refunds or returns of capital, repayments of loans or advances, fees, income, profits and other property, interests or proceeds from time to time receivable, received or otherwise distributed or owing to the Pledgors in respect of, or in exchange for, any or all of the Pledged Interests." Ex. 10, Pledge Agreement ¶ 1(b).

182.  The Pledgors further agreed not to "sell, convey, assign, transfer or otherwise dispose of, or grant any option, right or warrant with respect to, any of the Pledged Collateral pledged by such Pledgor." *Id.* ¶ 7.

183.  The Pledgors breached the Pledge Agreement by, among other breaches, disposing of Pledged Collateral and wrongfully prohibiting SUNZ from exercising its rights in the event of a default.

184.  This breach substantially injured the SUNZ's ability to collect its secured and Pledged Collateral, causing damage.

185.  Indeed, given the absence of any going concern value, the Pledged Interests will not ever redress the **$25,800,582.90** that is admittedly owed to SUNZ.

WHEREFORE, SUNZ respectfully requests this Court enter judgment against WC Container LLC, Embraceor, LLC, WorkCentric, LLC, WorkCentric 2, LLC, WorkCentric 3, LLC, and WC TopCo, LLC for money damages in an amount to be determined at trial, but not less than **$25,800,582.90**, plus interest, in favor of SUNZ; awarding SUNZ all reasonable and documents out of pocket expenses, including attorneys' fees, pursuant to Paragraph 11 of the Pledge Agreement; and awarding such additional and further relief as this Court deems just and proper.

## COUNT III – BREACH OF CONTRACT (LOSS FUND)
### (SUNZ v. EMBRACEOR, LLC, WORKCENTRIC, LLC, WORKCENTRIC 2, LLC, AND WORKCENTRIC 3, LLC)

186.   SUNZ reincorporates and re-alleges paragraphs 1 through 173 as though fully set forth herein.

187.   SUNZ paid over $56 million within the deductible layer for claims filed under the Insurance Policies, as of October 11, 2023.

188.   As admitted in the Forbearance Agreement Embraceor, LLC, WorkCentric, LLC, WorkCentric 2, LLC, and WorkCentric 3, LLC (defined above collectively as, "WorkCentric" or "Insured") owe SUNZ not less than **$25,800,582.90** to satisfy their obligations under the 2023 LFMA to provide additional cash for Loss Fund, Premiums, and taxes and surcharges.

189.   The Loss Fund adjusts based on the ongoing administration of claims for WorkCentric's injured employees and the terms of the WorkCentric's insurance program.

190.   WorkCentric has not paid the amounts due to SUNZ.

191.   WorkCentric has breached the terms of the Insurance Policies and 2023 LFMA by failing to pay SUNZ the amounts due.

192.   SUNZ has been damaged by WorkCentric's failure to perform its obligations under the Insurance Policies and 2023 LFMA, including, but not limited to, WorkCentric's failure to pay the amounts due and owing for Loss

Fund, Premiums, and the attorneys' fees and costs incurred to enforce the terms of these contracts.

WHEREFORE, SUNZ respectfully requests this Court enter judgment against Embraceor, LLC, WorkCentric, LLC, WorkCentric 2, LLC, and WorkCentric 3, LLC, for money damages in an amount to be determined at trial, but not less than **$25,800,582.90** as of October 11, 2023, plus any additional amounts due after this date, plus interest, in favor of SUNZ; awarding SUNZ its reasonable attorneys' fees and costs pursuant to ¶ A.2 and A.8 of the 2023 LFMA; and awarding such additional and further relief as this Court deems just and proper.

## COUNT IV – BREACH OF CONTRACT (SECURITY AGREEMENTS) (SUNZ v. EMBRACEOR, LLC, WORKCENTRIC, LLC, WORKCENTRIC 2, LLC, WORKCENTRIC 3, LLC, and WC TOPCO LLC)

193.   SUNZ reincorporates and re-alleges paragraphs 1 through 173 as though fully set forth herein.

194.   To secure WorkCentric's obligations, Defendants Embraceor, LLC, WorkCentric, LLC, WorkCentric 2, LLC, and WorkCentric 3, LLC (defined above collectively as "<u>WorkCentric</u>" or "<u>Insured</u>") made and delivered the January 2023 Security Agreement, which is attached as Exhibit 3.

195.   To further secure WorkCentric's obligations, including those obligations under the July 2023 Note, Defendants Embraceor, LLC,

WorkCentric 2, LLC, WorkCentric 3, LLC, and WC TopCo LLC, made and delivered the July 2023 Security Agreement, which is attached as Exhibit 6.

196.  WorkCentric has not paid the amounts due to SUNZ for Loss Fund.

197.  Defendants Embraceor, LLC, WorkCentric, LLC, WorkCentric 2, LLC, and WorkCentric 3, LLC breached the terms of the Insurance Policies and the 2023 LFMA by failing to pay the amounts due to SUNZ for Loss Fund.

198.  Defendants Embraceor, LLC, WorkCentric 2, LLC, and WorkCentric 3, LLC and WC TopCo LLC breached the July 2023 Promissory Note by failing to pay the balance due at maturity (September 12, 2023).

199.  SUNZ has been damaged by WorkCentric's failure to perform its obligations under the Insurance Policies and the 2023 LFMA, including WorkCentric's failure to pay the amounts due and owing for Loss Fund, and the attorney's fees and costs incurred to enforce the terms of these contracts.

200.  SUNZ has been further damaged by Defendants Embraceor, LLC, WorkCentric 2, LLC, and WorkCentric 3, LLC and WC TopCo LLC breach of the July 2023 Promissory Note by failing to pay the balance due at maturity (September 12, 2023).

WHEREFORE, SUNZ respectfully requests this Court enter judgment against Defendants Embraceor, LLC, WorkCentric, LLC, WorkCentric 2, LLC, and WorkCentric 3, LLC and WC TopCo LLC in favor of SUNZ for damages in an amount to be determined at trial; awarding SUNZ its reasonable attorneys'

fees and costs pursuant to § 3(B) and § 5(e) of the both the January 2023 Security Agreement and July 2023 Security Agreement; and awarding such additional and further relief as this Court deems just and proper.

## COUNT V – BREACH OF PROMISSORY NOTE
## (SUNZ v. EMBRACEOR, LLC, WORKCENTRIC 2, LLC, WORKCENTRIC 3, LLC, and WC TOPCO, LLC)

201.   SUNZ reincorporates and re-alleges paragraphs 1 through 173 as though fully set forth herein.

202.   Defendants Embraceor, LLC, WorkCentric 2, LLC, WorkCentric 3, LLC, and WC TopCo, LLC (defined above collectively as, "Payors"), executed a Commercial Promissory Note dated July 18, 2023 (defined above as "July 2023 Note"). *See* Exhibit 6.

203.   Payors failed to pay all amounts due under the July 2023 Note at maturity on September 12, 2023.

204.   SUNZ served Payors with a demand for payment in the September 19, 2023 Letter (defined above as the "September 2023 Default Letter"). *See* Ex. 8.

205.   Despite demand, Payors failed to pay all the amounts due under the July 2023 Note.

206.   As of October 31, 2023, Payors owed SUNZ $13,993,287 on the July 2023 Note, plus interest, attorney's fees, and costs.

207. The July 2023 Note has continued to accrue interest at the default rate since that time.

208. SUNZ has been damaged by Payors' failure to perform its obligations under the July 2023 Note, including its failure to pay the amounts due and owing under the July 2023 Note, and the attorney's fees and costs incurred to enforce the terms of the July 2023 Note.

WHEREFORE, SUNZ respectfully requests that this Court enter judgment against Payors for money damages in the amount of **$13,993,287**, plus default interest at 10% and late charges, in favor of SUNZ; awarding SUNZ its reasonable attorneys' fees and costs pursuant to Section 12.2 of the July 2023 Note; awarding prejudgment interest; and awarding such additional and further relief as this Court deems just and proper.

## COUNT VI – BREACH OF GUARANTY
### (SUNZ v. ALTSCHULER)

209. SUNZ reincorporates and re-alleges paragraphs 1 through 173 as though fully set forth herein.

210. Altschuler executed a Guaranty for the Insurance Program on January 1, 2023 (defined above as the "Altschuler Guaranty"), which is attached as Exhibit 4, as additional consideration for SUNZ procuring Workers' Compensation for WorkCentric.

211.   WorkCentric admitted it owed SUNZ not less than **$25,800,582.90** to satisfy its obligations to SUNZ as of October 11, 2023.

212.   The amount of indebtedness due and owing to SUNZ by WorkCentric has continued to grow since that time.

213.   Altschuler has breached the terms of the Altschuler Guaranty by failing to pay SUNZ the amounts due and owing from WorkCentric.

214.   SUNZ has been damaged by Altschuler's failure to perform his obligations under the Altschuler Guaranty, including the failure to pay the amounts due and owing from WorkCentric, and the attorney's fees and costs incurred to enforce the terms of the Altschuler Guaranty.

WHEREFORE, SUNZ respectfully requests that this Court enter judgment against Altschuler for money damages in an amount to be determined at trial, but not less than the amount of WorkCentric's liability to SUNZ, plus interest, in favor of SUNZ; awarding SUNZ its reasonable attorneys; fees and costs as set forth in ¶ 6(c) of the Altschuler Guaranty; awarding prejudgment interest; and awarding such additional and further relief as this Court deems just and proper.

## COUNT VII – BREACH OF FIDUCIARY DUTY
### (WORKCENTRIC v. SUTHERLAND)

215.   SUNZ reincorporates and re-alleges paragraphs 1 through 173 as though fully set forth herein.

216. WC Container, LLC, Embraceor, LLC, WorkCentric, LLC, WorkCentric 2, LLC, WorkCentric 3, LLC, and WC TopCo, LLC (collectively, the "Pledgors"), pledged to SUNZ a 100% first priority security interest in each of the Pledgors. *See* Ex. 10, Pledge Agreement, p.1.

217. Embraceor, LLC, WorkCentric, LLC, WorkCentric 2, LLC, WorkCentric 3, LLC, and WC TopCo, LLC, executed the Forbearance Agreement with SUNZ, agreeing to maintain a loss fund balance deficit of not more than $23,000,000.00 and to refrain from transferring any assets outside the ordinary course of business. *See* Ex. 10, Forbearance Agreement, ¶ 3.

218. Based on the payment delays and defaults described herein, WorkCentric was insolvent on or before April 1, 2023, before the Pledge Agreement and Forbearance Agreement were executed.

219. As the ultimate owner and controlling member of each WorkCentric entity, who was authorized to dictate WorkCentric's management, Defendant Sutherland owed a fiduciary duty to WorkCentric.

220. Sutherland breached this fiduciary duty by engaging in self-interested transactions, making material misrepresentations and omissions, and wasting assets of the defendant entities.

221. Most notably, Sutherland caused the defendant entities to send more than $1 million to Harvey and an entity owned and controlled by Sutherland and Harvey.

222.    This self-serving conduct deprived WorkCentric of entity assets and further caused WorkCentric to be unable to pay money due to SUNZ, thereby causing WorkCentric to breach the agreements to SUNZ. This breach further injured WorkCentric.

223.    Sutherland's breach of his fiduciary duties damaged WorkCentric.

WHEREFORE, SUNZ, derivatively on behalf of WorkCentric, respectfully requests that this Court enter judgment against Sutherland for money damages in an amount to be determined at trial and awarding such additional and further relief as this Court deems just and proper.

## COUNT VIII – BREACH OF FIDUCIARY DUTY (WORKCENTRIC v. HARVEY)

224.    SUNZ reincorporates and re-alleges paragraphs 1 through 173 as though fully set forth herein.

225.    WC Container, LLC, Embraceor, LLC, WorkCentric, LLC, WorkCentric 2, LLC, WorkCentric 3, LLC, and WC TopCo, LLC, (collectively, the "Pledgors"), pledged to SUNZ a 100% first priority security interest in each of the Pledgors. *See* Ex. 10, Pledge Agreement, p.1.

226.    Embraceor, LLC, WorkCentric, LLC, WorkCentric 2, LLC, WorkCentric 3, LLC, and WC TopCo, LLC, executed the Forbearance Agreement with SUNZ, agreeing to maintain a loss fund balance deficit of not

more than $23,000,000.00 and to refrain from transferring any assets outside the ordinary course of business.

227.  Based on the payment delays and defaults described herein, Pledgors and Obligors were insolvent on or before April 1, 2023, before the Pledge Agreement was executed.

228.  Defendant Harvey, as the President of each WorkCentric entity and agent of each entity's manager, owed a fiduciary duty to WorkCentric.

229.  Harvey breached this fiduciary duty by engaging in self-interested transactions, making material misrepresentations and omissions, and wasting assets of the defendant entities.

230.  Most notably, Harvey caused the defendant entities to send more than $1 million to himself and to an entity owned and controlled by Sutherland and Harvey.

231.  This self-serving conduct deprived WorkCentric of entity assets and further caused WorkCentric to be unable to pay money due to SUNZ, thereby causing WorkCentric to breach the agreements to SUNZ. This breach further injured WorkCentric.

232.  Harvey's breach of his fiduciary duties damaged WorkCentric.

WHEREFORE, SUNZ, derivatively on behalf of WorkCentric, respectfully requests that this Court enter judgment against Harvey for money

damages in an amount to be determined at trial and awarding such additional and further relief as this Court deems just and proper.

## COUNT IX – AIDING AND ABETTING
## BREACH OF FIDUCIARY DUTY
### (WORKCENTRIC v. SUTHERLAND)

233.   SUNZ reincorporates and re-alleges paragraphs 1 through 173 as though fully set forth herein.

234.   To the extent Sutherland did not owe a fiduciary duty directly to the entity defendants, Sutherland knew that Harvey owed a fiduciary duty as the President of each entity defendant and manager of each Defendant's member.

235.   Sutherland further knew that each entity defendant owed SUNZ several duties under various agreements, including the Forbearance Agreement and Pledge Agreement.

236.   Sutherland further knew that a breach of the Forbearance Agreement or Pledge Agreement would terminate SUNZ's forbearance, which would substantially injure the business and value of the entity defendants by, for example, causing notices of cancellation of insurance to issue.

237.   With such knowledge, Sutherland aided and abetted Harvey's breach of his fiduciary duties to the entity defendants by instructing WorkCentric's accountants to pay money to Harvey directly and to an entity controlled by or affiliated with Harvey (as well as Sutherland himself).

238.   Even if Sutherland did not personally owe a fiduciary duty to WorkCentric, Sutherland knew that this self-interested transaction, occurring during WorkCentric's cure period under the Forbearance Agreement and Pledge Agreement, would leave WorkCentric unable to pay any money to SUNZ and thus certainly result in a breach of both agreements.

239.   In other words, Sutherland knew this transaction would breach at least Harvey's fiduciary duty to WorkCentric. Any yet, Sutherland personally aided that breach by instructing the accountants to initiate the transaction.

240.   Sutherland's conduct damaged WorkCentric.

WHEREFORE, SUNZ, derivatively on behalf of WorkCentric, respectfully requests that this Court enter judgment against Sutherland for money damages in an amount to be determined at trial and awarding such additional and further relief as this Court deems just and proper.

## COUNT X – TORTIOUS INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP (SUNZ v. SUTHERLAND AND HARVEY)

241.   SUNZ reincorporates and re-alleges paragraphs 1 through 173 as though fully set forth herein.

242.   Defendants Embraceor, LLC; WorkCentric, LLC; WorkCentric 2, LLC; WorkCentric 3, LLC; and WC TopCo LLC (the "Obligors") executed the Forbearance Agreement, in which they recognized that SUNZ "possesses a lien on the Collateral," *i.e.*, the Obligors' assets, and agreed they would not

49

"transfer … any of the Collateral to any third party, outside the ordinary course of the [Obligors] business, without the express written consent of SUNZ." Ex. 10, Forbearance Agreement, ¶ 3.

243.   Defendants WC Container LLC; Embraceor, LLC; WorkCentric, LLC; WorkCentric 2, LLC; WorkCentric 3, LLC; and WC TopCo, LLC (the "Pledgors") executed the Pledge Agreement in which they agreed not to "sell, convey, assign, transfer or otherwise dispose of, or grant any option, right or warrant with respect to, any of the Pledged Collateral," including all "profits and other property" of each Pledgor. Ex. 10, Pledge Agreement, ¶¶ 1, 7.

244.   Sutherland knew of both these agreements as he personally participated in negotiating them and even signed the Pledge Agreement, with respect to Sections 1 and 5 only.

245.   Similarly, Harvey knew of both these agreements as he personally participated in negotiating them and signed both agreements on behalf of the Entity Defendants.

246.   Neither Harvey nor Sutherland is personally a full party to either of these agreements. Harvey executed the agreements only on behalf of the Entity Defendants. Sutherland executed the Pledge Agreement only with respect to Sections 1 and 5 and therefore is not a party to the contractual obligations regarding the pledged interests.

247.    With knowledge of the Entity Defendants' contractual obligations, Sutherland and Harvey caused the Entity Defendants to breach both the Forbearance Agreement and Pledge Agreement by directing the entities' accountants to transfer more than $1.2 million of cash held by WorkCentric – constituting both "Collateral" and "Pledged Collateral" – to Harvey himself and to Two Baboons, LLC, which Sutherland and Harvey owned or controlled. These transfers were directed after SUNZ delivered written notice of default under the Pledge and Forbearance Agreements, during WorkCentric's cure period.

248.    Upon information and belief, Sutherland and Harvey caused other transfers to be made, which also interfered with SUNZ's contractual relationship with the Entity Defendants as set forth in the Pledge Agreement, Forbearance Agreement, and the underlying transaction documents for the insurance program.

249.    This interference was undertaken in bad faith for Harvey and Sutherland's personal benefit, was outside the scope of any agency relationship with the Entity Defendants, and was otherwise without privilege or defense.

250.    By causing the entity defendants to breach the Pledge and Forbearance Agreements, and to dissipate assets subject to SUNZ's admitted lien, Sutherland and Harvey caused substantial damage to SUNZ.

WHEREFORE, SUNZ respectfully requests that this Court enter judgment against Sutherland and Harvey for money damages in an amount to be determined at trial and awarding such additional and further relief as this Court deems just and proper.

Date:  May 19, 2025            Respectfully submitted,

_/s/ Jason L. Margolin_
**JASON L. MARGOLIN, ESQ.**
Florida Bar No. 69881
Lead Trial Counsel
jason.margolin@akerman.com
**KEENAN MOLASKEY, ESQ.**
Florida Bar No. 1031827
keenan.molaskey@akerman.com
**AKERMAN LLP**
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
Phone:  (813) 223-7333
Fax:   (813) 223-2837

**CHRISTOPHER S. CARVER, ESQ.**
Florida Bar No. 993580
christopher.carver@akerman.com
**JASON S. OLETSKY, ESQ.**
Florida Bar No. 9301
jason.oletsky@akerman.com
**AKERMAN LLP**
201 East Las Olas Boulevard, Suite 1800
Ft. Lauderdale, FL 33301
Phone:  (954) 463-2700
Fax:  (954) 463-2224

_Counsel for Plaintiff_