# EXHIBIT 5

WC 00 00 01 A
(Ed. 08/10)

# United Wisconsin Insurance Company
### Member Accident Fund Group

A STOCK COMPANY

15200 W. Small Road, New Berlin, WI 53151

## WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

### INFORMATION PAGE

| | |
|---|---|
| **NCCI No.** | **24244** |

| | | | |
|---|---|---|---|
| **NAICS Code** | 561320 | Renewal of Policy Number | WC558-00077-022-SZ |
| **POLICY NO.** | WC558-00077-023-SZ | | |

State Unemployment I.D. No. or other Identifying Number as Required:    FEIN: 843894931    Client ID: 150

1. Insured: WorkCentric LLC
   Mailing LCF American Lumper Services LLC
   Address 1900 Reston Metro Plaza, Ste 600
   Reston, VA  20190

   Producer: Sunz Insurance Solutions, LLC
   Mailing 1301 6th Avenue West
   Address Bradenton FL 34205

   ☐ Individual    ☐ Partnership    ☐ Corporation or    LLC

   Other workplaces not shown above:   See WC 99 06 05 Additional Locations if Applicable

   Additional Named Insured:    See WC 99 06 04 Additional Named Insureds if Applicable

2. Policy Period: The policy is from **01/01/23** to **01/01/24** 12:01 A.M. Standard Time, at the Insured's mailing address.

3. A. Workers Compensation Insurance: Part One of the policy applies to the Workers Compensation Law of the states listed here:
      **CA**

   B. Employers Liability Insurance : Part Two of the policy applies to work in each state listed in item 3.A.
      The limits of our liability under Part Two are:

      | | | |
      |---|---|---|
      | Bodily Injury by Accident | $ 1,000,000 | each accident |
      | Bodily Injury by Disease | $ 1,000,000 | policy limit |
      | Bodily Injury by Disease | $ 1,000,000 | each employee |

   C. Other states Insurance: Part Three of the policy applies to the states, if any, listed here:

      **All states except HI,ND,OH,WA,WY**

   D. This policy includes these endorsements and schedules: See Endorsement Schedule WC 99 06 09 A

4. The premium for this policy will be determined by our Manuals of Rules, Classification, Rates and Rating Plans. All information required below is subject to verification and change by audit.

| Classification | Code No. | Premium Basis Total Estimated Annual Remuneration | Rates Per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| SEE EXTENSION OF INFORMATION PAGE | | | | |
| Experience Modification | SEE WC 99 06 01 by State | | | |
| Other Premium Charges | 0.00 | | | 0.00 |
| Premium Discount | | | | $ 0.00 |
| Expense Constant | | | See Attached Schedule | |

**MINIMUM PREMIUM $ 1,000**    **TOTAL ESTIMATED ANNUAL PREMIUM**    $ 1,000.00

IF INDICATED BELOW, INTERIM ADJUSTMENTS OF PREMIUM SHALL BE MADE:

☐ Semi-Annually    ☐ Quarterly    ☐ Monthly    Deposit Premium

ISSUING OFFICE:  Bradenton FL
DATE PRINTED:    01/05/2023    Countersigned by: _____
WC 00 00 01 A    (Ed. 08/10)

## ADDITIONAL LOCATIONS

Item (1) Other Workplaces Not Shown Above of the Information page is amended to include the following:

**Other Workplace**

LCF American Lumper Services LLC
5011 Firestone Pl
South Gate, CA 90280

| | |
|---|---|
| FEIN: | 271130100 |
| Effective Date: | 01/01/2023 |
| NAICS Code: | 561320 |
| Division #: | 0 |
| Workplace #: | 0000000001 |
| Emp. Link Code: | WC1190CPEO |
| Leasing ID #: | 5: CLIENT COMPANY ONLY (in name of PEO) |

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy)**

Endorsement Effective: 01/01/23          Policy No.: WC558-00077-023-SZ          Endorsement No.: 2
Premium:

Insured:                    WorkCentric LLC
                           LCF American Lumper
                           Services LLC

Insurance Company:    United Wisconsin Insurance    Countersigned by
                      Company

WC 99 06 05

Date Printed: 01/05/2023
(Ed. 11-08)

WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY   **WC 99 06 01**

(Ed. 3-08)

# EXTENSION OF INFORMATION PAGE

Policy Number WC558-00077-023-SZ

| 4. Premium<br><br>**Classification** | **Code #** | **Premium Basis<br>Total Estimated<br>Annual<br>Remuneration** | **Rate Per<br>$100 Of<br>Remuneration** | **Estimated<br>Annual<br>Premium** |
|---|---|---|---|---|
| **Period 01/01/2023-01/01/2024** | | | | |
| **California** | | | | |
| WAREHOUSES - GENERAL MERCHANDI | 8292 | 94 | 19.35 | 18 |
| Manual Premium | | 700 | | 700 |
| Standard Premium | | 700 | | 700 |
| Normal Premium | | 700 | | 700 |
| Total Minimum Premium | 0990 | 700 | | 700 |
| Expense Constant | 0900 | 300 | | 300 |
| Annual Premium | | 1,000 | | 1,000 |
| WCARF Assessment | | 25 | 2.52% | 25 |
| Fraud Assessment | | 5 | 0.47% | 5 |
| SIBA Prem Surcharge | | 14 | 1.37% | 14 |
| UEBT Fund Surcharge | | 1 | 0.14% | 1 |
| OSHF Fund Assessment | | 7 | 0.66% | 7 |
| LECF Assessment | | 7 | 0.70% | 7 |
| Total | | 1,059 | | 1,059 |

**WC 99 06 01**
(Ed. 3-08)
DATE PRINTED: 01/05/2023

© 1991 National Council on Compensation Insurance.

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**                    **WC 99 06 01**

(Ed. 3-08)

## EXTENSION OF INFORMATION PAGE

Policy Number WC558-00077-023-SZ

**Total Estimated Annual Premium**                              $ 1,000

WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY    **WC 99 06 09 A**

(Ed. 11-08)

## ENDORSEMENT SCHEDULE

Item (3.D.) Included Endorsements and Schedules of the Information Page is amended to include the following:

| State | Form Number | Ed. Date | Form Title |
|-------|-------------|----------|------------|
| CA | WC 00 00 01 A | 08/10 | Declaration Page |
| CA | WC 99 06 05 | 03/08 | Additional Locations |
| CA | WC 99 06 01 | 03/08 | Extension of Information Page |
| CA | WC 99 06 09A | 11/08 | Endorsement Schedule |
| CW | U-NTI-PD | 05/20 | Privacy Disclosure Notice |
| CW | WC000403 | 04/84 | Experience Rating Modification Factor Endorsement |
| CW | WC000419 | 01/01 | Premium Due Date Endorsement |
| CW | WC000421F | 08/22 | Catastrophe (Other Than Certified Acts of Terrorism) Premium Endorsement |
| CW | WC000422C | 01/21 | Terrorism Risk Insurance Program Reauthorization Act Disclosure Endorsement |
| CW | WC990660 | 05/17 | Execution Clause Endorsement |
| CA | DISCLOSUR2 | 09/20 | Policyholder Disclosure Notice of Terrorism Insurance Coverage |
| CA | PN049901H | 05/20 | CA Policyholder Notice Your Right to Rating and Dividend Information |
| CA | PN049902B | 05/02 | CA Policyholder Notice Workers' Compensation Insurance Rating Laws |
| CA | PN049904 | 12/01 | CA Policyholder Notice California Insurance Guarantee Association (CIGA) Surcharge |
| CA | PN990451A | 09/20 | CA Loss Prevention Notice |
| CA | WC000000C CA | 01/15 | CA Workers Compensation and Employers Liability Policy |
| CA | WC040301D | 02/18 | CA Policy Amendatory Endorsement |
| CA | WC040310 | 01/95 | CA Duty to Defend Endorsement |

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy)**

Endorsement Effective: 01/01/23          Policy No.: WC558-00077-023-SZ          Endorsement No.: 4
                                                                                  Premium:

Insured:                    WorkCentric LLC
                            LCF American Lumper
                            Services LLC

Insurance Company:          United Wisconsin          Countersigned by
                            Insurance Company          _____

**WC 99 06 09A**

Date Printed:  01/05/2023

WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

**WC 99 06 09 A**

(Ed. 11-08)

| State | Form Number | Ed. Date | Form Title |
|-------|-------------|----------|------------|
| CA | WC040315B | 10/16 | CA Restriction of Coverage to Client Workers Endorsement |
| CA | WC040360B | 01/15 | CA Employers' Liability Coverage Amendatory Endorsement |
| CA | WC040421 | 01/08 | CA Optional Premium Increase Endorsement |
| CA | WC040601B | 01/22 | CA Cancellation Endorsement |
| CA | WC040603B | 01/15 | CA Large Risk Deductible Endorsement |
| CA | WC040604A | 01/23 | CA COVID-19 Reporting Requirement Endorsement |
| CA | WC990107B | 05/15 | CA Special Cancellation Provision |
| CA | WC990458A | 11/21 | CA Claims Agreement |
| CA | WC990459 | 11/18 | CA Large Risk Alternative Rating and Insurance Program Agreement |
| CA | WC990460 | 11/18 | CA Program Values Schedule |

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy)**

Endorsement Effective: 01/01/23          Policy No.: WC558-00077-023-SZ          Endorsement No.: 4

Premium:

Insured:                    WorkCentric LLC
                           LCF American Lumper
                           Services LLC

Insurance Company:          United Wisconsin          Countersigned by
                           Insurance Company

**WC 99 06 09A**

Date Printed:  01/05/2023

WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY                    **WC 99 06 60**

(Ed. 05/17 )

---

### Execution Clause Endorsement

In Witness Whereof, the Company has caused this policy to be executed and attested to by its President and Secretary.  Where required by law, the Information Page has been countersigned by our duly authorized representative.


Stephan Cooper, President                              Bobbi J. Elliott , Secretary


This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective  01/01/2023          Policy No.  WC558-00077-023-SZ          Endorsement No.  0
                                                                                                                    Premium  $ 1,000.00

Insured              WorkCentric LLC
                        LCF American Lumper Services LLC

Insurance Company   United Wisconsin Insurance Company          Countersigned by  _____

WC 99 06 60
(Ed. 05/17)



## Privacy Disclosure Notice

**To our customers**

United Wisconsin Insurance Company ("the Company" or "we") does not disclose any non-public personal information about our individual policyholders, applicants, claimants, customers or former customers to any non-affiliated third party other than those permitted by law and only for the purpose of transacting the business of insurance.

**What kinds of information do we collect and from whom?**

The Company collects majority of its information directly from you and/or your agent. This information can include, but is not limited to, name, address, e-mail address, phone number, social security number, income, account balances, transaction history, credit history, insurance claim history, and medical information. The personal information collected is used to help serve your insurance needs, conduct company business, adjust claims, provide customer service and fulfill legal regulatory requirements.

**What do we do with the information collected about you?**

We use the information collected to evaluate your request for insurance coverage, provide policy and premium quotes, service your claims, and determine your rates. We do not disclose information about you to anyone unless such disclosure is expressly authorized by you, required by law, or is necessary to enable our employees or authorized agents to perform functions for the Company. The information is not available to the public.

**What safeguards do we use?**

The Company has a security program consisting of physical, electronic, and procedural safeguards designed to ensure the security and confidentiality of information collected and disclosed.

For a copy of our Privacy Policy:

| | |
|---|---|
| Visit our website: | www.unitedheartland.com |
| Call toll-free: | 1-800-258-2667 |
| Write: | United Wisconsin Insurance Company |
| | Office of the General Counsel |
| | Attn: Privacy Officer |
| | PO Box 40790 |
| | Lansing, MI 48901-7990 |

U-NTI-PD
(Ed. 5-20)

Case 3-23-cv-02517-SEM-CRT Document 30-5 Filed 05/19/25 Page 10 of 84 PageID 964

WC 00 04 03
(Ed. 04-84)

## EXPERIENCE RATING MODIFICATION FACTOR ENDORSEMENT

The premium for the policy will be adjusted by an experience rating modification factor. The factor was not available when the policy was issued. The factor, if any, shown on the Information Page is an estimate. We will issue an endorsement to show the proper factor, if different from the factor shown, when it is calculated.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective: 01/01/23          Policy No.: WC558-00077-023-SZ          Endorsement No.: 0
                                                                                                                    Premium: $ 1,000.00

Insured:                      WorkCentric LLC
                                  LCF American Lumper Services LLC
Insurance Company:  United Wisconsin Insurance Company          Countersigned by: _____

© Copyright 1984 National Council on Compensation Insurance

WC 00 04 03
(Ed. 04-84)

Page 1 of 1

---

### PREMIUM DUE DATE ENDORSEMENT

This endorsement is used to amend:

Section D. of Part Five of the policy is replaced by this provision.

### PART FIVE
### PREMIUM

D.  **Premium** is amended to read:
    You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid.  **The due date for audit and retrospective premiums is the date of the billing.**

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective: 01/01/23       Policy No.: WC558-00077-023-SZ       Endorsement No.: 0
                                                                          Premium: $ 1,000.00

Insured:          WorkCentric LLC
                  LCF American Lumper Services LLC
Insurance Company: United Wisconsin Insurance Company       Countersigned by: _____

© Copyright 2001 National Council on Compensation Insurance

WC 00 04 19
(Ed. 01-01)

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**   **WC 00 04 21 F**

(Ed. 08-2022 Countrywide, Ed. 07-2022 in Texas)

### Catastrophe (Other Than Certified Acts of Terrorism) Premium Endorsement

This endorsement is notification that we are charging premium to cover the losses that may occur in the event of a Catastrophe (Other Than Certified Acts of Terrorism) as that term is defined below. Your policy provides coverage for workers compensation losses caused by a Catastrophe (Other Than Certified Acts of Terrorism). Coverage for such losses is subject to all terms, definitions, exclusions, and conditions in your policy, and any applicable federal and/or state laws, rules, or regulations. This premium charge does not provide funding for Certified Acts of Terrorism contemplated under the Terrorism Risk Insurance Program Reauthorization Act Disclosure Endorsement attached to this policy.

For purposes of this endorsement, Catastrophe (Other Than Certified Acts of Terrorism) is defined as: A single event or peril resulting in a group of claims with aggregate workers compensation losses in excess of $50 million. This $50 million threshold applies per occurrence, across all states for which claims arise from a single event or peril.

The premium charge for the coverage your policy provides for workers compensation losses caused by a Catastrophe (Other Than Certified Acts of Terrorism) is shown in Item 4 of the Information Page or in the Schedule below.

**Schedule**

| State | Rate | Premium |
|-------|------|---------|
| CA | 0.02 | |

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy)**

Endorsement Effective  01/01/23          Policy No. WC558-00077-023-SZ          Endorsement No.  0
Insured:                     American Lumper Services LLC                       Policy Effective Date : 01/01/2023

Insurance Company:     United Wisconsin Insurance Company

Countersigned By :

**WC 00 04 21 F**

(Ed. 08-22 Countrywide; Ed. 07-22 in Texas)

© Copyright 2022 National Council on Compensation Insurance, Inc. All Rights Reserved.

Case 2:23-cv-02517-SHM-CRT Document 80-5 Filed 05/19/25 Page 13 of 84 PageID 967   WC 00 04 22 C

## TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION ACT DISCLOSURE ENDORSEMENT

This endorsement addresses the requirements of the Terrorism Risk Insurance Act of 2002 as amended and extended by the Terrorism Risk Insurance Program Reauthorization Act of 2019. It serves to notify you of certain limitations under the Act, and that your insurance carrier is charging premium for losses that may occur in the event of an Act of Terrorism.

Your policy provides coverage for workers compensation losses caused by Acts of Terrorism, including workers compensation benefit obligations dictated by state law.  Coverage for such losses is still subject to all terms, definitions, exclusions, and conditions in your policy, and any applicable federal and/or state laws, rules, or regulations.

### Definitions

The definitions provided in this endorsement are based on and have the same meaning as the definitions in the Act. If words or phrases not defined in this endorsement are defined in the Act, the definitions in the Act will apply.

"Act" means the Terrorism Risk Insurance Act of 2002, which took effect on November 26, 2002, and any amendments thereto, including any amendments resulting from the Terrorism Risk Insurance Program Reauthorization Act of 2019.

"Act of Terrorism" means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security, and the Attorney General of the United States, as meeting all of the following requirements:

    a.  The act is an act of terrorism.

    b.  The act is violent or dangerous to human life, property, or infrastructure.

    c.  The act resulted in damage within the United States, or outside of the United States in the case of the premises of United States missions or certain air carriers or vessels.

    d.  The act has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Insured Loss" means any loss resulting from an act of terrorism (and, except for Pennsylvania, including an act of war, in the case of workers compensation) that is covered by primary or excess property and casualty insurance issued by an insurer if the loss occurs in the United States or at the premises of United States missions or to certain air carriers or vessels.

"Insurer Deductible" means, for the period beginning on January 1, 2021, and ending on December 31, 2027, an amount equal to 20% of our direct earned premiums during the immediately preceding calendar year.

© Copyright 2021 National Council on Compensation Insurance

Case 25-50151-JPS Doc 167-5 Filed 05/19/25 Page 14 of 84

**Limitation of Liability**

The Act limits our liability to you under this policy. If aggregate Insured Losses exceed $100,000,000,000 in a calendar year and if we have met our Insurer Deductible, we are not liable for the payment of any portion of the amount of Insured Losses that exceeds $100,000,000,000; and for aggregate Insured Losses up to $100,000,000,000, we will pay only a pro rata share of such Insured Losses as determined by the Secretary of the Treasury.

**Policyholder Disclosure Notice**

1.  Insured Losses would be partially reimbursed by the United States Government. If the aggregate industry Insured Losses occurring in any calendar year exceed $200,000,000, the United States Government would pay 80% of our Insured Losses that exceed our Insurer Deductible.

2.  Notwithstanding item 1 above, the United States Government will not make any payment under the Act for any portion of Insured Losses that exceed $100,000,000,000.

3.  The premium charge for the coverage your policy provides for Insured Losses is included in the amount shown in Item 4 of the Information Page or in the Schedule below.

| State | Rate | Premium |
|-------|------|---------|
| CA | .0200 | |

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective: 01/01/23          Policy No.: WC558-00077-023-SZ          Endorsement No.: 0
                                                                                 Premium: $ 1,000.00

Insured:                    WorkCentric LLC
                            LCF American Lumper Services LLC
Insurance Company:  United Wisconsin Insurance Company      Countersigned by: _____

© Copyright 2021 National Council on Compensation Insurance

WC 00 04 22 C
(Ed. 01-21)

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM
## INSURANCE COVERAGE

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2019, the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury – in consultation with the Secretary of Homeland Security, and the Attorney General of the United States – to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels, or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as exclusion for nuclear events. Under the formula, the United States Government generally reimburses 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is listed under Item 4 Premium of the Policy Information Page, and does not include any charges for the portion of losses covered by the United States Government under the Act.

## POLICYHOLDER NOTICE
### YOUR RIGHT TO RATING AND DIVIDEND INFORMATION

**I.      Information Available to You**

   **A.      Information Available from Us – United Wisconsin Insurance Company**

   (1)  General questions regarding your policy should be directed to: **Customer Service at**

> **United Wisconsin Insurance Company**
> **15200 West Small Road**
> **New Berlin, WI  53151**
> **1-800-258-2667**
> **www.unitedheartland.com**

   (2)  **Dividend Calculation.** If this is a participating policy (a policy on which a dividend may be paid), upon payment or non-payment of a dividend, we shall provide a written explanation to you that sets forth the basis of the dividend calculation. The explanation will be in clear, understandable language and will express the dividend as a dollar amount and as a percentage of the earned premium for the policy year on which the dividend is calculated.

   (3)  **Claims Information.** Pursuant to Sections 3761 and 3762 of the California Labor Code, you are entitled to receive information in our claim files that affects your premium. Copies of documents will be supplied at your expense during reasonable business hours.

      For claims covered under this policy, we will estimate the ultimate cost of unsettled claims for statistical purposes eighteen months after the policy becomes effective and will report those estimates to the Workers' Compensation Insurance Rating Bureau of California (WCIRB) no later than twenty months after the policy becomes effective. The cost of any settled claims will also be reported at that time. At twelve-month intervals thereafter, we will update and report to the WCIRB the estimated cost of any unsettled claims and the actual final cost of any claims settled in the interim. The amounts we report will be used by the WCIRB to compute your experience modification if you are eligible for experience rating.

   **B.      Information Available from the Workers' Compensation Insurance Rating Bureau of California**

   (1)  The WCIRB is a licensed rating organization and the California Insurance Commissioner's designated statistical agent. As such, the WCIRB is responsible for administering the *California Workers' Compensation Uniform Statistical Reporting Plan—1995* (USRP) and the *California Workers' Compensation Experience Rating Plan—1995* (ERP). WCIRB contact information is: WCIRB, 1221 Broadway, Suite 900, Oakland, CA 94612, Attn: Customer Service; 888.229.2472 (phone); 415.778.7272 (fax); and customerservice@wcirb.com (email). The regulations contained in the USRP and ERP are available for public viewing through the WCIRB's website at wcirb.com.

   (2)  **Policyholder Information.** Pursuant to California Insurance Code (CIC) Section 11752.6, upon written request, you are entitled to information relating to loss experience, claims, classification assignments, and policy contracts as well as rating plans, rating systems, manual rules, or other information impacting your premium that is maintained in the records of the WCIRB. Complaints and Requests for Action requesting policyholder information should be forwarded to: WCIRB, 1221 Broadway, Suite 900, Oakland, CA 94612, Attn: Custodian of Records. The Custodian of Records can be reached at 415.777.0777 (phone) and 415.778.7272 (fax).

   (3)  **Experience Rating Form.** Each experience rated risk may receive a single copy of its current Experience Rating Form/Worksheet free of charge by completing a Policyholder Experience Rating Worksheet Request Form on the WCIRB's website at wcirb.com/ratesheet. The Experience Rating Form/Worksheet will include a Loss-Free Rating, which is the experience modification that would have been calculated if $0 (zero) actual losses were incurred during the experience period. This hypothetical rating calculation is provided for informational purposes only.

**II.     Dispute Process**

      You may dispute our actions or the actions of the WCIRB pursuant to CIC Sections 11737 and 11753.1.

   **A.      Our Dispute Resolution Process.**

      If you are aggrieved by our decision adopting a change in a classification assignment that results in increased premium, or by the application of our rating system to your workers' compensation insurance, you may dispute these matters with us. If you are dissatisfied with the outcome of the initial dispute with us, you may send us a written Complaint and Request for Action as outlined below.

PN 04 99 01 H

**(Ed. 05-20)**

You may send us a written Complaint and Request for Action requesting that we reconsider a change in a classification assignment that results in an increased premium and/or requesting that we review the manner in which our rating system has been applied in connection with the insurance afforded or offered you. Written Complaints and Requests for Action should be forwarded to:

**United Wisconsin Insurance Company**
**Attn:  Olivia Dimithe**
**Consumer Complaints**
**3 Hutton Centre Dr. #550**
**Santa Ana, CA  92707**
**1-800-258-2667**
**Fax:  517-346-2069**

After you send your Complaint and Request for Action, we have 30 days to send you a written notice indicating whether or not your written request will be reviewed. If we agree to review your request, we must conduct the review and issue a decision granting or rejecting your request within 60 days after sending you the written notice granting review. If we decline to review your request, if you are dissatisfied with the decision upon review, or if we fail to grant or reject your request or issue a decision upon review, you may appeal to the Insurance Commissioner as described in paragraph II.C., below.

B.    **Disputing the Actions of the WCIRB.** If you have been aggrieved by any decision, action, or omission to act of the WCIRB, you may request, in writing, that the WCIRB reconsider its decision, action, or omission to act. You may also request, in writing, that the WCIRB review the manner in which its rating system has been applied in connection with the insurance afforded or offered you. For requests related to classification disputes, the reporting of experience, or coverage issues, your initial request for review must be received by the WCIRB within 12 months after the expiration date of the policy to which the request for review pertains, except if the request involves the application of the Revision of Losses rule. For requests related to your experience modification, your initial request for review must be received by the WCIRB within 6 months after the issuance, or 12 months after the expiration date, of the experience modification to which the request for review pertains, whichever is later, except if the request for review involves the application of the Revision of Losses rule. If the request involves the Revision of Losses rule, the time to state your appeal may be longer. (See Section VI, Rule 7 of the ERP).

You may commence the review process by sending the WCIRB a written Inquiry. Written Inquiries should be sent to: WCIRB, 1221 Broadway, Suite 900, Oakland, CA 94612, Attn: Customer Service. Customer Service can be reached at 888.229.2472 (phone), 415.778.7272 (fax) and customerservice@wcirb.com (email).

If you are dissatisfied with the WCIRB's decision upon an Inquiry, or if the WCIRB fails to respond within 90 days after receipt of the Inquiry, you may pursue the subject of the Inquiry by sending the WCIRB a written Complaint and Request for Action. After you send your Complaint and Request for Action, the WCIRB has 30 days to send you written notice indicating whether or not your written request will be reviewed. If the WCIRB agrees to review your request, it must conduct the review and issue a decision granting or rejecting your request within 60 days after sending you the written notice granting review. If the WCIRB declines to review your request, if you are dissatisfied with the decision upon review, or if the WCIRB fails to grant or reject your request or issue a decision upon review, you may appeal to the Insurance Commissioner as described in paragraph II.C., below. Written Complaints and Requests for Action should be forwarded to: WCIRB, 1221 Broadway, Suite 900, Oakland, CA 94612, Attn: Complaints and Reconsideration. The WCIRB's contact information is 888.229.2472 (phone), 415.371.5204 (fax) and customerservice@wcirb.com (email).

C.    **California Department of Insurance – Appeals to the Insurance Commissioner.** After you follow the appropriate dispute resolution process described above, if (1) we or the WCIRB decline to review your request, (2) you are dissatisfied with the decision upon review, or (3) we or the WCIRB fail to grant or reject your request or issue a decision upon review, you may appeal to the Insurance Commissioner pursuant to CIC Sections 11737, 11752.6, 11753.1 and Title 10, California Code of Regulations, Section 2509.40 et seq. You must file your appeal within 30 days after we or the WCIRB send you the notice rejecting review of your Complaint and Request for Action or the decision upon your Complaint and Request for Action. If no written decision regarding your Complaint and Request for Action is sent, your appeal must be filed within 120 days after you sent your Complaint and Request for Action to us or to the WCIRB. The filing address for all appeals to the Insurance Commissioner is:

> Administrative Hearing Bureau
> California Department of Insurance
> 1901 Harrison Street, 3rd Floor
> Oakland, CA 94612
> 415.538.4243

You have the right to a hearing before the Insurance Commissioner, and our action, or the action of the WCIRB, may be affirmed, modified or reversed.

**PN 04 99 01 H**

**(Ed. 05-20)**

**III.    Resources Available to You in Obtaining Information and Pursuing Disputes**

**A.    Policyholder Ombudsman.** Pursuant to California Insurance Code Section 11752.6, a policyholder ombudsman is available at the WCIRB to assist you in obtaining and evaluating the rating, policy, and claims information referenced in I.A. and I.B., above. The ombudsman may advise you on any dispute with us, the WCIRB, or on an appeal to the Insurance Commissioner pursuant to Section 11737 of the Insurance Code. The address of the policyholder ombudsman is WCIRB, 1221 Broadway, Suite 900, Oakland, CA 94612, Attn: Policyholder Ombudsman. The policyholder ombudsman can be reached at 415.778.7159 (phone), 415.371.5288 (fax) and ombudsman@wcirb.com (email).

**B.    California Department of Insurance – Information and Assistance.** Information and assistance on policy questions can be obtained from the Department of Insurance Consumer HOTLINE, 800.927.HELP (4357) or insurance.ca.gov. For questions and correspondence regarding appeals to the Administrative Hearing Bureau, see the contact information in paragraph II.C.

This notice does not change the policy to which it is attached.

**PN 04 99 02 B**

**(Ed. 05-02)**

## POLICYHOLDER NOTICE

### CALIFORNIA WORKERS' COMPENSATION
### INSURANCE RATING LAWS

Pursuant to Section 11752.8 of the California Insurance Code, we are providing you with an explanation of the California workers' compensation rating laws.

1. We establish our own rates for workers' compensation. Our rates, rating plans, and related information are filed with the insurance commissioner and are open for public inspection.

2. The insurance commissioner can disapprove our rates, rating plans, or classifications only if he or she has determined after public hearing that our rates might jeopardize our ability to pay claims or might create a monopoly in the market. A monopoly is defined by law as a market where one insurer writes 20% or more of that part of the California workers' compensation insurance that is not written by the State Compensation Insurance Fund. If the insurance commissioner disapproves our rates, rating plans, or classifications, he or she may order an increase in the rates applicable to outstanding policies.

3. Rating organizations may develop pure premium rates that are subject to the insurance commissioner's approval. A pure premium rate reflects the anticipated cost and expenses of claims per $100 of payroll for a given classification. Pure premium rates are advisory only, as we are not required to use the pure premium rates developed by any rating organization in establishing our own rates.

4. We must adhere to a single, uniform experience rating plan. If you are eligible for experience rating under the plan, we will be required to adjust your premium to reflect your claim history. A better claim history generally results in a lower experience rating modification; more claims, or more expensive claims, generally result in a higher experience rating modification. The uniform experience rating plan, which is developed by the insurance rating organization designated by the insurance commissioner, is subject to approval by the insurance commissioner.

5. A standard classification system, developed by the insurance rating organization designated by the insurance commissioner, is subject to approval by the insurance commissioner. The standard classification system is a method of recognizing and separating policyholders into industry or occupational groups according to their similarities and/or differences. We can adopt and apply the standard classification system or develop and apply our own classification system, provided we can report the payroll, expenses, and other costs of claims in a way that is consistent with the uniform statistical plan or the standard classification system.

6. Our rates and classifications may not violate the Unruh Civil Rights Act or be unfairly discriminatory.

7. We will provide an appeal process for you to appeal the way we rate your insurance policy. The process requires us to respond to your written appeal within 30 days. If you are not satisfied with the result of your appeal, you may appeal our decision to the insurance commissioner.

### California Workers' Compensation Insurance
### Notice of Nonrenewal

Section 11664 of the California Insurance Code requires us, in most instances, to provide you with a notice of nonrenewal. Except as specified in paragraphs 1 through 6 below, if we elect to nonrenew your policy, we are required to deliver or mail to you a written notice stating the reason or reasons for the nonrenewal of the policy. The notice is required to be sent to you no earlier than 120 days before the end of the policy period and no later than 30 days before the end of the policy period. If we fail to provide you the required notice, we are required to continue the coverage under the policy with no change in the premium rate until 60 days after we provide you with the required notice.

**PN 04 99 02 B**

**(Ed. 05-02)**

We are not required to provide you with a notice of nonrenewal in any of the following situations:

1.  Your policy was transferred or renewed without a change in its terms or conditions or the rate on which the premium is based to another insurer or other insurers who are members of the same insurance group as us.

2.  The policy was extended for 90 days or less and the required notice was given prior to the extension.

3.  You obtained replacement coverage or agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

4.  The policy is for a period of no more than 60 days and you were notified at the time of issuance that it may not be renewed.

5.  You requested a change in the terms or conditions or risks covered by the policy within 60 days prior to the end of the policy period.

6.  We made a written offer to you to renew the policy at a premium rate increase of less than 25 percent.

    (A) If the premium rate in your governing classification is to be increased 25 percent or greater and we intend to renew the policy, we shall provide a written notice of a renewal offer not less than 30 days prior to the policy renewal date. The governing classification shall be determined by the rules and regulations established in accordance with California Insurance Code Section 11750.3(c).

    (B) For purposes of this Notice, "premium rate" means the cost of insurance per unit of exposure prior to the application of individual risk variations based on loss or expense considerations such as scheduled rating and experience rating.

This notice does not change the policy to which it is attached.

PN 04 99 04

(Ed. 12-01)

# POLICYHOLDER NOTICE

### CALIFORNIA INSURANCE GUARANTEE ASSOCIATION (CIGA) SURCHARGE

Companies writing property and casualty insurance business in California are required to participate in the California Insurance Guarantee Association. If a company becomes insolvent, the California Insurance Guarantee Association settles unpaid claims and assesses each insurance company for its fair share.

California law requires all companies to surcharge policies to recover these assessments.  If your policy is surcharged, "CA Surcharge" or "CA Surcharge (CIGA Surcharge)" with an amount will be displayed on your premium notice.

This notice does not change the policy to which it is attached.

**PN 99 04 51 A**
**(Ed. 08/20)**

## CALIFORNIA LOSS PREVENTION NOTICE

We are required by law to maintain or provide occupational safety and health loss prevention consultation services as required by Labor Code Section 6354.5 and Insurance Code Section 11703. These services are available at no additional charge to the insured.

The available Loss Prevention Consultation Services include the following:

- A workplace survey, including discussion with management and, where appropriate, non-management personnel with permission of the employer.
- A review of injury records with appropriate personnel.
- The development of a plan to improve the employer's health and safety loss prevention experience, which shall include, where appropriate, modifications to the employer's injury and illness prevention program established pursuant to Labor Code Section 6401.7.

These services will identify the hazards exposing the policyholder to, or causing, significant workers' compensation losses, and will advise the insured of steps needed to mitigate the identified workers' compensation losses or exposures.

Workers' compensation insurance policyholders may register comments about the insurer's loss control consultation services by writing to: State of California, Department of Industrial Relations, Division of Occupational Safety and Health, P.O. Box 420603, San Francisco, CA 94142.

**PN 99 04 51 A**
**(Ed. 08/20)**

## WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

In return for the payment of the premium and subject to all terms of this policy, we agree with you as follows:

### GENERAL SECTION

#### A. The Policy

This policy includes at its effective date the Information Page and all endorsements and schedules listed there. It is a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the insurer named on the Information Page). The only agreements relating to this insurance are stated in this policy. The terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy.

#### B. Who is Insured

You are insured if you are an employer named in Item 1 of the Information Page. If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees.

#### C. Workers Compensation Law

Workers Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page. It includes any amendments to that law which are in effect during the policy period. It does not include any federal workers or workmen's compensation law, any federal occupational disease law or the provisions of any law that provide nonoccupational disability benefits.

#### D. State

State means any state of the United States of America, and the District of Columbia.

#### E. Locations

This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A. states unless you have other insurance or are self-insured for such workplaces.

### PART ONE
### WORKERS COMPENSATION INSURANCE

#### A. How This Insurance Applies

This workers compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. Bodily injury by accident must occur during the policy period.
2. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

#### B. We Will Pay

We will pay promptly when due the benefits required of you by the workers compensation law.

#### C. We Will Defend

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

#### D. We Will Also Pay

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding or suit we defend:

1. reasonable expenses incurred at our request, but not loss of earnings;
2. premiums for bonds to release attachments and for appeal bonds in bond amounts up to the amount payable under this insurance;
3. litigation costs taxed against you;
4. interest on a judgment as required by law until we offer the amount due under this insurance; and
5. expenses we incur.

#### E. Other Insurance

We will not pay more than our share of benefits and costs covered by this insurance and other

© Copyright 2013 National Council on Compensation Insurance, Inc. All Rights Reserved.

WC 00 00 00 C CA **WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**

(Ed. 1-15)

insurance or self-insurance. Subject to any limits of liability that may apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

#### F. Payments You Must Make

You are responsible for any payments in excess of the benefits regularly provided by the workers compensation law including those required because:

1. of your serious and willful misconduct;
2. you knowingly employ an employee in violation of law;
3. you fail to comply with a health or safety law or regulation; or
4. you discharge, coerce or otherwise discriminate against any employee in violation of the workers compensation law.

If we make any payments in excess of the benefits regularly provided by the workers compensation law on your behalf, you will reimburse us promptly.

#### G. Recovery From Others

We have your rights, and the rights of persons entitled to the benefits of this insurance, to recover our payments from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them.

#### H. Statutory Provisions

These statements apply where they are required by law.

1. As between an injured worker and us, we have notice of the injury when you have notice.
2. Your default or the bankruptcy or insolvency of you or your estate will not relieve us of our duties under this insurance after an injury occurs.
3. We are directly and primarily liable to any person entitled to the benefits payable by this insurance. Those persons may enforce our duties; so may an agency authorized by law. Enforcement may be against us or against you and us.
4. Jurisdiction over you is jurisdiction over us for purposes of the workers compensation law. We are bound by decisions against you under that law, subject to the provisions of this policy that are not in conflict with that law.
5. This insurance conforms to the parts of the

workers compensation law that apply to:

a. benefits payable by this insurance;
b. special taxes, payments into security or other special funds, and assessments payable by us under that law.

6. Terms of this insurance that conflict with the workers compensation law are changed by this statement to conform to that law.

Nothing in these paragraphs relieves you of your duties under this policy.

### PART TWO
### EMPLOYERS LIABILITY INSURANCE

#### A. How This Insurance Applies

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. The bodily injury must arise out of and in the course of the injured employee's employment by you.
2. The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.
3. Bodily injury by accident must occur during the policy period.
4. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.
5. If you are sued, the original suit and any related legal actions for damages for bodily injury by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

#### B. We Will Pay

We will pay all sums that you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

The damages we will pay, where recovery is permitted by law, include damages:

1. For which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against

© Copyright 2013 National Council on Compensation Insurance, Inc. All Rights Reserved.

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**    **WC 00 00 00 C CA**

(Ed. 1-15)

such third party as a result of injury to your employee;

2. For care and loss of services; and

3. For consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee; provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

4. Because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

C. **Exclusions**

This insurance does not cover:

1. Liability assumed under a contract. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner;

2. Punitive or exemplary damages because of bodily injury to an employee employed in violation of law;

3. Bodily injury to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;

4. Any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

5. Bodily injury intentionally caused or aggravated by you;

6. Bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America or Canada who is temporarily outside these countries;

7. Damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions;

8. Bodily injury to any person in work subject to the Longshore and Harbor Workers' Compensation Act (33 U.S.C. Sections 901 et seq.), the Nonappropriated Fund Instrumentalities Act (5 U.S.C. Sections 8171 et seq.), the Outer Continental Shelf Lands Act (43 U.S.C. Sections 1331 et seq.), the Defense Base Act (42 U.S.C. Sections 1651–1654), the Federal Mine Safety and Health Act (30 U.S.C. Sections 801 et seq. and 901–944), any other federal workers or workmen's compensation law or other federal occupational disease law, or any amendments to these laws;

9. Bodily injury to any person in work subject to the Federal Employers' Liability Act (45 U.S.C. Sections 51 et seq.), any other federal laws obligating an employer to pay damages to an employee due to bodily injury arising out of or in the course of employment, or any amendments to those laws;

10. Bodily injury to a master or member of the crew of any vessel, and does not cover punitive damages related to your duty or obligation to provide transportation, wages, maintenance, and cure under any applicable maritime law;

11. Fines or penalties imposed for violation of federal or state law; and

12. Damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 U.S.C. Sections 1801 et seq.) and under any other federal law awarding damages for violation of those laws or regulations issued thereunder, and any amendments to those laws.

D. **We Will Defend**

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

E. **We Will Also Pay**

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding, or suit we defend:

1. Reasonable expenses incurred at our request, but not loss of earnings;

2. Premiums for bonds to release attachments and for appeal bonds in bond amounts up to the limit of our liability under this insurance;

3. Litigation costs taxed against you;

4. Interest on a judgment as required by law until we offer the amount due under this insurance; and

5. Expenses we incur.

© Copyright 2013 National Council on Compensation Insurance, Inc. All Rights Reserved.

**WC 00 00 00 C CA**          **WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**

(Ed. 1-15)

F.  **Other Insurance**

We will not pay more than our share of damages and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance and self-insurance will be equal until the loss is paid.

G.  **Limits of Liability**

Our liability to pay for damages is limited. Our limits of liability are shown in Item 3.B. of the Information Page. They apply as explained below.

1.  Bodily Injury by Accident. The limit shown for "bodily injury by accident—each accident" is the most we will pay for all damages covered by this insurance because of bodily injury to one or more employees in any one accident.

    A disease is not bodily injury by accident unless it results directly from bodily injury by accident.

2.  Bodily Injury by Disease. The limit shown for "bodily injury by disease—policy limit" is the most we will pay for all damages covered by this insurance and arising out of bodily injury by disease, regardless of the number of employees who sustain bodily injury by disease. The limit shown for "bodily injury by disease—each employee" is the most we will pay for all damages because of bodily injury by disease to any one employee.

    Bodily injury by disease does not include disease that results directly from a bodily injury by accident.

3.  We will not pay any claims for damages after we have paid the applicable limit of our liability under this insurance.

H.  **Recovery From Others**

We have your rights to recover our payment from anyone liable for an injury covered by this insurance. You will do everything necessary to protect those rights for us and to help us enforce them.

I.  **Actions Against Us**

There will be no right of action against us under this insurance unless:

1.  You have complied with all the terms of this policy; and

2.  The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability. The bankruptcy or insolvency of you or your estate will not relieve us of our obligations under this Part.

### PART THREE
### OTHER STATES INSURANCE

A.  **How This Insurance Applies**

1.  This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page.

2.  If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for work in that state, all provisions of the policy will apply as though that state were listed in Item 3.A. of the Information Page.

3.  We will reimburse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.

4.  If you have work on the effective date of this policy in any state not listed in Item 3.A. of the Information Page, coverage will not be afforded for that state unless we are notified within thirty days.

B.  **Notice**

Tell us at once if you begin work in any state listed in Item 3.C. of the Information Page.

### PART FOUR
### YOUR DUTIES IF INJURY OCCURS

Tell us at once if injury occurs that may be covered by this policy. Your other duties are listed here.

1.  Provide for immediate medical and other services required by the workers compensation law.

2.  Give us or our agent the names and addresses of the injured persons and of witnesses, and other information we may need.

3.  Promptly give us all notices, demands and legal

**Page 4 of 6**

© Copyright 2013 National Council on Compensation Insurance, Inc. All Rights Reserved.

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**     **WC 00 00 00 C CA**

(Ed. 1-15)

papers related to the injury, claim, proceeding or suit.

4. Cooperate with us and assist us, as we may request, in the investigation, settlement or defense of any claim, proceeding or suit.

5. Do nothing after an injury occurs that would interfere with our right to recover from others.

6. Do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

## PART FIVE—PREMIUM

### A. Our Manuals

All premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications. We may change our manuals and apply the changes to this policy if authorized by law or a governmental agency regulating this insurance.

### B. Classifications

Item 4 of the Information Page shows the rate and premium basis for certain business or work classifications. These classifications were assigned based on an estimate of the exposures you would have during the policy period. If your actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy.

### C. Remuneration

Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:

1. all your officers and employees engaged in work covered by this policy; and

2. all other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers compensation obligations.

### D. Premium Payments

You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid.

### E. Final Premium

The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classifications covered by this policy.

If this policy is canceled, final premium will be determined in the following way unless our manuals provide otherwise:

1. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the minimum premium.

2. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force, and increased by our short-rate cancelation table and procedure. Final premium will not be less than the minimum premium.

### F. Records

You will keep records of information needed to compute premium. You will provide us with copies of those records when we ask for them.

### G. Audit

You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.

© Copyright 2013 National Council on Compensation Insurance, Inc. All Rights Reserved.

**WC 00 00 00 C CA**　　　**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**

(Ed. 1-15)

## PART SIX—CONDITIONS

### A. Inspection

We have the right, but are not obliged to inspect your workplaces at any time. Our inspections are not safety inspections. They relate only to the insurability of the workplaces and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person to provide for the health or safety of your employees or the public. We do not warrant that your workplaces are safe or healthful or that they comply with laws, regulations, codes or standards. Insurance rate service organizations have the same rights we have under this provision.

### B. Long Term Policy

If the policy period is longer than one year and sixteen days, all provisions of this policy will apply as though a new policy were issued on each annual anniversary that this policy is in force.

### C. Transfer of Your Rights and Duties

Your rights or duties under this policy may not be transferred without our written consent.

If you die and we receive notice within thirty days after your death, we will cover your legal representative as insured.

### D. Cancelation

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancelation is to take effect.

2. We may cancel this policy. We must mail or deliver to you not less than ten days advance written notice stating when the cancelation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Information Page will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancelation notice.

4. Any of these provisions that conflict with a law that controls the cancelation of the insurance in this policy is changed by this statement to comply with the law.

### E. Sole Representative

The insured first named in Item 1 of the Information Page will act on behalf of all insureds to change this policy, receive return premium, and give or receive notice of cancelation.

© Copyright 2013 National Council on Compensation Insurance, Inc. All Rights Reserved.

(Ed. 02-18)

## POLICY AMENDATORY ENDORSEMENT–CALIFORNIA

It is agreed that, anything in the policy to the contrary notwithstanding, such insurance as is afforded by this policy by reason of the designation of California in Item 3 of the Information Page is subject to the following provisions:

1. **Minors Illegally Employed – Not Insured.** This policy does not cover liability for additional compensation imposed on you under Section 4557, Division IV, Labor Code of the State of California, by reason of injury to an employee under sixteen years of age and illegally employed at the time of injury.

2. **Punitive or Exemplary Damages – Uninsurable.** This policy does not cover punitive or exemplary damages where insurance of liability therefor is prohibited by law or contrary to public policy.

3. **Increase in Indemnity Payment – Reimbursement.** You are obligated to reimburse us for the amount of increase in indemnity payments made pursuant to Subdivision (d) of Section 4650 of the California Labor Code, if the late indemnity payment which gives rise to the increase in the amount of payment is due less than seven (7) days after we receive the completed claim form from you. You are obligated to reimburse us for any increase in indemnity payments not covered under this policy and will reimburse us for any increase in indemnity payment not covered under the policy when the aggregate total amount of the reimbursement payments paid in a policy year exceeds one hundred dollars ($100).

   If we notify you in writing, within 30 days of the payment, that you are obligated to reimburse us, we will bill you for the amount of increase in indemnity payment and collect it no later than the final audit. You will have 60 days, following notice of the obligation to reimburse, to appeal the decision of the insurer to the Department of Insurance.

4. **Application of Policy.** Part One, "Workers Compensation Insurance", A, "How This Insurance Applies", is amended to read as follows:

   This workers compensation insurance applies to bodily injury by accident or disease, including death resulting therefrom. Bodily injury by accident must occur during the policy period. Bodily injury by disease must be caused or aggravated by the conditions of your employment. Your employee's exposure to those conditions causing or aggravating such bodily injury by disease must occur during the policy period.

5. **Rate Changes.** The premium and rates with respect to the insurance provided by this policy by reason of the designation of California in Item 3 of the Information Page are subject to change if ordered by the Insurance Commissioner of the State of California pursuant to Section 11737 of the California Insurance Code.

6. **Long Term Policy.** If this policy is written for a period longer than one year, all the provisions of this policy shall apply separately to each consecutive twelve-month period or, if the first or last consecutive period is less than twelve months, to such period of less than twelve months, in the same manner as if a separate policy had been written for each consecutive period.

7. **Statutory Provision.** Your employee has a first lien upon any amount which becomes owing to you by us on account of this policy, and in the case of your legal incapacity or inability to receive the money and pay it to the claimant, we will pay it directly to the claimant.

8. Part Five, "Premium", E, "Final Premium", is amended to read as follows:

   The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classifications covered by this policy.

   If this policy is canceled, final premium will be determined in the following way unless our manuals provide otherwise:

**WC 04 03 01 D**

( Ed. 02-18 )

Case 8-23-cv-02517-SEM-CRT   Document 30-5   Filed 05/19/25   Page 30 of 84   Page ID 984

a.   If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the minimum premium.

b.   If you cancel, final premium may be more than pro rata; it will be based on the time this policy was in force, and may be increased by our short-rate cancelation table and procedure. Final premium will not be less than  the pro rata share of the minimum premium.

It is further agreed that this policy, including all endorsements forming a part thereof, constitutes the entire contract of insurance. No condition, provision, agreement, or understanding not set forth in this policy or such endorsements shall affect such contract or any rights, duties, or privileges arising therefrom.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

| | |
|---|---|
| Endorsement Effective  01/01/23 | Policy No.  WC558-00077-023-SZ      Endorsement No.  0 |
| Insured | Insurance Company |
| WorkCentric LLC | United Wisconsin Insurance Company |
| LCF American Lumper Services LLC | |

Countersigned by     _____

**WC 04 03 01 D**
(Ed. 02-18)

Case 8:25-cv-01261-WLH-PVC Document 20-3 Filed 05/19/25 Page 31 of 84 Page ID #:985
(Ed. 01-95)

---

### DUTY TO DEFEND - CALIFORNIA

The insurance afforded by Part One, Section C, **"We Will Defend,"** is hereby deleted and replaced with the following:

**WE WILL DEFEND**

We have the right and duty to defend at our expense any claim or proceeding against you before the California Workers' Compensation Appeals Board or its equivalent in any other state (and any appeal of a decision therefrom) for the benefits payable by this workers' compensation insurance. We have the right to investigate and settle these claims or proceedings.

We have no duty to defend a claim, proceeding, or suit that is not covered by this insurance.

Nothing contained in this Section shall amend, modify, restrict or otherwise alter any obligations or conditions under Part Two-Employer's Liability Insurance of the policy.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

| | | |
|---|---|---|
| Endorsement Effective  01/01/23 | Policy No.  WC558-00077-023-SZ | Endorsement No.  0 |
| Insured | Insurance Company | |
| WorkCentric LLC | United Wisconsin Insurance Company | |
| LCF American Lumper Services LLC | | |

Countersigned by _____

**WC 04 03 10**
(Ed. 01-95)

(Ed. 10-16)

**ENDORSEMENT AGREEMENT LIMITING AND RESTRICTING THIS INSURANCE**
**Labor Contractor as Named Insured with LCF Designation - Restriction of Coverage to Client Workers**

The insurance under this policy is limited as follows: It is AGREED that, anything in this policy to the contrary notwithstanding, this policy DOES NOT INSURE:

| | |
|---|---|
| **LIABILITY NOT INSURED** | Any liability the labor contractor named in Item 1 of the policy may have, other than with respect to employees provided to the client shown in Item 1 (following the designation "Leased Coverage For" or "LCF") pursuant to an employee leasing arrangement subject to the *California Workers' Compensation Experience Rating Plan—1995*, Section V, Rule 4, *Application of Experience Modification to Policies Covering Employee Leasing Arrangements* |
| **LIABILITY NOT INSURED** | Any liability the client shown in Item 1 may have, other than with respect to workers provided by the Labor Contractor named in Item 1 of the policy pursuant to an employee leasing arrangement subject to the *California Workers' Compensation Experience Rating Plan—1995*, Section V, Rule 4, *Application of Experience Modification to Policies Covering Employee Leasing Arrangements*. |

**Name of Client shown in Item 1:**

American Lumper Services LLC

**Client's Address**

5011 Firestone Pl
South Gate, CA 90280-0000

Nothing in this endorsement shall be held to vary, alter, waive or extend any of the terms, conditions, agreements, or limitations of this policy other than as above stated. Nothing elsewhere in this policy shall be held to vary, alter, waive or limit the terms, conditions, agreements or limitations in this endorsement.

It is further agreed that "remuneration" when used as a premium basis for such insurance as is afforded by this policy shall not include the remuneration of any person excluded from coverage in accordance with the foregoing.

**FAILURE TO SECURE THE PAYMENT OF FULL COMPENSATION BENEFITS FOR ALL EMPLOYEES AS REQUIRED BY LABOR CODE SECTION 3700 IS A VIOLATION OF LAW AND MAY SUBJECT THE EMPLOYER TO THE IMPOSITION OF A WORK STOP ORDER, LARGE FINES, AND OTHER SUBSTANTIAL PENALTIES (Labor Code Section 3710.1, et seq.).**

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated. **(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

| | | |
|---|---|---|
| Endorsement Effective  01/01/23 | Policy No.  WC558-00077-023-SZ | Endorsement No.   0 |
| Insured | Insurance Company | |
| WorkCentric LLC | United Wisconsin Insurance Company | |
| LCF American Lumper Services LLC | | |

Countersigned by   _____

**WC 04 03 15 B**
(Ed. 10-16)

(Ed. 01-15)

## EMPLOYERS' LIABILITY COVERAGE AMENDATORY ENDORSEMENT-CALIFORNIA

The insurance afforded by Part Two (Employers' Liability Insurance) by reason of designation of California in item 3 of the information page is subject to the following provisions:

A. **"How This Insurance Applies,"** is amended to read as follows:

   A. How This Insurance Applies

   This employers' liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury means a physical injury, including resulting death.

     1. The bodily injury must arise out of and in the course of the injured employee's employment by you.

     2. The employment must be necessary or incidental to your work in California.

     3. Bodily injury by accident must occur during the policy period.

     4. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

     5. If you are sued, the original suit and any related legal actions for damages for bodily injury by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

C. The **"Exclusions"** section is modified as follows (all other exclusions in the **"Exclusions"** section remain as is):

     1. Exclusion 1 is amended to read as follows:

       1. liability assumed under a contract.

     2. Exclusion 2 is deleted.

     3. Exclusion 7 is amended to read as follows:

       7. damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, termination of employment, or any personnel practices, policies, acts or omissions.

     4. The following exclusions are added:

       1. bodily injury to any member of the flying crew of any aircraft.

       2. bodily injury to an employee when you are deprived of statutory or common law defenses or are subject to penalty because of your failure to secure your obligations under the workers' compensation law(s) applicable to you or otherwise fail to comply with that law.

       3. liability arising from California Labor Code Section 2810.3 which relates to labor contracting.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated. **(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective 01/01/23     Policy No. WC558-00077-023-SZ     Endorsement No. 0

Insured     Insurance Company

WorkCentric LLC     United Wisconsin Insurance Company

LCF American Lumper Services LLC

Countersigned by     _____

**WC 04 03 60 B**
(Ed. 01-15)

## OPTIONAL PREMIUM INCREASE ENDORSEMENT - CALIFORNIA

You must provide us, or our authorized representative, access to records necessary to perform a payroll verification audit.  If you fail to provide access within 90 days after expiration of the policy, you are liable to pay a total premium equal to 3 times our current estimate of the annual premium for your policy. In addition, if you fail to provide access after our third request within a 90 day or longer period, you are also liable for our costs in attempting to perform the audit unless you provide a compelling business reason for your failure.

We will contact you to schedule appointments during normal business hours.

We will notify you of your failure to provide access by mailing a certified, return-receipt document stating the increased premium and the total amount of our costs incurred in our attempt(s) to perform an audit. In addition to any other obligations under this contract, 30 days after you receive the notification, you will be obligated to pay the total premium and costs referenced above. If, thereafter, you provide access to your records within three years after the policy expires, or within another mutually agreed upon time, and we succeed in performing the audit to our satisfaction, we will revise your total premium and the costs due to reflect the results of the audit.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective  01/01/23          Policy No.  WC558-00077-023-SZ          Endorsement No.   0
Insured                                  Insurance Company
WorkCentric LLC                          United Wisconsin Insurance Company
LCF American Lumper Services LLC

Countersigned by     _____

**WC 04 04 21**
(Ed. 01-08)

1 of 1

## CALIFORNIA CANCELATION ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because California is shown in Item 3.A. of the Information Page.

The Cancelation condition in Part Six (Conditions) of the policy is replaced by these conditions:

**Cancelation:**

1.  You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancelation is to take effect.

2.  We may cancel this policy for one or more of the following reasons:

    a.  Non-payment of premium;

    b.  Failure to report payroll;

    c.  Failure to permit us to audit payroll as required by the terms of this policy or of a previous policy issued by us;

    d.  Failure to pay any additional premium resulting from an audit of payroll required by the terms of this policy or any previous policy issued by us;

    e.  Material misrepresentation made by you or your agent;

    f.  Failure to cooperate with us in the investigation of a claim;

    g.  Material failure to comply with federal or state safety orders or written recommendations of our designated loss control representatives;

    h.  The occurrence of a material change in the ownership of your business;

    i.  The occurrence of any change in your business or operations that materially increases the hazard or frequency or severity of loss;

    j.  The occurrence of any change in your business or operation that requires additional or different classification for premium calculation;

    k.  The occurrence of any change in your business or operation which contemplates an activity excluded by our reinsurance treaties.

3.  If we cancel your policy for any of the reasons listed in (a) through (f), we will give you 10 days advance written notice, stating when the cancelation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Information Page will be sufficient to prove notice. If we cancel your policy for any of the reasons listed in Items (g) through (k), we will give you 30 days advance written notice; however, we agree that in the event of cancelation and reissuance of a policy effective upon a material change in ownership or operations, notice will not be provided.

4.  If we mail the notice to you, the stated periods of notice and your right to remedy the condition will be extended by 5 days if the place of mailing and your mailing address is within California, 10 days if the place of mailing or your mailing address is outside of California and 20 days if the place of mailing or your mailing address is outside of the United States.

5.  The policy period will end on the day and hour stated in the cancelation notice.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated. (**The information below is required only when this endorsement is issued subsequent to preparation of the policy.**)

Endorsement Effective  01/01/23        Policy No.  WC558-00077-023-SZ        Endorsement No.  0
Insured                                Insurance Company
WorkCentric LLC                        United Wisconsin Insurance Company
LCF American Lumper Services LLC

Countersigned by       _____

**WC 04 06 01 B**
(Ed. 01-22)

Case 3:20-cv-02021-WHO   Document 80-3   Filed 05/19/25   Page 36 of 84   PageID 990

## CALIFORNIA LARGE RISK DEDUCTIBLE ENDORSEMENT

1.  This endorsement applies to the workers' compensation insurance coverage, the employers' liability insurance coverage and the other states insurance coverage provided in this policy.

2.  This endorsement applies between you and us. It does not affect the rights of others under the policy. Nor does it change our obligations under the policy, except as otherwise stated in this endorsement.

3.  In consideration of a reduced premium, you have agreed to reimburse us up to the deductible amounts stated in the Schedule at the end of this endorsement for all payments legally required, including allocated loss adjustment expenses which arise out of any claim or suit we defend, where you elect to include such expenses.

4.  We will remain responsible for the full payment of all claims under this policy without regard to your ability or intention to reimburse us for the deductible amounts. The contract of insurance shall be fully enforceable by your employees or their dependents against us.

### Deductible – Each Occurrence

5.  The deductible amount stated in the Schedule is the most you must reimburse us for indemnity and medical benefits and damages combined, including allocated loss adjustment expenses, if elected by you, for bodily injury to one or more employees as the result of any one accident or for disablement of one employee due to bodily injury by disease.

### Deductible – Policy Aggregate

6.  The amount stated in the Schedule as aggregate is the most you must reimburse us for the sum of all indemnity and medical benefits, damages, and allocated loss adjustment expense, if elected by you, because of bodily injury by accident or bodily injury by disease for the policy period.

    (a)  If we cancel the policy, the aggregate amount stated in the Schedule will be reduced to a pro rata amount based on the time this policy was in force.

    (b)  If you cancel the policy as a result of your retiring from business, the aggregate deductible amount will be reduced to a pro rata amount based on the time this policy was in force.

    (c)  If you cancel the policy for any reason other than retiring from business, the aggregate deductible amount will not be reduced.

    (d)  If this policy is issued for a term of less than one year, the aggregate deductible amount will not be reduced.

### Effect of Deductible on Limits of Liability

7.  The applicable limits of liability as respects the employers' liability insurance coverage provided in this policy are subject to reduction by the application of the loss reimbursement amount(s) applicable to any claim for accident or disease covered by this policy. In the event of a claim, our obligation to pay is the amount available for benefits or damages that remains after the application of the specific loss reimbursement amount. The payment of loss adjustment expense, where such expense is elected by you, will not affect the limits of the liability.

Case 3:25-cv-02061-JSC    Document 1-3    Filed 05/19/25    Page ID #: 991

**Allocated Loss Adjustment Expenses**

8.    Allocated loss adjustment expenses, which is electable by you, means claims expenses directly allocated by us to a particular claim. Such expenses shall not include cost of investigation or the salaries and traveling expenses of our employees other than those salaried employees who perform services which can be directly allocated to the handling of a particular claim.

**Recovery from Others**

9.    If we recover any payments made under this policy from anyone liable for the injury, the amount we recover will be applied as follows:

    (a)    First, to any payments made by us in excess of the deductible amount; and

    (b)    Then the remainder, if any, will be applied to reduce the deductible amount reimbursed by you.

**Cancellation**

10.    We may cancel this policy for nonpayment of any deductible amounts or for failure to comply with any security-related terms of this policy. Such cancellation of this policy shall be treated in the same manner as nonpayment of premium as provided by the California Insurance Code. We will remain fully responsible for the full amount of all claims incurred prior to the effective date of cancellation.

**Sole Representation**

11.    The first Named Insured stated in the Information Page will act on behalf of all the named insureds with respect to:

    (a)    Changes to this endorsement

    (b)    Obligations to receive premiums; or

    (c)    Giving or receiving notice of cancellation.

**Your Duties and Understanding**

12.    All bodily injuries by accident or disease for which you are responsible shall be promptly reported to us for adjustment and payment, regardless of their severity or cost. You further understand that all such bodily injuries and their cost shall be included in experience data used to determine the experience rating for your policy, regardless of the eligibility of such claims for full or partial reimbursement under the deductible provisions of this policy.

**Other Rights and Duties**

13.    All other terms of the policy, including those which govern the following items, apply irrespective of this deductible endorsement:

    (a)    Our right and duty to defend any claim, proceeding or suit against you; and

    (b)    Your duties if injury occurs.

Case 8:23-cv-02517-SPG-DFM   Document 30-5   Filed 05/19/25   Page 38 of 84   Page ID #:992

WC 04 06 03 B
(Ed. 01-15)

---

**Additional Charges**

14. Any assessments pursuant to California statute are not part of this Plan but are included in the cost of the coverage provided by the policy to which this endorsement is attached.

    Schedule

1. Deductible Amount $ 500,000.00 Each Accident

2. Aggregate Limit N/A     Negotiated Charge N/A

3. Allocated Loss Adjustment Expenses are Included

4. The Fixed Expense Charge Will Not be adjusted retroactively, based upon actual costs.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective  01/01/23       Policy No.  WC558-00077-023-SZ       Endorsement No.  0
Insured                                Insurance Company
WorkCentric LLC                  United Wisconsin Insurance Company
LCF American Lumper Services LLC

                                Countersigned by    _____

**WC 04 06 03 B**
(Ed. 01-15)

**COVID-19 REPORTING REQUIREMENT ENDORSEMENT - CALIFORNIA**

In addition to the requirements under Part 4, "Your Duties if Injury Occurs" of your policy, if you have five or more employees and an employee that is not described in California Labor Code section 3212.87 tests positive for COVID-19, you are required to report the following information as provided below.

Pursuant to California Labor Code Section 3212.88(i), when you know, or reasonably should know, that an employee has tested positive for COVID-19 between September 17, 2020 and January 1, 2024, you must report to your claims administrator in writing via electronic mail or facsimile within 3 business days all of the following:

(1) An employee has tested positive. For purposes of this reporting, do not provide any personally identifiable information regarding the employee who tested positive for COVID-19 unless the employee asserts the infection is work related or has filed a claim form pursuant to California Labor Code Section 5401.

(2) The date that the employee tests positive, which is the date the specimen was collected for testing.

(3) The specific address or addresses of the employee's specific place of employment during the 14-day period preceding the date of the employee's positive test.

(4) The highest number of employees who reported to work at the employee's specific place of employment in the 45-day period preceding the last day the employee worked at each specific place of employment.

Labor Code Section 3212.88(j) states that the intentional submission of false or misleading information or the failure to report the above information as required may subject you to a civil penalty in the amount of up to $10,000 to be assessed by the Labor Commissioner.

For the purposes of these reporting requirements, California Labor Code Section 3212.88(m) provides the following:

(1) "COVID-19" means the 2019 novel coronavirus disease.

(2) "Test" or "testing" means a PCR (Polymerase Chain Reaction) test approved for use or approved for emergency use by the United States Food and Drug Administration to detect the presence of viral RNA. "Test" or "testing" does not include serologic testing, also known as antibody testing. "Test" or "testing" may include any other viral culture test approved for use or approved for emergency use by the United States Food and Drug Administration to detect the presence of viral RNA which has the same or higher sensitivity and specificity as the PCR test.

(3) "A specific place of employment" means the building, store, facility, or agricultural field where an employee performs work at the employer's direction. "A specific place of employment" does not include the employee's home or residence, unless the employee provides home health care services to another individual at the employee's home or residence.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated. **(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective  01/01/23          Policy No.  WC558-00077-023-SZ          Endorsement No.   0
Insured                                                Insurance Company
WorkCentric LLC                             United Wisconsin Insurance Company
LCF American Lumper Services LLC

Countersigned by     _____

**WC 04 06 04 A**
(Ed. 01-23)

1 of 1

WC 99 01 07 B
(Ed. 05-15)

## SPECIAL CANCELLATION PROVISION

It is agreed that, anything in the policy to the contrary notwithstanding, such insurance as is afforded by this policy is subject to the following provisions:

If you cancel the policy or if the policy is cancelled for non-payment of any premium, cancellation premium may be computed using the short rate cancellation table.

The following table shall be used in computing the Short Rate Premium:

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective  01/01/23          Policy No.  WC558-00077-023-SZ          Endorsement No.   0
Insured                                  Insurance Company
WorkCentric LLC                          United Wisconsin Insurance Company
LCF American Lumper Services LLC

Countersigned by     _____

**WC 99 01 07 B**
(Ed. 05-15)

Case 8:23-cv-02517-SDM-CPT   Document 30-5   Filed 05/19/25   Page 41 of 84 PageID 995

## SPECIAL CANCELLATION PROVISION
### Short Rate Cancellation Table

| Extended Number Of Days | Percent of Full Policy Premium | Extended Number Of Days | Percent of Full Policy Premium | Extended Number Of Days | Percent of Full Policy Premium |
|---|---|---|---|---|---|
| 1 | 5% | 95-98 | 37% | 219-223 | 69% |
| 2 | 6% | 99-102 | 38% | 224-28 | 70% |
| 3-4 | 7% | 103-105 | 39% | 229-232 | 71% |
| 5-6 | 8% | 106-109 | 40% | 233-237 | 72% |
| 7-8 | 9% | 110-113 | 41% | 238-241 | 73% |
| 9-10 | 10% | 114-116 | 42% | 242-246 | 74% |
| 11-12 | 11% | 117-120 | 43% | 247-250 | 75% |
| 13-14 | 12% | 121-124 | 44% | 251-255 | 76% |
| 15-16 | 13% | 125-127 | 45% | 256-260 | 77% |
| 17-18 | 14% | 128-131 | 46% | 264-264 | 78% |
| 19-20 | 15% | 132-135 | 47% | 265-269 | 79% |
| 21-22 | 16% | 136-138 | 48% | 270-273 | 80% |
| 23-25 | 17% | 139-142 | 49% | 274-278 | 81% |
| 26-29 | 18% | 143-146 | 50% | 279-282 | 82% |
| 30-32 | 19% | 147-149 | 51% | 283-287 | 83% |
| 33-36 | 20% | 150-153 | 52% | 288-291 | 84% |
| 37-40 | 21% | 154-156 | 53% | 292-296 | 85% |
| 41-43 | 22% | 157-160 | 54% | 297-301 | 86% |
| 44-47 | 23% | 161-164 | 55% | 302-305 | 87% |
| 48-51 | 24% | 165-167 | 56% | 306-310 | 88% |
| 52-54 | 25% | 168-171 | 57% | 311-314 | 89% |
| 55-58 | 26% | 172-175 | 58% | 315-319 | 90% |
| 59-62 | 27% | 176-178 | 59% | 320-323 | 91% |
| 63-65 | 28% | 179-182 | 60% | 324-328 | 92% |
| 66-69 | 29% | 183-187 | 61% | 329-332 | 93% |
| 70-73 | 30% | 188-191 | 62% | 333-337 | 94% |
| 74-76 | 31% | 192-196 | 63% | 338-342 | 95% |
| 77-80 | 32% | 197-200 | 64% | 343-346 | 96% |
| 81-83 | 33% | 201-205 | 65% | 347-351 | 97% |
| 84-87 | 34% | 206-209 | 66% | 352-355 | 98% |
| 88-91 | 35% | 210-214 | 67% | 356-360 | 99% |
| 92-94 | 36% | 215-218 | 68% | 361-365 | 100% |

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective  01/01/23          Policy No.  WC558-00077-023-SZ          Endorsement No.   0
Insured                                          Insurance Company
WorkCentric LLC                                  United Wisconsin Insurance Company
LCF American Lumper Services LLC

Countersigned by     _____

**WC 99 01 07 B**
(Ed. 05-15)

# CLAIMS AGREEMENT

between

**Embraceor, LLC; WorkCentric, LLC; WorkCentric 2, LLC; and WorkCentric 3, LLC**

and

**United Wisconsin Insurance Company ("UWIC")** stated in each Policy
and providing services defined herein.

## COVER PAGES

**IN THIS AGREEMENT**, certain terms have these meanings:

| | | |
|---|---|---|
| 1. | **Customer:** | **Embraceor, LLC; WorkCentric, LLC; WorkCentric 2, LLC; and WorkCentric 3, LLC** |

2.    **AF Specialty:**        On behalf of United Wisconsin Insurance Company.

Address:
200 N. Grand Avenue
P.O. Box 40790
Lansing, MI 48907

Notice to UWIC by Customer:

200 N. Grand Avenue
P.O. Box 40790
Lansing, MI 48907

Attention:  Managing Director, Specialty Markets

3.    **INITIAL EFFECTIVE DATE OF THIS AGREEMENT:**    January 1, 2023

4.    **PROGRAM DESCRIPTION:**

This Agreement applies to the Workers' Compensation ("WC") insurance policies listed in the Program Values Schedule.  The policies subject to this Agreement have been identified by a Program identifier in the Program Values Schedule, and are written on a Loss Responsive Rating Program as identified in Schedule A.  This Agreement addresses the Claim Services UWIC agrees to provide, and Customer's responsibility for the Service Fees, payment of losses, state surcharges, and taxes and Assessments requirements that apply to each Program.

WC 99 04 58 A
Ed. 11/21

1

Nothing in this Agreement changes the coverage provided or obligations under the terms of the policies.

## 5.    LOSS DEPOSIT

### Loss Deposit

To secure Customer's obligations under this Agreement, Customer will provide a Loss Deposit. UWIC will advance funds on Customer's behalf to pay for losses and expense.  Periodically, or at a minimum on each anniversary of this Agreement, UWIC may adjust the amount of the Loss Deposit to equal a *3* month average of Paid Losses for the prior (12) twelve months for all policies subject to this Agreement and designated in Schedule A of the Program Values Schedule.  When all claims are closed, and Customer has satisfied all obligations to UWIC, UWIC will return the Loss Deposit.  This Loss Deposit amount includes all obligations for a Loss Deposit covering policies serviced under this Agreement and designated in Program Values Schedule.

The amount of the Loss Deposit is shown in Schedule G of the Program Values Schedule.


## 6.  SERVICE FEES:

All Service Fees described below include handling the Covered Claims to conclusion and only to the extent that they are Covered Claims.  Service Fees are charged for each policy according to one of these four options as identified in the Program Values Schedule.

### Service Fee Options


#### (Option A)  "Per Claim" Service Fees

**Workers' Compensation**
    **Per Claim:**

| | |
|---|---|
| **Other Than Medical Only** | See Schedule H of the Program Values Schedule. |
| **Medical Only** | See Schedule H of the Program Values Schedule. |
| **Per Claim-Incident Report** | See Schedule H of the Program Values Schedule. |

#### (Option B) Percentage of Incurred Losses

Customer will pay Service Fees at the rate shown in Schedule H of the Program Values Schedule as a percentage of Incurred Losses and incurred Allocated Claim Expense of Covered Claims.  Claims will be handled to conclusion and only to the extent that they are Covered Claims.  Service fees on any individual Covered Claim will not exceed the maximum amount shown in Schedule H of the Program Values Schedule.

#### (Option C) Percentage of Paid Losses

Customer will pay Service Fees at the rate shown in Schedule H of the Program Values Schedule as a percentage of Paid Losses and paid Allocated Claim Expense of Covered Claims.  Claims will be handled to conclusion and only to the extent that they are Covered Claims.  Service fees on any individual Covered Claim will not exceed the maximum amount shown in Schedule H of the Program Values Schedule.

#### (Option D) Percentage of Standard Premium

Customer will pay Service Fees at the rate shown in Schedule H of the Program Values Schedule as a percentage of standard premium.  Standard premium is defined in accordance with California Uniform Statistical Reporting Plan.

WC 99 04 58 A
Ed. 11/21

**Service Fee Limitation**

**(A) For all Large Deductible and Cash Funded Deductible Programs:**

__N/A__  The total service fees as outlined above are included within the applicable Deductible Limit, or,
__N/A__  The total service fees as outlined above are not included within the applicable Deductible Limit.

## 7.    PAYMENT OF LOSSES:

**Loss Billing Payment Method**

Large Deductible and Paid Loss Retrospectively Rated Programs

> (A)  Customer agrees to pay losses directly to UWIC within thirty (30) days of the billing date.

Cash Funded Deductible Programs:

> The Cash Funded Deductible Program Loss Fund Amount is shown in Schedule I of the Program Values Schedule.

> The Cash Funded losses are payable in accordance with the payment plan authorized in Schedule I of the Program Values Schedule.

## 8.    STATE SURCHARGES, TAXES AND ASSESSMENTS:

In accordance with Section II Service Fees and Loss Payments and Section IV Assessments below, the Customer agrees to pay all claims for surcharges, taxes and Assessments of any kind that may be imposed on Customer or UWIC as a result of the issuance of the policies subject to this Agreement, whether such surcharges, taxes or Assessments are calculated on the bases of premium, losses covered under the policies or any other basis.

## 9.    CASH CALL

UWIC will issue a Cash Call when an individual claim in a given billing cycle equals or exceeds the Cash Call Threshold shown in Schedule J of the Program Values Schedule. UWIC will issue to Customer a Cash Call for funds sufficient to pay judgments, potential settlements and Allocated Claim Expenses for the individual claim. Within 72 hours of notice of Cash Call, Customer will initiate the wire transfer for the total amount due immediately.  Customer will provide said funds to UWIC as a condition precedent to any obligation of UWIC to make such payments on behalf of Customer.

## 10.    LOSS DEVELOPMENT FACTORS ADJUSTMENT for CASH FUNDED DEDUCTIBLE LOSSES:

> Loss Development Factors and Minimum Loss Development Amounts are listed in Schedule D of the Program Values Schedule.

WC 99 04 58 A
Ed. 11/21

3

**Calculation of Cash Funded Deductible Amount:**

Calculation of the Cash Funded Deductible Amount is done in accordance with the provisions for Security in Section 8 of the Large Risk Alternative Rating and Insurance Program Agreement.

The first adjustment is scheduled twelve (12) months after policy termination.  Subsequent adjustments follow every twelve (12) months thereafter.  However, if at any time it is determined by UWIC that the Cash Funded Deductible Amount is inadequate, UWIC may, at its sole discretion, adjust the Cash Funded Deductible Amount.

**END COVER PAGES**

WC 99 04 58 A
Ed. 11/21

4

## Claims Agreement

**WHEREAS**:

1.    UWIC is engaged in providing claim services for insurance; and

2.    Customer wants UWIC to provide service for claims under policies as identified on the Cover Pages; and

3.    UWIC agrees to provide such service under the terms of this Agreement.

**NOW, THEREFORE**, in consideration of the premises and of the mutual promises herein, Customer and UWIC agree as follows:

I.    **CLAIM SERVICE**

    A.    UWIC shall provide Claim Services on behalf of Customer for Covered Claims.

    B.    In the performance of its duties under this Agreement, UWIC may retain attorneys and others on behalf of Customer.

    C.    UWIC does not assume any liability for claims or expenses under the deductible portion of its policy, or losses within the loss limitation of a policy which is subject to Retrospective Rating, except as specifically provided in the policies.

    D.    Per the policies subject to this Agreement, Customer will give UWIC prompt notice of all Covered Claims, suits and of any occurrences that are likely to result in any claims or suits, and Customer will provide all necessary assistance and cooperation to UWIC. ***Nothing in this Paragraph is intended to alter the regulatory or contractual rights and obligations of Customer or Insurer.***

    E.    1.    UWIC shall service Covered Claims in accordance with accepted practices and applicable state law governing claim practices. Except as otherwise provided in the policies, UWIC shall not be deemed to be the guarantor of Customer's obligations.

        2.    Within one hundred and eighty (180) calendar days after payment is due, Customer shall notify UWIC that it disputes any amount payable under this Agreement and/or the settlement, adjustment, defense or payment of any claim represented by such billed amount ("Dispute Notice"). If Customer fails to so notify UWIC, then it shall have waived all rights to dispute such payment and/or the settlement, defense, adjustment and payment of any claim ("Claim Handling"). Said waiver shall include the waiver of any potential causes of action sounding in tort or contract for the alleged negligence or bad faith of UWIC or its affiliates.

        If Customer disputes the Claim Handling according to these terms:

        a)    Customer shall provide UWIC, or the other party, with a brief statement of the dispute within thirty (30) days of Dispute Notice;

        b)    Represented by individuals with decision-making authority, the parties will promptly meet to attempt in good faith to negotiate a resolution;

        c)    If the parties are unable to negotiate a resolution at said meeting, the negotiation period shall end, and the parties shall submit the dispute to mediation in accordance with the Commercial Mediation Rules of the American Arbitration Association and the parties agree to bear the costs of the mediation equally;

WC 99 04 58 A
Ed. 11/21

5

d)  The parties will appoint a mediator within thirty (30) days of the end of the negotiation period, or if the parties are unable to agree on a mediator they will seek assistance from the American Arbitration Association; and

e)  The parties agree to participate in good faith in the mediation and negotiations.

3.  If any other dispute arises between the parties with reference to the interpretation of this Agreement or any rights or obligations arising under this Agreement, whether before or after its termination, the parties hereby agree to use the above procedure to settle such dispute.

II.  **SERVICE FEES AND LOSS PAYMENTS**

A.  Customer shall reimburse UWIC for amounts paid on its behalf and pay Service Fees and charges listed below and in Schedule H of the Program Values Schedule. Per Claim Service Fees are payable in the month subsequent to the month in which the claim is reported to UWIC.

B.  UWIC will issue a monthly Billing Statement for the following amounts:

1.  Loss reimbursements for amounts paid by UWIC, which are not subject to Cash Call,

2.  Service Fees and costs,

3.  State Surcharges, Taxes and Assessments, if applicable, and

4.  Late Charges, if applicable.

5.  If Customer has Cash Funded Deductible Losses, the amount of the Cash Funded Deductible Amount is shown in Schedule I of the Program Values Schedule is the initial estimate of the Customer's obligation for reimbursement of losses within the policy's deductible provision. Customer remains liable for deductible amounts paid in excess of any amounts actually received by UWIC. For the first year after policy inception, Customer shall pay by installments to UWIC the total Cash Funded Deductible Amount. The Cash Funded Deductible Amount excludes Service Fees and other charges under this Agreement. Any additional amount(s) owed by Customer under the deductible provisions of the policy will not be billed until the first or subsequent adjustments, except as provided for under Section 10 of the Cover Pages.

Except as provided for under Section 10 of the Cover Pages, there shall be no change in the original amount of Cash Funded Deductible Losses prior to the first adjustment date shown on the Cover Pages. UWIC's calculation of the Cash Funded Deductible Losses shall be determined according to the calculation indicated on the Cover Pages.

Failure to maintain the Cash Funded Deductible Amount or any other required Security for any other Program at the required levels set forth in the Program Values Schedule shall constitute a default and, without foregoing any of its other rights upon default, UWIC shall convert the retrospective plan from a Cash Funded Deductible policy to an Incurred Loss Retrospective Rated policy.

6.  It is agreed that payments received will be applied against Obligations due to UWIC in the following priority first Security, second Losses and Expense, third Miscellaneous Expense and fourth Premiums.

WC 99 04 58 A
Ed. 11/21

6

C.  All amounts are due and payable when billed.  If balances in full are not received by UWIC within thirty (30) days of the billing date on a thirty-day billing cycle or within 72 hours of the issuance of UWIC's bill on wire transfer billing agreements, Customer will pay UWIC a late charge of one and one-half percent (1.5%) of the outstanding bill for each subsequent thirty (30) day period or any part thereof until all balances due are received by UWIC.

Customer shall not be required to pay interest or late charges in excess of the rate allowed by the laws of the state having jurisdiction.  The parties intend to comply with applicable statutes and regulations; therefore, the interest or late charges shall be limited to that permitted under such law.

D.  After the Effective Date of this Agreement, if UWIC is required by law or under the authority, enactment, or order of an entity exercising jurisdiction over the parties or either of them to provide services or documents not currently required, the parties will negotiate payment to UWIC for the cost and fee for providing such service.  If the parties fail to reach agreement, UWIC may terminate this Agreement, unless otherwise prohibited by law.

## III.  SERVICE FEE CALCULATION

A.  UWIC shall service Covered Claims commencing on the Effective Date, subject to the provisions of this Agreement regarding termination.

B.  Handle to Conclusion - Customer will pay UWIC Service Fees to handle Covered Claims to conclusion.  These Service Fees will be priced either on a per claim basis or as a guaranteed fee for all Covered Claims, according to the terms established on the Cover Pages.

C.  Percentage of Incurred or Paid Losses - As Service Fees, Customer will pay UWIC a percentage of the total of either Incurred Losses plus incurred Allocated Claim Expenses or Paid Losses plus paid Allocated Claim Expenses for each Covered Claim, as shown on the Cover Pages.  This Service Fee includes the value of handling Covered Claims to conclusion.

D.  UWIC will bill Customer for Service Fees as follows:

1)  Per Claim Medical Only - In the month following the month in which payment is made.

2)  Per Claim For All Other - In the month following the month in which UWIC has established the Covered Claim in its claims processing system.

3)  Percentage of Incurred Losses, percentage of Paid Losses - UWIC will bill Customer as losses are incurred or paid.

## IV.  ASSESSMENTS

If at any time while this Agreement is in effect, or within five (5) years after its termination, any claim arises for premium taxes or Assessments with respect to claim amounts, Allocated Claim Expenses, or Service Fees that have been paid hereunder, UWIC shall notify Customer of such claim and, if there is, in UWIC's judgment, any credible basis for contesting such Assessment, afford Customer the opportunity to contest such claim and join in any proceeding to contest such claim; and Customer agrees to defend, indemnify and hold harmless UWIC, its parent or affiliate(s) from such claims for taxes and Assessments according to the indemnification provisions in this Agreement.

The indemnities provided under this Section shall specifically inure to the benefit of any parent or affiliate company of UWIC that may also be subject to a claim for premium taxes or Assessments arising out of the amounts paid pursuant to this Agreement.

7

WC 99 04 58 A
Ed. 11/21

**V.    INDEMNIFICATION AND REMEDIES**

A.    UWIC agrees to defend, indemnify, and hold harmless Customer for any and all actions, claims, suits, damages and punitive damages brought against Customer, whether resolved by judgment or by settlement, resulting from UWIC's use of confidential or proprietary information contained in Customer's claim files.

B.    Customer agrees to defend, indemnify, and hold harmless UWIC for any and all actions, claims, suits, damages and punitive damages brought against UWIC, whether resolved by judgment or settlement, resulting from:

- Customer's act or omission in the use of confidential or proprietary information which UWIC provides to Customer in the handling of its claims, or

- An allegation that UWIC is responsible for the obligations of the Customer under the deductible portion of Its policy or losses within the loss limitation of a policy subject to Retrospective Rating, unless said defense and indemnification are otherwise specifically inconsistent with the policies or the law, or

- The imposition of taxes or Assessments as provided herein, or

- Any action or failure to act by UWIC based upon instructions received from Customer.

C.    As a precondition to a claim for indemnity, the parties agree to comply with the following procedures. The party seeking indemnification agrees to give the indemnifying party prompt notice of actions, claims and suits brought or threatened against it.  The indemnifying party shall have the right to participate in, or assume, at its expense, the defense of any such claim or process or settlement thereof and the party seeking indemnification shall cooperate in said defense.  The party seeking indemnification retains the right to hire separate counsel to participate in its own representation.

D.    If Customer does not make payments in full to UWIC of Service Fees, charges, loss reimbursements, and Allocated Claim Expenses, UWIC will no longer be obligated to advance funds on behalf of Customer, unless otherwise required by law.  If UWIC chooses to make further payments, UWIC will either issue to Customer a Cash Call for adequate funds prior to making any further payments of charges, loss reimbursements, or Allocated Claim Expenses, or will make payments for which Customer will reimburse UWIC.

E.    If Customer does not compensate and reimburse UWIC in accordance with the terms of this Agreement, or if Customer has defaulted on any other obligation to UWIC or any of its affiliates, UWIC may draw upon any applicable Loss Deposit or Cash Funded Loss Amount and may hold Customer responsible for expenses of collection, including but not limited to attorney fees.

F.    In no event shall either party be responsible for any indirect, incidental, special or consequential damages, but damages under this Agreement shall be limited to the amount of actual damages sustained by UWIC or the Customer.

G.    The indemnities provided under this Section shall specifically inure to the benefit of any parent or affiliate company or UWIC.

**VI.    Confidential Personal Information**

For purposes of this Agreement, "Confidential Personal Information" (or "Information") means any information that UWIC may, directly or indirectly, disclose to Customer that relates to an individual and that is not available to the public.  This includes, but is not limited to, credit history; income; financial benefits; application, policy or claim information; health information; medical records; lists of individuals derived from nonpublic personally identifiable information; and the identification of an individual as a customer.  Only

WC 99 04 58 A

Ed. 11/21

8

those employees of Customer who need to know Confidential Personal Information to perform their duties in furtherance of this Agreement shall be given access to the Information. Customer shall maintain the security and the confidentiality of Confidential Personal Information and shall use it only for the purposes for which it has been disclosed to Customer under this Agreement. Customer shall not disclose said Information to any other person except to its agents and other persons who require such Information to further the objectives of this Agreement and who agree in writing to maintain its security and confidentiality. If the Gramm-Leach-Bliley Act or any other applicable state or federal law or regulation, now or hereafter in effect, imposes a higher standard of confidentiality with respect to such Confidential Personal Information, such standard shall prevail over the provisions of this Agreement.

## VII. DEFINITIONS

**Agreement** means this entire contract, including the Cover Pages, and any exhibits attached hereto.

**Allocated Claim Expenses** means expenses not otherwise included as loss that can be directly allocated to the handling of a particular claim as the result of: 1) independent medical examinations and medical reports/records; 2) court costs and fees for service of process; 3) attorneys and hearing representatives; 4) court reporter services and transcripts; 5) stenographic services and transcripts; 6) witness fees and expenses; 7) vendor interface charges; 8) bond premiums; 9) printing costs related to trials and appeals; 10) testimony, opinions, appraisals, reports, surveys, and analyses of professionals and experts; 11) trial and hearing attendance fees; 12) depositions, video statements, private investigators; 13) a charge shown on the Cover Pages for savings realized by the Customer resulting from services associated with utilization review, hospital bill audit, provider bill audit; 14) Preferred Provider Organization utilization charges; 15) case management and vocational rehabilitation management to the extent any portion of these costs are attributable to Allocated Claim Expenses; 16) alternative dispute resolution fees; 17) protection and pursuit of subrogation and recovery rights; 18) Special Investigative Unit; and 19) expenses which are not defined as loss and are directly related to and directly allocated to the handling of a particular claim.

**Assessment** means any assessment, tax or other charge, whether payment is required by law or required as a condition of continued opportunity to service deductible claims or transact insurance or self-insurance in the applicable state. This includes but is not limited to assessments for participation in any "residual market plan," guarantee fund, guarantee association or other facility protecting claimants against the uncollectibility of insurance proceeds, second injury fund or state administrative bureau cost. As used herein, "residual market plan" means any plan, program or facility (whether voluntary or required by law) by which insurers or self-insurers share in the risk of providing insurance for eligible employers or insureds.

**Authorized Personnel** means employees of Customer who have a business need to know and have access to data provided to Customer under this Agreement.

**Billing Statement** means the periodic notice of amounts due to UWIC by Customer.

**Canceled Claim** means a claim that has been investigated and is closed either without payment or with only Allocated Claim Expenses having been paid.

**Cash Call** means notice to Customer to make immediate payment of the amount due.

**Cash Funded (Deductible)** means a Large Deductible plan designed with an accompanying cash fund from which losses are reimbursed to UWIC.

**Claim Services** means those services related to investigation, defense, negotiation and settlement of Covered Claims, including legally permitted activities related to salvage, subrogation and other recoveries.

**Covered Claims** means Claims to the extent that they are covered under policies.

**Cover Pages** means the pages specifically described as Cover Pages in this Agreement including any references to the Program Values Schedule.

9

WC 99 04 58 A
Ed. 11/21

**Effective Date** means the beginning date for services provided under this Agreement as defined in the Cover Pages.

**Incident Report** means any report of a claim or incident that is recorded but which does not result in any investigation or payment.

**Incurred Losses** means the total of Paid Losses, Unpaid Losses and may also include Allocated Claim Expenses for all Covered Claims. Incurred Losses includes expenses for case management and vocational rehabilitation management directly related to and directly allocated to the handling of a particular claim. Case Management and vocational rehabilitation management expenses may be defined as indemnity losses, medical losses or Allocated Claim Expenses by The National Council on Compensation Insurance, any state independent rating bureau or any state department of insurance with jurisdiction.

**Insurance Policies** means the policy or policies to which service under this Agreement applies.

**Insurance Companies or Insurers** means companies that have issued policies.

**Large Risk Alternative Rating and Insurance Program Agreement** means that contract entered into between Customer and UWIC establishing their respective rights and obligations pursuant to the insurance rating programs provided by the policies subject to this Agreement.

**Loss Deposit** means a fund established for the payment of losses as defined on the Cover Pages.

**Loss Responsive Rating Plan** is an exclusive term describing any Large Deductible or Retrospective Rated rating plan.

**Medical Only** means a Covered Claim in which the only payments made by UWIC on behalf of Customer are for medical services.

**Obligations** means all debts, liabilities and obligations of the Customer to UWIC, its affiliates and subsidiaries of every kind and description, direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising, whether arising under this Agreement, the Claim Agreement or under any other agreement, document or instrument, or by operation of law or otherwise, and further including, without limitation, all interest, fees, charges and expenses incurred by UWIC, its affiliates and subsidiaries.

**Other Than Medical Only,** for the purpose of Service Fees obligations, means a Covered Claim in which indemnity and/or Allocated Claim Expenses are paid by UWIC on behalf of Customer, which may also include Medical Payments.

**Paid Losses** means total payments made on Covered Claims for losses and may also include Allocated Claim Expenses. Paid Losses includes expenses for case management and vocational rehabilitation management directly related to and directly allocated to the handling of a particular claim. Case management and vocational rehabilitation management expenses may be defined as indemnity losses, medical losses or Allocated Claim Expenses by The National Council on Compensation Insurance, any state independent rating bureau or any state department of insurance with jurisdiction.

**Pre-Settlement Discussion** means the discussions between UWIC and Customer prior to settlement of a Covered Claim.

**Program** means a policy or policies as designated in the Program Values Schedule that shares a Maximum Loss Content.

**Retrospective Rated Plan** is an optional rating plan that allows the final premium for a large risk to be adjusted on the basis of the losses it produces during the period of the plan subject to a maximum and minimum premium.

10

WC 99 04 58 A
Ed. 11/21

**Security** means the credit, Substitute Credit, Trust Fund, surety bond or other collateral acceptable to UWIC which Customer provides to or for the benefit of the UWIC to secure its present and future Obligations to the UWIC, its affiliates and subsidiaries.

**Service Fees** means payments owed to UWIC by Customer for services provided under this Agreement.

**Service Period** means that period of time during which UWIC agrees to service Covered Claims, conditioned upon the payment of all amounts due and performance of all duties owed to UWIC by Customer.

**Substitute Credit** means a revised, clean irrevocable letter of credit issued in substitution for a credit.

**Trust Fund** means the fund account into which Customer places its funds to be held as Security for Customer's Obligations to UWIC.

**Trust Participation Agreement** means an Agreement between the UWIC, Customer and trustee to place money from the Customer in a fund.

**Takeover Claims** means those claims identified on the Cover Pages as having been opened or opened and closed prior to the date shown on the Cover Pages.

**Unpaid Losses or Unpaid Loss Reserves** means those reserves established by UWIC for Unpaid Losses and may also include Allocated Claim Expenses under the policy. Unpaid Losses includes expenses for case management and vocational rehabilitation management directly related to and directly allocated to the handling of a particular claim. Case management and vocational rehabilitation management expenses may be defined as indemnity losses, medical losses or Allocated Claim Expenses by The National Council on Compensation Insurance, any state independent rating bureau or any state department of insurance with jurisdiction.

**Wrapped-Up Loss Deposits** means the consolidation of Loss Deposit requirements for all of the contracts listed on the Cover Pages into a single requirement.

**Wrapped-Up Security** means the consolidation of Security requirements for all of the contracts listed on the Cover Pages into a single requirement.

## VIII.    GENERAL CONDITIONS

A.    Except as otherwise provided, all notices shall be in writing and delivered by personal service or by certified mail, postage prepaid and return receipt requested, to the party at its address established on the Cover Pages.

B.    The rights, duties, and obligations of Customer shall not be assigned, delegated, or otherwise transferred in whole or in part without the prior express written consent of UWIC. UWIC may assign some or all of its rights, duties, and obligations under this Agreement to any of its "affiliated companies," which shall mean a company directly or indirectly controlled by Accident Fund Insurance Company of America. A company is controlled by the direct or indirect ownership of more than fifty (50%) per cent of the stock issued and entitled to vote for directors of the company or persons performing a function similar to that of directors. In the event that UWIC cedes 100% of the risk incurred under the Insurance Policies, the reinsurer to which UWIC has ceded such risk: (i) shall be a third party beneficiary of this Agreement, and (ii) provided that it is not in default under the terms of the agreement by which such risk was ceded, shall be entitled to exercise all of the rights granted under this Agreement to UWIC.

C.    The parties hereto agree that claim files may contain confidential and private medical data related to the adjustment of individuals' claims. UWIC agrees to handle such medical data as confidential and

WC 99 04 58 A

Ed. 11/21

11

to comply with applicable federal and state statutes and regulations when handling said medical data, the claim files, and the information contained therein.  When said data is transmitted to or reviewed by Customer, Customer will also handle said data as confidential and according to federal and state law and regulations, developing and enforcing guidelines and procedures for limited access to data by Authorized Personnel.  Customer agrees to limit its use of medical and other confidential information to monitor the adjustment of Covered Claims.

UWIC may use data contained in claim files to file reports with governmental or other regulatory agencies and, without identifying insured or its claimants, to prepare and disseminate analytical reports.

D.  Neither party shall be deemed to have breached this Agreement by reason of any delay or failure in its performance arising from acts beyond its control.

E.  Except for any Insurance Policies, this Agreement supersedes and cancels all prior agreements between the parties relating to the subject matter hereof and shall not be amended or revised except by a written supplement signed by all parties.  If any term or condition in this Agreement conflicts with a term or condition of any Insurance Policy, the term or condition of the Insurance Policy shall control.

F.  Except for "California Employers" as defined in CIC § 11658.5(d), all the rights and duties of the Parties arising from or relating in any way to the subject matter of this Agreement shall be governed, construed and enforced in accordance with the laws of the ___STATE OF FLORIDA__, without regard to principles or rules of conflict of laws. Unless the parties have agreed to arbitration as set forth below, any legal action brought concerning any issues or disputes arising out of this Agreement must be brought exclusively in an appropriate state or federal court in or for _____MANATEE    COUNTY, FLORIDA____. This agreement complies with California Insurance Code §11658.5.  For "California Employers" as defined in CIC § 11658.5(d), the choice of law negotiated pursuant to CIC § 11658.5 is ___FLORIDA_____ and the choice of exclusive venue negotiated pursuant to CIC § 11658.5(d) is ___MANATEE COUNTY, FLORIDA_.

G.  A waiver of a breach or default under this Agreement shall not be a waiver of any other previous or subsequent breach or default.  The failure or delay by either party to enforce any term or condition of this Agreement shall not constitute a waiver of such term or condition unless such term or condition is expressly waived in writing.

H.  If any provision of this Agreement shall be held to be invalid, unenforceable or illegal, the validity, enforceability, and legality of the remaining provisions shall not in any way be affected or impaired.

I.  In any litigation or arbitration between the parties, the prevailing party shall be entitled to reasonable attorney's fees and all costs of proceeding incurred in enforcing this Agreement.

J.  This Agreement may be executed in two or more counterparts, each of which shall be an original, but all of which shall constitute one Agreement.

K.  The headings of sections of this Agreement are inserted for convenience of reference only and shall not constitute a part hereof.

L.  All words or terms used in this Agreement, regardless of the number or gender in which they are used, shall be deemed to include any other number and any other gender as the context may require.

M.  For "California Employers" as defined in CIC § 11658.5(d), the choice of forum negotiated pursuant to CIC § 11658.5 is _____MANATEE COUNTY, FLORIDA____.

WC 99 04 58 A
Ed. 11/21

## IX.    Agreement to Arbitrate

[The parties recognize that disputes may arise between them, and in some instances involving non-parties as well, about the parties' rights and duties relative to the provision of a Loss Deposit and the payment of losses, fees, surcharges, taxes, assessments and other charges under this Agreement and the policies listed in the Program Values Schedule. In addition, disputes may arise regarding whether and how much our claims handling practices (e.g., investigation, administration, payments in connection with claims(s) under the policies listed in the Program Values Schedule) may impact the amount of premium and other charges which you may owe to us under this Agreement and the policies listed in Program Values Schedule. The parties will attempt to resolve those disputes without resort to formal procedures. However, in the event such a dispute is not resolved, either party shall submit the matter to arbitration and the other party shall be bound by such submission, provided that you shall not submit to arbitration any matter seeking to restrict our right to draw upon the Collateral or which would have the effect of restricting our right to draw upon the Collateral.

Neither party shall submit to arbitration (i) any coverage disputes which arise under or in connection with claims or suits brought against the policies listed in the Program Values Schedule; and/or (ii) claims by or against you and other UWIC policyholders with respect to other insurance programs with UWIC; and/or (iii) claims by or against you and other policyholders of any other commercial insurance insurer(s), including but not limited to any claim under (ii) or (iii) which you purport to arbitrate as a representative or member of a class or as a private attorney general. Nothing in this section is intended to interfere with any authority granted to the Insurance Commissioner under current law.

The arbitrator(s) has no authority, and is not empowered, to consolidate or direct class-action arbitration as to any disputes between the parties to this Agreement with other disputes between UWIC and any other of its policyholders or other third parties. Nor shall the arbitrator(s) have authority or be empowered to consolidate or direct disputes brought by you as a private attorney general. Any determination by the arbitrator(s) to so consolidate or direct class-action arbitration or to consolidate or direct disputes brought by you as a private attorney general shall be beyond the arbitrator's authority and jurisdiction and shall accordingly, be void. Any dispute regarding these prohibitions against consolidation of class-action arbitrations and against disputes brought by you as a private attorney general shall be heard and resolved by a court having jurisdiction over the parties as provided in Consent to Jurisdiction provision in section VIII.F above, not the arbitrator(s).

The parties agree that your insurance program with us is deemed made in the __STATE OF FLORIDA__ and involves interstate commerce. Accordingly, except for "California Employers" as defined in CIC § 11658.5(d), we and you agree that any arbitration proceeding arising out of or related to this Agreement shall be governed by the Federal Arbitration Act ("FAA") and, to the extent not inconsistent with the FAA, the laws of the __STATE OF FLORIDA__ arbitration law. For "California Employers" as defined in CIC § 11658.5(d), the choice of arbitration law negotiated pursuant to CIC § 11658.5 is the laws of the __STATE OF FLORIDA__.

One arbitrator shall be chosen by us and one by you, and an umpire shall be chosen by the two arbitrators. If either party fails to name its arbitrator within thirty (30) days after receiving the written request of the other party to do so, the latter shall name both arbitrators and they shall select an umpire. If the arbitrators fail to agree in their selection of an umpire within thirty (30) days of the appointment of the second arbitrator, then each arbitrator shall nominate three umpires within thirty-five (35) days of the appointment of the second arbitrator. Each arbitrator shall then decline two of the nominations presented by the other arbitrator, and the selection shall be made by drawing lots and the name of the nominee first drawn shall be the umpire. The arbitrators and umpire shall be disinterested active or retired judges or executive officers of property-casualty and/or workers' compensation insurance companies or property-casualty and/or workers' compensation insurance brokers authorized to transact business in the United States. The arbitrators are relieved from all judicial formalities as to procedure and may abstain from the application of the rules of evidence. They shall interpret this Agreement as an honorable engagement and not merely as a legal obligation. The decision of the majority of the arbitrators and the umpire shall be final and binding upon both parties and judgment may be entered upon the award of the arbitrators in any court having jurisdiction.

13

Each party shall bear the expense of its own arbitrator and shall jointly and equally bear with the other the expenses of the umpire and of the arbitration. Unless otherwise required by statute, each party shall be responsible for its own attorney's fees and costs.

Except for "California Employers" as defined in CIC § 11658.5(d), the arbitration shall take place in __MANATEE COUNTY, FLORIDA__ unless the parties mutually agree to an alternative site. For "California Employers" as defined in CIC § 11658.5(d), the choice of arbitration venue negotiated pursuant to CIC § 11658.5 is _____BRADENTON, FLORIDA_____.

By executing this Agreement, Customer acknowledges that UWIC provided it with a "NOTICE OF DISPUTE RESOLUTION TERMS TO BE INCLUDED IN CERTAIN AGREEMENTS PURSUANT TO CALIFORNIA INSURANCE CODE SECTION 11658.5" and that the terms of this Agreement reflect the final agreement of Customer and UWIC relating to the resolution of disputes under this Agreement.

**IN WITNESS WHEREOF**, the parties hereto have read and agreed to this Agreement and have directed its execution in duplicate by their respective authorized officers.

**United Wisconsin Insurance Company**

By_____/s Theodore G. Bryant (on behalf of )_____
(Signature) Its Duly Authorized Officer

Theodore G. Bryant, Executive Vice-President of SUNZ Insurance Solutions,
On behalf of United Wisconsin Insurance Company, as Authorized by the Office of the President

State of [ *Florid*  ]

County of [ *Manatee*  ]

On this 5 day of *Januar* , 20 23, before me, *Jan Weis* , the undersigned officer, personally appeared *Theodore Bryant* , who acknowledged him/herself to be authorized by the Office of the President of **United Wisconsin Insurance Company**, a corporation, and that he/she, being so authorized by the Office of the President, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation to said instrument, on behalf of the corporation, by such authority.

_____    **OR**    _____

Corporate Secretary                    Notary Public
(Corporate Seal)                    My commission expires on:_____JONATHAN WEIS

JONATHAN WEIS
Commission # GG 906138
Expires October 5, 2023
Bonded Thru Budget Notary Services

***CORPORATE NAME OF CUSTOMER ("CUSTOMER")***

By_____ *S.a.*  _____
(Signature) Its Duly Authorized Officer

Sheldon Altschuler
(Printed/Typed Name)

Title:_____President_____

State of

County of

On this 14th day of *December* , 20 22, before me *Sheldon Altschuler*, the undersigned officer, personally appeared *before me* , who acknowledged him/herself to be the *President* of *WorkCentric LLC* , a corporation, and that he/she, as such officer, being so authorized, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation to said instrument, on behalf of the corporation, by authority of his/her office.

_____    **OR**    _____

Corporate Secretary                    Notary Public
(Corporate Seal)                    My commission expires on: 6/23/2024    (seal)

STACIE D SANZONE
Notary Public - State of Maryland
Carroll County
My Commission Expires Jun 23, 2024

WC 99 04 59
Ed. 11/18

21

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective                     Policy No                     Endorsement No
Insured                                                                 Premium

Insurance Company                         Countersigned by _____

WC 99 04 58 A
Ed. 11/21

16

# LARGE RISK ALTERNATIVE RATING AND INSURANCE PROGRAM AGREEMENT

between

**Embraceor, LLC; WorkCentric, LLC; WorkCentric 2, LLC; and WorkCentric 3, LLC**

and

**United Wisconsin Insurance Company ("UWIC")** stated in each Policy
and providing services defined herein.

## COVER PAGES

**IN THIS AGREEMENT,** certain terms have these meanings:

| | | |
|---|---|---|
| 1. | **Customer:** | **Embraceor, LLC; WorkCentric, LLC; WorkCentric 2, LLC; and WorkCentric 3, LLC** |

2.   **AF Specialty:**      On behalf of United Wisconsin Insurance Company.

Address:
200 N. Grand Avenue
P.O. Box 40790
Lansing, MI 48907

Notice to UWIC by Customer:
200 N. Grand Avenue
P.O. Box 40790
Lansing, MI 48907

Attention:  Managing Director, Specialty Markets

**3.    INITIAL EFFECTIVE DATE OF THIS AGREEMENT:    January 1, 2023**

**4.    PROGRAM DESCRIPTION:**

This Agreement applies to the Workers' Compensation ("WC") Insurance Policies listed in Schedule A of the Program Values Schedule.  These policies are written on a Loss Responsive Rating Program as identified in Schedule A.

Your insurance Program for a designated Program Term consists of one or more policies as identified by a Program Identifier in Schedule A. This Agreement outlines the Program and rating values that we have agreed upon as part your insurance Program listed in the Program Values Schedule, including Rating Programs,

Premium and Miscellaneous Charges.  This Agreement also addresses Security requirements that apply to each Program.

## 5.    RATING PROGRAMS:

The policies listed in the Program Values Schedule may contain policies written on one or more of the following rating programs.

**Deductible Programs and Policies**
Policies in this category are described in Schedule A of the Program Values Schedule as Large Deductible, or Cash Funded Deductible policies. If policies of this type are identified in the Policy Schedule, Customer has selected a deductible program.

The definition and scope of the deductible reimbursement is described in the policy endorsement.

**Retrospective Programs and Policies**

Policies in this category are described in Schedule A of the Program Values Schedule as Paid Loss Retrospective Rated or Incurred Loss Retrospective Rated Programs. If policies of this type are identified in the Program Values Schedule Customer has selected a Retrospective Rated Program.

The retrospective loss limitations are shown in Schedule B of the Program Values Schedule and the adjustment of the premium is defined in the policy and by this Agreement. Refer to the Retrospective Premium Endorsement on the policy for an explanation of the rating Program and how the retrospective premium will be determined. Schedule B of the Program Values Schedule shows the Retrospective Rating Factors.

Losses arising out of a single accident shall be limited to the loss limitation shown above.  The loss limitation includes losses and allocated loss adjustment expenses arising out of a single accident.  For occupational disease claims, as defined in the policy, this limitation shall apply to each employee.

**The retrospective rating formula, which is subject to minimum and maximum premiums, is:**

**[Basic Premium + Excess Loss Premium + (Losses x Loss Development Factor x Loss Conversion Factor)] x Tax Multiplier**

## Retrospective Development Factors

1.   There are no retrospective development factors applicable to this program.


## 6.    TOTAL PREMIUM AND MISCELLANEOUS CHARGES PAID IN CASH AND NOT SUBJECT TO THE PREMIUM LOAN AS OF INCEPTION:

**Total Gross Premium and Surcharges due are shown on your insurance polices.**

Installments for cash payments are shown on the premium invoice sent with your policy.

Installments are paid directly to UWIC in accordance with the premium invoice.

Paid Loss Retrospective Rating Programs

A policy indicated as Paid Loss Retrospective Rated in Schedule A of the Program Values Schedule is subject to a Premium Loan Plan.

The Initial Premium Loan Amount is shown in Schedule A of the Program Values Schedule.
The Initial Premium Loan Amount is excluded from the Obligations of the cash payment Obligation of the premium.

Installments for cash payments are shown on the premium invoice sent with your policy.

Installments are paid directly to UWIC in accordance with the premium invoice.

## 7.    SECURITY:

a.  The Type of Security and Security Amount are shown in Schedule C of the Program Values Schedule.

b.  All Security amounts will be rounded to the next multiple of $50,000.

Security designated as Paid Loss Retrospective Program represents the Premium Loan and is subject to the Premium Loan Plan provisions of this Agreement.

### Security Calculation

Loss Development Factors for collateral and Minimum Loss Development Amount used as Security in policies subject the selected rating plans and are shown in Schedule D of the Program Values Schedule.

The first adjustment of Security is scheduled at the first anniversary after policy termination.  Subsequent adjustments may follow every twelve (12) months thereafter.  However, if at any time UWIC determines that Security is inadequate, UWIC may, at its sole discretion, adjust Security.  Any reduction in Security will be at UWIC's sole discretion.

Adjustments to Security will be made subject to the order of precedence.  Any increase to Security will be in the form of an increase to the letter of credit.  Any decrease to Security for the scheduled programs shall be applied in the following order:  First the surety bond, second the Trust Fund, and finally the letter of credit.

Calculation of Security amount:
The amount of security the Customer is required to maintain with UWIC is subject to Ultimate Security as described in Section 9 of the Cover Pages below.

### Wrapped-Up Security:

Contracts subject to Wrapped-Up Security are identified in Schedule A of the Program Values Schedule.

Maintaining Security under this Agreement shall satisfy the Security requirements for all of the policies under contracts identified under Wrapped-Up Security.  By agreeing to Wrapped-Up Security and in consideration of the combined Security requirements, Customer authorizes UWIC to adjust its losses for all prior policy years subject to Wrapped-Up Security.

UWIC will adjust all policies as if they were policies issued in accordance with this Agreement.  The factors applicable to the most current policies will be applied to all policies.

## 8.  ULTIMATE SECURITY REQUIRED:

Losses and premium shall be secured to ultimate ("Ultimate Security") for all policies under all agreements listed in Schedule A of the Program Values Schedule. UWIC requires that Customer provide collateral to secure its losses and premium to their ultimate value.  The total amount of Security required under this Agreement shall be determined as follows:

Calculate the sum of the following:

1. The combined premium and Miscellaneous Charges for all Plans,

2. Return premiums paid to Insured, and

3. The sum required to satisfy the total additional premium and deductible reimbursements expected due to:

   - Incurred losses including loss development and incurred but not reported losses. This amount is equal to the greater of incurred losses multiplied by the Loss Development Factors listed in Schedule D of the Program Values Schedule or Minimum Loss Development Amounts shown in that Schedule
   - Projected Service Fees as described in the Claims Agreement if applicable
   - additional Miscellaneous Charges.

   From this total UWIC shall subtract the following:

   1. The total premium and Miscellaneous Charges actually paid to UWIC and

   2. Deductible reimbursements actually remitted to UWIC.

   3. If a paid loss retrospective program, reimbursements for paid losses to UWIC.

   4. Service Fees paid in accordance with the Claims Agreement.

   The resulting amount represents the Ultimate Security required under this program.

## 9. Program Maximum Loss Content

If listed in Schedule E of the Program Values Schedule, your Loss Responsive Rating Plan is subject to the Program Maximum Loss Content Amount shown in Schedule E of the Program Values Schedule. The Program Identifier listed in the Program Values Schedule identifies policies that share a Program Maximum Loss Content Amount as indicated in the Schedule. Each identified Program in Schedule E has its own Program Maximum Loss Content Amount. Your responsibility for Loss reimbursement is limited by the Program Maximum Loss Content amount for each Program. The initial Program Maximum Loss Content Amount shown is an estimate and will be adjusted at final audit.

The Program Maximum Loss Content Formula for an identified Program is as follows:

**Program Maximum Loss Content Rate x Exposure Base** for all policies included in the identified Program, but in no event less than the **Minimum Program Maximum Loss Content Amount** shown in the Program Values Schedule.

## END COVER PAGES

# LARGE RISK ALTERNATIVE RATING AND INSURANCE PROGRAM AGREEMENT
## (continued)

**WHEREAS:**

1. UWIC is engaged in underwriting insurance,

2. UWIC has issued to Customer certain policies of insurance and as identified in Schedule A of the Program Values Schedule,

3. Customer has selected one or more rating Programs for payment of premium,

4. Customer may be required to provide Security for its Obligations,

5. Customer has selected UWIC to handle its claims.

6. The premiums, deductible reimbursements, and other obligations for the insurance program will be computed according to this Agreement and the Claim Agreement, and

7. Customer agrees to pay premiums, deductible reimbursements and any other amounts owed to UWIC.

NOW, THEREFORE, in consideration of the premises and of the mutual promises herein, Customer and UWIC agree as follows: All factors, premium bases, policy numbers, Program descriptions, deductible amounts, and loss limitations have been agreed to by the parties and are shown in your policies or the Program Values Schedule. All of the provisions of the policies, including endorsements forming a part thereof, continue to apply, subject to the provisions in this Agreement which affect the overall cost of the insurance Program.

## I.    Premium Calculation

Your Obligations under this Agreement are rated and priced in accordance with the terms of the National Council on Compensation Insurance ("NCCI") Large Risk Alternative Rating Option and the filings of your insuring company. In addition, the parties recognize and acknowledge that you are paying certain rates and charges for your Obligations that may be more or less than the sum of charges that would be part of filed and approved rating plans for the underlying insurance coverages. To the extent that this is the case, you acknowledge that you have negotiated and consented to the prices and rates set forth in this Agreement.

The Customer has subscribed to one or more of the following rating programs for their insurance program as defined in the Cover Pages.

A.    Premium for Deductible Policies

Subject to the terms of any applicable Deductible Rating Plans, the premium for insurance provided in excess of deductible amounts shall be the sum of the premiums for the Deductible Policies and their endorsements. The calculation of this premium is shown in your policy declarations.

If Deductible Policies are listed in Schedule F of the Program Values Schedule, we have agreed to adjust your final premium using a Composite Premium Rate and audited Exposure Base for each Deductible Policy listed in Schedule F of the Program Values Schedule.

This Composite Premium Rate multiplied by the audited Exposure Base is the Composite Rated Premium and represents the Deductible Premium. This is the premium for insurance provided in excess of deductible amounts and does not include Non-Subject Premium or Miscellaneous Charges.

WC 99 04 59
Ed. 11/18                                                                                                                 5

These policies contain deductible provisions which require that the Customer reimburse UWIC for deductible amounts. Claims under these policies which fall within the deductible will be handled by UWIC under a Claims Agreement.

B.  Retrospectively Rated Premium (Large Risk Alternative Rating Option)

In accordance with the Large Risk Alternative Rating Option ("LRARO"), and subject to the provisions of any applicable state retrospective rating endorsements, the primary premium for the retrospectively rated policies and their endorsements shall be the Net retrospective premium.

The rating base factors for all premiums subject to a rating base are shown in Schedule B of the Program Values Schedule.

Components of Net Retrospective Premium

1.  Standard Premium

The "**Standard Premium**" is the premium subject to retrospective rating. It is the sum of the premiums for the retrospective policies and their endorsements except for retrospective premium endorsements, without the application of premium discount and this Agreement. In computing the Standard Premium for each state or jurisdiction, the terms shall be defined as follows:

2.  Incurred Losses

"**Incurred Losses**" shall mean the sum of:

(a.)  all Paid Losses and estimated Unpaid Losses, subject to the loss limitations, and
(b.)  all interest as defined in the policies, and
(c.)  all premium on bonds paid for by UWIC in accordance with the provisions of the retrospective policies, and
(d.)  Allocated Claim Expenses, as defined herein, and
(e.)  all expenses of seeking recovery against a third party.

Incurred Losses are limited by the loss limitations.

3.  **Basic Premium**

The cost for fixed expenses under the retrospective policies ("Basic Premium," "Company Expense," or "Company Expense Factor") shall be calculated as follows:

(a.) Apply the applicable basic premium percentage to the standard premium, or

(b.) If Retrospective polices are listed in Schedule F of the Program Values Schedule, we have agreed to adjust your final premium using a Composite Premium Rate for all Retrospective policies listed in Schedule F of the Program Values Schedule.

Customer agrees to pay an estimated basic premium which will be adjusted according to the exposure base after policy expiration.

In no event shall the minimum basic premium be less than the amount shown in the policy.

Excess Loss Premium

The charge for the **Excess Loss Premium** for Workers' Compensation is the cost for insurance and allocated loss expenses in excess of the loss limitation. For all other lines of insurance, it is only the cost for allocated loss expenses in excess of the loss limitation. The loss limit charge shall be calculated as follows:

(a.)    Apply the Excess Loss Premium Factor to the standard premium, or

(b.)    If Retrospective polices are listed in Schedule F of the Program Values Schedule, we have agreed to adjust your final premium using a Composite Premium Rate for all Retrospective policies listed in Schedule F of the Program Values Schedule.

Customer agrees to pay an estimated Excess Loss Premium which will be adjusted according to the exposure base after policy expiration.

5.    Retrospective Developed Losses

"**Retrospective Developed Losses**" means Incurred Losses within the loss limitation multiplied by the applicable retrospective development factor.

6.    Converted Losses

"**Converted Losses**" means the retrospective developed losses multiplied by the applicable Loss Conversion Factor (LCF).

7.    Minimum Retrospective Premium

The minimum retrospective premium shall be calculated as follows:

(a.)  apply the applicable minimum premium percentage to the standard premium, or

(b.)  use of the formula [(Basic Premium + Excess Loss Premium ) X Tax Multiplier], or

(c.)  If Retrospective polices are listed in Schedule F of the Program Values Schedule, we have agreed to adjust your final premium using a Composite Premium Rate for all policies listed in Schedule F of the Program Values Schedule.   The Composite Premium Rate multiplied by the audited Exposure base is the final audited Composite Rated Premium and will represent the sum of the **[Basic Premium + Excess Loss Premium] x Tax Multiplier].**

In no event shall the minimum basic premium be less than the amount shown in the policy.

b.    Calculation of Net Retrospective Premium

The "Net Retrospective Premium" for all retrospective policies for all states shall be determined as follows:

The sum of:
1.   the Basic Premium, and
2.   the Excess Loss Premium, and
3.   the Converted Losses

This sum shall then be multiplied by the state tax multiplier.  This amount is subject to the minimum retrospective premium and shall constitute the Net Retrospective Premium.  Miscellaneous Charges are added to the Net Retrospective Premium.

## II.   Miscellaneous Charges

Miscellaneous Charges means taxes, any and all Assessments and for which Customer is liable to UWIC under the insurance program, whether they have been included within the defined costs under this Agreement or not included because they cannot be quantified accurately as of the Effective Date of this Agreement.

A.   Customer is obligated to pay these amounts under its insurance program and to indemnify UWIC as set forth in the Payment and Indemnification Sections of this Agreement.

B.   Customer is obligated to pay significant non-premium surcharges required by some States.   The identification of these surcharges is set forth in the Schedule of Operations on the policies.

C.   If at any time while this Agreement is in effect, or within five (5) years after its termination, any claim arises for premium taxes or Assessments which are not otherwise provided for or contemplated by this Agreement, UWIC shall promptly notify Customer of such claim and Customer agrees to defend, indemnify and hold harmless UWIC, its affiliates, and subsidiaries from such taxes and Assessments.

The indemnities provided under this section shall specifically inure to the benefit of any affiliate or subsidiary of UWIC that may also be subject to a claim for premium taxes or Assessments arising out of the amounts paid pursuant to this Agreement.

## III.   Payment of Deductible Premiums, Retrospective Premiums, Audits and Miscellaneous Charges

The Customer shall pay all Premiums under the following terms.  Adjustments in premium may also result in adjustments in Miscellaneous Charges and will be included within Customer's Obligations hereunder.

A.   Premium and Deposit Installments

The Customer will pay the sum of the total cash premium and Miscellaneous Charges in accordance with the installment schedule shown on the policies.

B.   Audit Adjustments on Premium

The premiums subject to audit are deposits, subject to adjustment after policy expiration according to the policy terms.  This may result in either a return or additional premium.  UWIC will return premium in cash or issue a credit against Customer's Obligations or else bill Customer for additional premium.

C.   Adjustment of Retrospective Premium

The first computation of the Net Retrospective Premium will be valued six months after the rating plan period ends.  This adjustment will result in either a return or additional premium.  UWIC will return premium in cash or issue a credit against Customer's Obligations or else bill Customer for additional premium.

Subsequent adjustments to the Net Retrospective Premium will be done annually and may result in either a return or additional premium and will continue until terminated by UWIC.  All additional premium is deemed to be an Obligation under this Agreement.

D.   Premium Loan Plans (Paid Loss Retros)

If the policies are subject to a paid loss retrospective rating program, the parties shall be bound by the terms of this premium loan plan (the "Premium Loan Plan"), and the Customer shall be obligated to pay the Standard Premium by a combination of cash installments and a Premium Loan ("Premium Loan" or "Loan") payable to the order of UWIC, its successors or assigns, at its offices in Chicago, Illinois.

Customer's payment of losses and expenses according to the monthly Billing Statement shall constitute payment against the Premium Loan. The amount of the Premium Loan, identified in Schedule A of the Program Values Schedule, is subject to adjustment at the time of retrospective adjustments taking into consideration Incurred Losses and Paid Losses. With each adjustment Customer agrees to an amendment to the Premium Loan establishing the new amount of its Obligation under the Loan.

After the fifth computation of the Net Retrospective Premium, or later at the sole discretion of UWIC, the program will convert to an incurred loss retrospective rating program. Upon payment of the premium for the final adjustment, the Loan will be satisfied, whereupon all adjustment of Incurred Losses will be done annually as part of the Net Retrospective Premium.

The Loan shall be collateralized by Security, according to the terms of this Agreement. Failure to maintain the Security at the required level set forth on the Cover Page shall constitute a default and, without foregoing any of its other rights upon default, UWIC shall convert the retrospective plan from a Paid Loss Plan to an Incurred Loss Plan.

The Customer shall have the right to prepay this Loan in whole or in part at any time.

E.  Cost Agreement for Losses ("**Program Maximum Loss Content**")

If listed in Schedule E of the Program Values Schedule, your Loss Responsive Rating Plan is subject to the Program Maximum Loss Content Amount shown in Schedule E of the Program Values Schedule. The Program Maximum Loss Content establishes the aggregate amount that the Customer will pay for losses under the rating programs shown on the Program Values Schedule and does not include any premiums. The Program Maximum Loss Content is obtained by multiplying the applicable rate times the combined coverage maximum rating base. All losses within deductible portions of policies or included within the loss limitation of a retrospectively rated policy will be included in the Program Maximum Loss Content. Customer will not be billed for additional loss reimbursements or insurance premiums after the Program Maximum Loss Content is reached.

If policies to which this provision applies are canceled or otherwise terminated prior to the end of their policy term, the minimum amount for the Program Maximum Loss Content will not be changed.

F.  Payment/Default

1.  UWIC shall issue Customer a Billing Statement for the following to the extent that they apply to Customer's Program:
    a.  Premiums,
    b.  Miscellaneous Charges,
    c.  Losses paid on behalf of Customer by UWIC under a paid loss retrospectively rated program, if applicable,
    d.  Additional premium and Miscellaneous Charges resulting from audits and adjustments, and
    e.  Late charges, if applicable.

2.  All amounts are due and payable as set forth in the Billing Statement. If balances in full are not received by UWIC within thirty (30) days of the billing date on a thirty day billing cycle or within 72 hours of the issuance of UWIC's bill on wire transfer billing agreement, Customer will pay UWIC a late charge of one and one-half per cent (1.5%) of the outstanding bill for each subsequent thirty (30) day period or any part thereof until all balances due are received by UWIC.

    a.  Customer shall not pay interest or late charges in excess of the rate allowed by the laws of the state having jurisdiction. The parties intend to comply with applicable statutes and regulations;

therefore, the interest or late charges under this Agreement shall be limited to that permitted under such law.

b.  Customer's failure to satisfy its Obligations as defined in this Agreement shall constitute a cross default, entitling UWIC to declare all Obligations immediately due and payable; furthermore, default under either this Agreement or under the Claim Agreement constitutes default under the other. In the event of default, premium and deductible loss payments under either this Agreement or the Claim Agreement will include UWIC's estimate of ultimate premium and losses developed to their ultimate value; and all costs and expenses, including attorney fees for the enforcement of any Obligations hereunder, including without limitation the fees and expenses of collection of amounts due.

c.  It is agreed that payments received will be applied against Obligations due to UWIC in the following priority first Security, second Losses and Expense, third Miscellaneous Expense and fourth Premiums.

G.  Mediation and Arbitration

1.  Within one hundred and eighty (180) calendar days after payment is due hereunder, Customer shall notify UWIC that it disputes any amount payable under this Agreement and/or the settlement, adjustment, defense or payment of any claim represented by such billed amount  ("Dispute Notice"). If Customer fails to so notify UWIC, then it shall have waived all rights to dispute such payment and the settlement, defense, adjustment and payment of any claim ("Claim Handling"). Said waiver shall include the waiver of any potential causes of action sounding in tort or contract for the alleged negligence or bad faith of UWIC or its affiliates.

If Customer disputes a billing according to these terms:

a)  Customer shall provide UWIC, or the other party, with a brief statement of the dispute within thirty (30) days of Dispute Notice;

b)  Represented by individuals with decision-making authority, the parties will promptly meet to attempt in good faith to negotiate a resolution;

c)  If the parties are unable to negotiate a resolution at said meeting, the negotiation period shall end, and the parties shall submit the dispute to mediation in accordance with the Agreement to Arbitrate section of the General Conditions portion of this contract.

**IV.  Security**

Customer agrees to secure its Obligations to UWIC, its affiliates and subsidiaries.  Customer shall pay any and all fees associated with the Security assessed by the provider of the Security.  The Security will be of the type and amount of collateral established on the Cover Page.

A.  Type of Security

1.  Trust Account

Customer will place funds in trust pursuant to a Trust Participation Agreement executed concurrently with this Agreement.

2.  Letter of Credit

WC 99 04 59
Ed. 11/18

Customer agrees: (i) to give UWIC a clean, irrevocable Letter of Credit naming United Wisconsin Insurance Company, and (ii) upon prior thirty (30) days' written notice to Customer, in substitution of any existing Letter of Credit, to issue a revised clean, irrevocable Letter of Credit to United Wisconsin Insurance Company.

The following Evergreen clause shall be included in any Letter of Credit:

"It is a condition of this Letter of Credit that it shall be deemed automatically extended without amendment for one year from the present or any future expiration date hereof, unless at least ninety (90) days before any such expiration date we notify you by registered mail addressed to:

United Wisconsin Insurance Company
Attn: Credit Department
200 West Madison Street, Suite 3850
Chicago, IL 60606

, that we elect not to renew this letter for such additional period."

Said Credit must be issued or confirmed by a bank which is authorized to issue letters of credit, approved by UWIC and a member of the Federal Reserve System. The initial term of any Credit shall be at least one year, and the Credit must provide that it will be extended automatically without amendment for one year beyond the Credit expiration date or any future expiration date unless, at least thirty (90) days prior to any expiration date, Issuing Bank shall notify UWIC by registered mail that it elects to consider the Credit as not renewed for any additional period. If any Credit is not renewed, Customer agrees to furnish a new Credit at least thirty (30) days prior to the expiration date of the existing Credit and any new or renewal Credits.

3. Surety Bond

Customer agrees to provide to UWIC a surety bond in a form and amount satisfactory to UWIC and from a surety acceptable to UWIC. The bond must name UWIC or one of its designated agents as Obligee which designation shall be in the UWIC's sole discretion.

B. Amount of Security
The original amount of the Security shall be in the amount indicated as the Initial Amount in Schedule C of the Program Values Schedule and shall not be changed prior to the first adjustment date unless UWIC requires a change due to a change in the Customer's financial condition or an acquisition, a change in operations or higher than anticipated losses resulting in a change in projected losses. Customer may request a change due to divestiture or change in financial condition. At each adjustment, UWIC's requirement for Security shall be determined according to the factors and formula established on the Cover Pages; however, any reductions in Security will be at UWIC's sole discretion.

## V. Grant of a Security Interest

The Customer hereby grants UWIC a continuing perfected first security interest in the Security and in all return premiums, return surcharge amounts, dividends, and other cash, accounts, or funds which are now or in the future may come into UWIC's possession; and Customer hereby directs UWIC to hold all sums as security for any Obligations to UWIC, its affiliates and subsidiaries.

## VI. Indemnification and Remedies

A. UWIC agrees to defend, indemnify, and hold harmless Customer for any and all actions, claims, suits, damages and punitive damages brought against Customer, whether resolved by judgment or by

settlement, resulting from UWIC's use of material specifically designated by Customer as confidential or proprietary.

B.   Customer agrees to defend, indemnify, and hold harmless UWIC for any and all actions, claims, suits, damages and punitive damages brought against UWIC, whether resolved by judgment or settlement, resulting from:

- Customer's act or omission in the use of confidential or proprietary information which UWIC provides to Customer, or

- An allegation or claim that UWIC is responsible for the obligations of the Customer under the deductible portion of its policy, or losses within the loss limitation of a policy which is subject to retrospective rating, unless said defense and indemnification are otherwise specifically inconsistent with the policies or the law, or

- The imposition of Miscellaneous Charges, including without limitation Assessments, as provided in this Agreement.

C.   The party seeking indemnification agrees to give the indemnifying party prompt notice of actions, claims and suits brought or threatened against it. The indemnifying party shall have the right to participate in or assume, at its expense, the defense of any such claim or process or settlement thereof and the party seeking indemnification shall cooperate in said defense. The party seeking indemnification retains the right to hire separate counsel to participate in its own defense.

D.   Upon default under this Agreement, UWIC is entitled to the following remedies.

1.   At its option UWIC may draw all or part of the amount available under Security if Customer is in default under this Agreement or otherwise as follows:

   a.   payments are not paid pursuant to their express provisions;

   b.   Customer has not furnished new or replacement Security as required;

   c.   Customer has not furnished a required increase in Security; or

   d.   Customer has defaulted on any other Obligation, whether under this Agreement or under the Claims Agreement, or any other agreement with UWIC, its affiliates or subsidiaries.

In the event of such a draw, UWIC shall deposit the Security proceeds in excess of Customer's current Obligations in any bank to be held as Security for Customer's Obligations;

2.   UWIC may immediately terminate some or all of Customer's rights to defer payment of its Obligations hereunder;

3.   UWIC may declare Customer's Obligations hereunder to be immediately due and payable;

4.   Unless otherwise prohibited, UWIC may terminate Customer's insurance Program or any policy issued thereunder, and cancel or non-renew any certification or financial responsibility filings made on Customer's behalf; and

5.   UWIC may pursue any and all legal and equitable rights and remedies available under applicable law.

E.  In no event shall either party be responsible for any indirect, incidental, special or consequential damages. Damages under this Agreement shall be limited to the amount of actual damages sustained by UWIC or the Customer.

## VII.    Confidential Personal Information

For purposes of this Agreement, "Confidential Personal Information" (or "Information") means any information that UWIC may, directly or indirectly, disclose to Customer that relates to an individual and that is not available to the public. This includes, but is not limited to, credit history; income; financial benefits; application, policy or claim information; health information; medical records; lists of individuals derived from nonpublic personally identifiable information; and the identification of an individual as a customer. Only those employees of Customer who need to know Confidential Personal Information to perform their duties in furtherance of this Agreement shall be given access to the Information. Customer shall maintain the security and the confidentiality of Confidential Personal Information and shall use it only for the purposes for which we have disclosed it to you under this Agreement. You shall not disclose said Information to any other person except to your agents and other persons who require such Information to further the objectives of this Agreement and who agree in writing to maintain its security and confidentiality. If the Gramm-Leach-Bliley Act or any other applicable state or federal law or regulation, now or hereafter in effect, imposes a higher standard of confidentiality with respect to such Confidential Personal Information, such standard shall prevail over the provisions of this Agreement.

## VIII.   General Conditions

A.  Except as otherwise provided, all notices shall be in writing and delivered by personal service or by certified mail, postage prepaid and return receipt requested, to the party at its address established on the Cover Pages.

B.  The rights, duties, and obligations of Customer shall not be assigned, delegated, or otherwise transferred in whole or in part without the prior express written consent of UWIC. UWIC may assign some or all of its rights, duties, and obligations under this Agreement to any of its "affiliated companies," which shall mean a company directly or indirectly controlled by the Accident Fund Insurance Group. A company is controlled by the direct or indirect ownership of more than fifty (50%) percent of the stock issued and entitled to vote for directors of the company or persons performing a function similar to that of directors. In the event that UWIC cedes 100% of the risk incurred under the Insurance Policies, the reinsurer to which UWIC has ceded such risk: (i) shall be a third party beneficiary of this Agreement, and (ii) provided that it is not in default under the terms of the agreement by which such risk was ceded, shall be entitled to exercise all of the rights granted under this Agreement to UWIC.

C.  UWIC may use data concerning Customer's insurance program to file reports with governmental or other regulatory agencies and, without identifying insured or its claimants, to prepare and disseminate analytical reports.

D.  Neither party shall be deemed to have breached this Agreement by reason of any delay or failure in its performance arising from acts beyond its control.

E.  This Agreement supersedes and cancels all prior agreements between the parties relating to the subject matter hereof and shall not be amended or revised except by a written supplement signed by all parties.

F.  A waiver of a breach or default under this Agreement shall not be a waiver of any other previous or subsequent breach or default. The failure or delay by either party to enforce any term or condition of this Agreement shall not constitute a waiver of such term or condition unless such term or condition is expressly waived in writing.

G.  If any provision of this Agreement shall be held to be invalid, unenforceable or illegal, the validity, enforceability, and legality of the remaining provisions shall not in any way be affected or impaired.

WC 99 04 59
Ed. 11/18                                                                                                  13

H. In any litigation or arbitration between the parties, the prevailing party shall be entitled to reasonable attorney's fees and all costs of proceeding incurred in enforcing this Agreement.

I. This Agreement may be executed in two or more counterparts, each of which shall be an original, but all of which shall constitute one Agreement.

J. The headings of sections of this Agreement are inserted for convenience of reference only and shall not constitute a part hereof.

K. All words or terms used in this Agreement, regardless of the number or gender in which they are used, shall be deemed to include any other number and any other gender as the context may require.

**California Insurance Code 11735**

This Agreement is in accord with our deductible endorsement (which is also attached to the policies to which this Agreement Letter applies), and is in compliance with California Insurance Code 11735, specifically that the following is hereby confirmed to protect the rights of injured workers and ensure that benefits are paid by Us without regard to any deductible:

1. Nonpayment of deductible amounts by the policyholder shall not relieve the insurer from the payment of compensation for injuries sustained by the employee during the period of time the endorsed policy was in effect.

2. Deductible policies for workers' compensation insurance coverage shall not be terminated retroactively for the nonpayment of deductible amounts.

3. Notwithstanding the deductible, the insurer shall pay all of the obligations of the employer for workers' compensation benefits for injuries occurring during the policy period.

4. Payment by the insurer of any amounts within the deductible shall be treated as an advancement of funds by the insurer to the employer and shall create a legal obligation for reimbursements and may be secured by appropriate security.

5. Allocated Loss Adjustment Expenses (ALAE), if so agreed between the insurer and the employer, are to be treated as advancements within the deductible to be reimbursed by the employer and shall create a legal obligation for reimbursements and may be secured by appropriate security.

6. An explanation of premium reductions associated with the deductible has been set forth for the policyholder in section I. Premium Calculation of this agreement.

7. Our Large Deductible filing complies with the provision that premium reductions for deductibles are determined before application of any experience modification, premium surcharge, or premium discount, and the premium reductions reflect the type and level of deductible consistent with accepted actuarial standards.

8. Our Large Deductible filing complies with the provision that the nonpayment of deductible amounts by the insured employer to its insurer, or the failure to comply with any security-related terms of the policy, shall be treated under the policy in the same manner as the payment or nonpayment of the premium pursuant to paragraph (1) of subdivision (b) of California Insurance Code Section 676.8.

**Cancellation of Insurance Policies**

This Agreement and the workers compensation policies to which this Agreement applies comply with the requirements of **California Insurance Code Section 676.8**. Therefore, after a policy is in effect, no notice of cancellation shall be effective unless it complies with the notice requirements of this section and is based upon the occurrence, after the effective date of the policy, of one or more of the following conditions:

1. The policyholder's failure to make any workers' compensation insurance premium payment when due.

2. The policyholder's failure to report payroll, to permit the insurer to audit payroll as required by the terms of the policy or of a previous policy issued by the insurer, or to pay any additional premium as a result of an audit of payroll as required by the terms of the policy or of a previous policy.

3. Material misrepresentation by the policyholder or its agent.

4. Failure to cooperate with the insurer in the insurer's investigation of a claim.

5. The policyholder's material failure to comply with federal or state safety orders or written recommendations of the insurer's designated loss control representative.

6. A material change in ownership or any change in the policyholder's business or operations that materially increases the hazard for frequency or severity of loss, requires additional or different classifications for premium calculations, or contemplates an activity excluded by the insurer's reinsurance treaties.

A policy shall not be canceled for the conditions specified in paragraph (1), (2), (3), or (4), except upon 10 days' written notice to the policyholder by the insurer.

A policy shall not be canceled for the conditions specified in paragraph (5) or (6) except upon 30 days' written notice to the policyholder by the insurer, provided that no notice is required if an insured and insurer consent to the cancellation and reissuance of a policy effective upon a material change in ownership or operations of the insured. If the policyholder remedies the condition to the insurer's satisfaction within the specified time period, the policy shall not be canceled by the insurer.

Nothing in this section shall preclude, while policies are in force, changes in the premium rate required or authorized by law, regulation, or order of the commissioner, or otherwise agreed to between the policyholder and insurer.

Any policy written for a term longer than one year, or any policy with no fixed expiration date, shall be considered as if written for successive policy periods of one year.

If, pursuant to the conditions of any policy listed in Schedule A of the Program Values Schedule, such policy is canceled by either party prior to its expiration, for the purpose of calculating your **Program Maximum Loss Content Amount**, the audited Exposure Base for that policy shall be calculated by adding the audited Exposure Base from the beginning of the policy period to the date of cancellation and the estimated Exposure Base for the balance of the original policy period, subject to your **Minimum Program Maximum Loss Content Amount.**

**California Insurance Code § 11658.5**

This agreement complies with California Insurance Code § 11658.5.

**Agreement to Arbitrate**

The parties recognize that disputes may arise between them, and in some instances involving non-parties as well, about the parties' rights and duties relative to payment of premium and other charges under this Agreement and the policies listed in the Program Values Schedule.  In addition, disputes may arise regarding whether and how

much our claims handling practices (e.g., investigation, administration, payments in connection with claims(s) under the policies listed in the Program Values Schedule) may impact the amount of premium and other charges which you may owe to us under this Agreement and the policies listed in Program Values Schedule. The parties will attempt to resolve those disputes without resort to formal procedures. However, in the event such a dispute is not resolved, either party shall submit the matter to arbitration and the other party shall be bound by such submission, provided that you shall not submit to arbitration any matter seeking to restrict our right to draw upon the Collateral or which would have the effect of restricting our right to draw upon the Collateral.

Neither party shall submit to arbitration (i) any coverage disputes which arise under or in connection with claims or suits brought against the policies listed in the Program Values Schedule; and/or (ii) claims by or against you and other UWIC policyholders with respect to other insurance programs with UWIC; and/or (iii) claims by or against you and other policyholders of any other commercial insurance insurer(s), including but not limited to any claim under (ii) or (iii) which you purport to arbitrate as a representative or member of a class or as a private attorney general. Nothing in this section is intended to interfere with any authority granted to the Insurance Commissioner under current law.

The arbitrator(s) has no authority, and is not empowered, to consolidate or direct class-action arbitration as to any disputes between the parties to this Agreement with other disputes between UWIC and any other of its policyholders or other third parties. Nor shall the arbitrator(s) have authority or be empowered to consolidate or direct disputes brought by you as a private attorney general. Any determination by the arbitrator(s) to so consolidate or direct class-action arbitration or to consolidate or direct disputes brought by you as a private attorney general shall be beyond the arbitrator's authority and jurisdiction and shall accordingly, be void. Any dispute regarding these prohibitions against consolidation of class-action arbitrations and against disputes brought by you as a private attorney general shall be heard and resolved by a court having jurisdiction over the parties as provided in the Consent to Jurisdiction provision below, not the arbitrator(s).

The parties agree that your insurance program with us is deemed made in the State of Michigan and involves interstate commerce. Accordingly, except for "California Employers" as defined in CIC § 11658.5(d), we and you agree that any arbitration proceeding arising out of or related to this Agreement shall be governed by the Federal Arbitration Act ("FAA") and, to the extent not inconsistent with the FAA, Michigan arbitration law. [For "California Employers" as defined in CIC § 11658.5(d), the choice of arbitration law negotiated pursuant to CIC § 11658.5 is Michigan.]

One arbitrator shall be chosen by us and one by you, and an umpire shall be chosen by the two arbitrators. If either party fails to name its arbitrator within thirty (30) days after receiving the written request of the other party to do so, the latter shall name both arbitrators and they shall select an umpire. If the arbitrators fail to agree in their selection of an umpire within thirty (30) days of the appointment of the second arbitrator, then each arbitrator shall nominate three umpires within thirty-five (35) days of the appointment of the second arbitrator. Each arbitrator shall then decline two of the nominations presented by the other arbitrator, and the selection shall be made by drawing lots and the name of the nominee first drawn shall be the umpire. The arbitrators and umpire shall be disinterested active or retired judges or executive officers of property-casualty and/or workers' compensation insurance companies or property-casualty and/or workers' compensation insurance brokers authorized to transact business in the United States. The arbitrators are relieved from all judicial formalities as to procedure and may abstain from the application of the rules of evidence. They shall interpret this Agreement as an honorable engagement and not merely as a legal obligation. The decision of the majority of the arbitrators and the umpire shall be final and binding upon both parties and judgment may be entered upon the award of the arbitrators in any court having jurisdiction. Each party shall bear the expense of its own arbitrator and shall jointly and equally bear with the other the expenses of the umpire and of the arbitration. Unless otherwise required by statute, each party shall be responsible for its own attorney's fees and costs.

Except for "California Employers" as defined in CIC § 11658.5(d), the arbitration shall take place in Ingham County, Michigan unless the parties mutually agree to an alternative site. [For "California Employers" as defined in CIC § 11658.5(d), the choice of arbitration venue negotiated pursuant to CIC § 11658.5 is Ingham County, Michigan].

By executing this Agreement, Customer acknowledges that UWIC provided it with a "NOTICE OF DISPUTE RESOLUTION TERMS TO BE INCLUDED IN CERTAIN AGREEMENTS PURSUANT TO CALIFORNIA INSURANCE CODE SECTION 11658.5" and that the terms of this Agreement reflect the final agreement of Customer and UWIC relating to the resolution of disputes under this Agreement.

**Consent to Jurisdiction**

Except for "California Employers" as defined in CIC § 11658.5(d), subject to the terms and conditions of this Agreement, in the event any suit is commenced to enforce any right hereunder, the non-suing party hereby irrevocably submits to, consents to and waives any objection to the jurisdiction of the courts of the State of Michigan including the United States District Court for the State of Michigan. [For "California Employers" as defined in CIC § 11658.5(d), the choice of jurisdiction negotiated pursuant to CIC § 11658.5 is Ingham County, in and for the State of Michigan.].

Except for "California Employers" as defined in CIC § 11658.5(d), in connection with any such action, process may be served within or outside of the State of Michigan by personal service or by registered mail, return receipt requested, addressed to the address set forth in the Notice part of the Plan Parameters Section, or such other address as the non-suing party may hereafter designate in writing. [For "California Employers" as defined in CIC § 11658.5(d), the choice of jurisdiction for the service of process negotiated pursuant to CIC § 11658.5 is Michigan.].

Except for "California Employers" as defined in CIC § 11658.5(d), the parties agree and consent that the exclusive venue (subject to the applicable rules of the courts concerning the assignment or transfer of cases) for any such action shall lie in the County of Ingham in the State of Michigan. [For "California Employers" as defined in CIC § 11658.5(d), the choice of exclusive venue negotiated pursuant to CIC § 11658.5 is Ingham County in and for the State of Michigan.

Notwithstanding the foregoing, nothing contained within this section shall relieve the parties from the obligation to resolve certain matters by mandatory arbitration as set forth in the preceding section entitled "Agreement to Arbitrate."

**Fraud Statement**

Certain states require that we provide you with the following Fraud Statement: Any person who knowingly and with intent to defraud any insurance company or another person files an application for insurance containing any materially false information, or conceals for the purpose of misleading information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and subjects the person to criminal and civil penalties. Certain States request that we provide you with a Fraud Statement. Any person who knowingly and with intent to defraud any insurance company or another person files an application for insurance containing any materially false information or conceals for the purpose of misleading information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and subjects the person to criminal and civil penalties.

**Termination of Agreement**

This Agreement shall terminate when both parties agree that all Obligations finally developed hereunder have been paid and/or otherwise performed unless terminated earlier pursuant to the Collateral Section.

**Legal Agreement**

Nothing contained in this Agreement shall be construed so as to require the commission of any act contrary to law, and wherever there is any conflict between any provision of this Agreement and any law or regulation contrary to which the parties have no legal right to contract, the latter shall prevail; provided however, in such event the provision so affected shall be limited only to the extent necessary to permit compliance with the minimum legal requirement, and all such other provisions of this Agreement shall continue in full force and effect.

---

**Applicable Law**

Except for "California Employers" as defined in CIC § 11658.5(d), this Agreement shall be governed by the internal laws of the State of Michigan. [For "California Employers" as defined in CIC § 11658.5(d), the choice of law negotiated pursuant to CIC § 11658.5 is Michigan.] This choice of law provision applies to this Agreement and not to coverage disputes which may arise in connection with Claims or suits brought against the policies listed in the Program Values Schedule.

**Acceptance - Entire Agreement**

This Agreement, including all Sections and Exhibits referenced herein, and including any policies or other documents incorporated herein by reference, constitute the entire, integrated agreement of the parties with respect to the subject matter hereof and may not be amended or modified except pursuant to a written agreement executed by authorized officers of both parties; however, except as set forth below, neither this Agreement nor any other collateral delivered hereunder releases or supersedes any collateral which you have provided or are obligated to provide as security for your Obligations to us, and all such collateral shall remain in full force and effect until expressly released by us in writing pursuant to the terms of the agreement(s) under which they were provided. Notwithstanding the foregoing, you agree that, at our option, any collateral you have provided us prior to the date of this Agreement in connection with insurance programs shall be subject to all the terms of this Agreement. This shall include, but is not limited to the provisions of this Agreement, whereby the proceeds of such collateral may be used to satisfy your Obligations to us. If, for any reason, such collateral may not be subject to the terms of this Agreement, then such collateral shall remain subject to the terms of the agreement(s) under which they were provided to us.

**X.    Definitions:**

**Agreement** means this entire contract, including the Program Values Schedule, Cover Pages, and any exhibits attached hereto.

**Allocated Claim Expenses** means expenses not otherwise included as loss that can be directly allocated to the handling of a particular claim as the result of; 1) independent medical examinations and medical reports/records; 2) court costs and fees for service of process; 3) attorneys and hearing representatives; 4) court reporter services and transcripts; 5) stenographic services and transcripts; 6) witness fees and expenses; 7) vendor interface charges; 8) bond premiums; 9) printing costs related to trials and appeals; 10) testimony, opinions, appraisals, reports, surveys, and analyses of professionals and experts; 11) trial and hearing attendance fees; 12) depositions, video statements, private investigators; 13) a charge for savings realized by the Customer resulting from services associated with utilization review, hospital bill audit, provider bill audit; 14) Preferred Provider Organization utilization charges; 15) case management and vocational rehabilitation management charges to the extent any portion of these costs are attributable to Allocated Claim Expenses; 16) alternative dispute resolution fees; 17) protection and pursuit of subrogation and recovery rights; 18) Special Investigative Unit; and 19) expenses which are not defined as loss and are directly related to and directly allocated to the handling of a particular claim.

**Assessment** means any assessment, tax or other charge, whether payment is required by law or required as a condition of continued opportunity to service deductible claims or transact insurance or self-insurance in the applicable state. This includes but is not limited to Assessments for participation in any "residual market plan," guarantee fund, guarantee association or other facility protecting claimants against the uncollectibility of insurance or self-insurance proceeds, second injury fund or state administrative bureau cost. As used herein, "residual market plan" means any plan, Program or facility (whether voluntary or required by law) by which insurers or self-insurers share in the risk of providing insurance for eligible employers or insureds.

**Billing Statement** means the periodic notice of amounts due to UWIC by Customer.

**Cash Funded Deductible** is a Large Deductible plan designed with an accompanying cash fund from which losses are reimbursed to the Insurance Company.

**Claim Agreement** means that contract entered into between Customer and UWIC establishing their respective rights and Obligations pursuant to the handling of claims, some or all of which may be claims under the policies listed on the Program Values Schedule of this Agreement.

**Cover Pages** means the pages specifically described as Cover Pages in this Agreement including any references to the Program Values Schedule.

**Credit** means a clean irrevocable letter of credit naming UWIC or one of its designated affiliates or subsidiaries as beneficiary and issued in accordance with this Agreement.

**Effective Date** means the beginning date for the term of this Agreement as defined in the Program Values Schedule and Cover Pages.

**Incurred Losses** means the total of Paid Losses, Unpaid Losses and may also include Allocated Claim Expenses for all Covered Claims. Incurred Losses includes expenses for case management and vocational rehabilitation management directly allocated to the handling of a particular claim. Case management and vocational rehabilitation management expenses may be defined as indemnity losses, medical losses or Allocated Claim Expenses by The National Council on Compensation Insurance, any state independent rating bureau or any state department of insurance.

**Insurance Policies** means the policy or policies to which this Agreement applies.

**Insurance Companies or Insurers** means companies that have issued policies.

**Issuer (Issuing Bank)** means the bank which issues the Credit or Substitute Credit.

**Loss Responsive Rating Plan** is an inclusive term describing any Large Deductible or Retrospective Rating plan.

**Non-Subject Premium** is the sum of premiums that are not subject to the selected rating program. These include all of the following elements and any other elements excluded by our rating manuals.
- Expense Constant.
- Premium resulting from the nonrateable element codes.
- Premium developed under the passenger seat surcharge under Classification 7421,
- Premium developed by the occupational disease rates for employers subject to the Federal Coal Mine Safety and Health Act.
- Premium developed by the catastrophe provisions as outlined in our manuals.

**Obligations** means all debts, liabilities and obligations of the Customer to UWIC, its affiliates and subsidiaries of every kind and description, direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising, whether arising under this Agreement, the Claim Agreement or under any other agreement, document or instrument, or by operation of law or otherwise, and further including, without limitation, all interest, fees, charges and expenses incurred by UWIC, its affiliates and subsidiaries.

**Paid Losses** means total payments made on Covered Claims for losses and may also include Allocated Claim Expenses. Paid Losses includes expenses for case management and vocational rehabilitation management directly allocated to the handling of a particular claim. Case management and vocational rehabilitation management expenses may be defined as indemnity losses, medical losses or Allocated Claim Expenses by The National Council on Compensation Insurance, any state independent rating bureau or any state department of insurance.

**Program** is a policy or policies as designated in the Program Values Schedule that share a Maximum Loss Content.

**Retrospective Rated Plan** is an optional rating plan that allows the final premium for a large risk to be adjusted on the basis of the losses it produces during the period of the plan subject to a maximum and minimum premium.

**Security** means the Credit, Substitute Credit, Trust Fund, Surety Bond or other collateral acceptable to UWIC which Customer provides to or for the benefit of UWIC to secure its present and future Obligations to UWIC, its affiliates and subsidiaries.

**Substitute Credit** means a revised, clean irrevocable letter of credit issued in substitution for a Credit.

**Trust Fund** means the fund account into which Customer places its funds to be held as Security for Customer's Obligations to UWIC.

**Trust Participation Agreement** means an Agreement between UWIC, Customer and trustee to place money from the Customer in a fund.

**Unpaid Losses or Unpaid Loss Reserves** means those reserves established by UWIC for Unpaid Losses and may also include unpaid Allocated Claim Expenses under the policy.  Unpaid Losses includes expenses for case management and vocational rehabilitation management directly allocated to the handling of a particular claim.  Case management and vocational rehabilitation management expenses may be defined as indemnity losses, medical losses or Allocated Claim Expenses by The National Council on Compensation Insurance, any state independent rating bureau or any state department of insurance.

**Wrapped-Up Security** means the consolidation of Security requirements for all of the contracts listed on the Program Values Schedule into a single requirement.

**IN WITNESS WHEREOF**, the parties hereto have read and agreed to this Agreement and have directed its execution in duplicate by their respective authorized officers.

**United Wisconsin Insurance Company**

By_____/s Theodore G. Bryant (on behalf of )_____
(Signature) Its Duly Authorized Officer

Theodore G. Bryant, Executive Vice-President of SUNZ Insurance Solutions,
On behalf of United Wisconsin Insurance Company, as Authorized by the Office of the President

State of [ *Florida* ]

County of [ *Manatee* ]

On this *5th* day of *January*, 20*23* before me, *Jen Weis*, the undersigned officer, personally appeared *Theodore Bryant*, who acknowledged him/herself to be authorized by the Office of the President of **United Wisconsin Insurance Company**, a corporation, and that he/she, being so authorized by the Office of the President, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation to said instrument, on behalf of the corporation, by such authority.

_____          **OR**          _____
Corporate Secretary                                          Notary Public
(Corporate Seal)                                             My commission expires on:_____ (seal)

**CORPORATE NAME OF CUSTOMER ("CUSTOMER")**

By_____
(Signature) Its Duly Authorized Officer

Sheldon Altschuler
_____
(Printed/Typed Name)

Title:_____President_____

JONATHAN WEIS
Commission # GG 906138
Expires October 5, 2023
Bonded Thru Budget Notary Services

State of

County of

On this *14th* day of *December*, 20*22*, before me *Sheldon Altschuler* the undersigned officer, personally appeared *before me*, who acknowledged him/herself to be the *President* of *Work Centric LLC*, a corporation, and that he/she, as such officer, being so authorized, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation to said instrument, on behalf of the corporation, by authority of his/her office.

_____          **OR**          _____
Corporate Secretary                                          Notary Public
(Corporate Seal)                                             My commission expires on: *6|23|2024* (seal)

STACIE D SANZONE
Notary Public - State of Maryland
Carroll County
My Commission Expires Jun 23, 2024

WC 99 04 59
Ed. 11/18

21

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective                          Policy No                    Endorsement No.
Insured                                                                     Premium

Insurance Company                              Countersigned by _____

## Program Values Schedule

This Program Values Schedule is deemed part of the Large Risk Alternative Rating and Insurance Program Agreement and the Claims Agreement executed between ___ Embraceor, LLC; WorkCentric, LLC; WorkCentric 2, LLC; and WorkCentric 3, LLC ___ and United Wisconsin Insurance Company ("UWIC") on ___ January 1, 2023 ___.

This schedule replaces and supersedes any previous Program Values Schedule effective this date January 1, 2023 .

All Policies subject to the terms this Agreement:

**Schedule A**
**Policy Listing and Program Identifier**

| Policy Number | Effective Date | Program Identifier | Program Term | Rating Program | Initial Premium Loan Amount | Contract subject to Wrapped-Up Security |
|---|---|---|---|---|---|---|
| See Attached Schedule | January 1, 2023 | $500,000 | 1/1/2023 – 1/1/2024 | Large Deductible | N/A | YES<br><br>200% of Open Case Reserves + 1 Deductible (all years) |

**Schedule B**
**Retrospective Rated Policies - Table of Retrospective Rating Values**

| No policies associated with program Embraceor, LLC; WorkCentric, LLC; WorkCentric 2, LLC; and WorkCentric 3, LLC are Retrospective Rated Policies. |
|---|

OR

| Policy Number | Minimum Premium or Formula | Basic Factor | Excess Loss Premium Factor | Loss Conversion Factor | Tax Multiplier | Loss Limitation |
|---|---|---|---|---|---|---|
| N/A | N/A | N/A | N/A | N/A | N/A | N/A |

**Schedule C**
**Security Schedule**

| Type of Security: | Initial Amount: | |
|---|---|---|
| Cash | $0 | 66% of Weekly Manual Premium |

**Schedule D**
**Loss Development Factors** for the adjustment of all programs under this agreement are listed below.

| Number of Months from Policy Inception | Loss Development Factor | Minimum Loss Development Amount |
|---|---|---|
| 0-12 | Current Loss Development Factors Promulgated by the Workers Compensation Insurance Rating Bureau of California (WCIRB) | 200% of Case Reserves + 1 Deductible |
| 12 | Current Loss Development Factors Promulgated by the Workers Compensation Insurance Rating Bureau of California (WCIRB) | 200% of Case Reserves + 1 Deductible |
| 24 | Current Loss Development Factors Promulgated by the Workers Compensation Insurance Rating Bureau of California (WCIRB) | 200% of Case Reserves + 1 Deductible |
| 36 | Current Loss Development Factors Promulgated by the Workers Compensation Insurance Rating Bureau of California (WCIRB) | 200% of Case Reserves + 1 Deductible |
| 48 | Current Loss Development Factors Promulgated by the Workers Compensation Insurance Rating Bureau of California (WCIRB) | 200% of Case Reserves + 1 Deductible |
| 60 | Current Loss Development Factors Promulgated by the Workers Compensation Insurance Rating Bureau of California (WCIRB) | 200% of Case Reserves + 1 Deductible |
| 72 and subsequent adjustments | Current Loss Development Factors Promulgated by the Workers Compensation Insurance Rating Bureau of California (WCIRB) | 200% of Case Reserves + 1 Deductible |

**Schedule E**
**Program Schedule and Program Maximum Loss Content**

This section is not applicable to this program: Embraceor, LLC; WorkCentric, LLC; WorkCentric 2, LLC; and WorkCentric 3, LLC   Please refer to your policy for information on your deductible limit and aggregate stop loss amount.

OR

| Program | Program Maximum Loss Content Rate | Exposure Base | Payroll Excluding Monopolistic States (Estimated or Audited) | Estimated Program Maximum Loss Content Amount | Minimum Program Maximum Loss Content Amount |
|---|---|---|---|---|---|
| N/A | N/A | N/A | N/A | N/A | N/A |

**Schedule F**
**Composite Rated Policies**

No Policies associated with program Embraceor, LLC; WorkCentric, LLC; WorkCentric 2, LLC; and WorkCentric 3, LLC are composite rated.

OR

| Policy Number | Composite Premium Rate | Exposure Base | Estimated Exposure Base | Estimated Composite Rated Premium | Estimated Non-Subject Premium |
|---|---|---|---|---|---|
| N/A | N/A | N/A | N/A | N/A | N/A |

**Schedule G**
**LOSS DEPOSIT**

$0     Total for all policies covered under this agreement. This amount is subject to adjustment as described in the Claims Agreement section 5 of the cover pages.

WC 99 04 60
Ed. 11/18                                                                                    2

**Schedule H**
**Service Fees**

| Policy Number | Option A | | | Option B | | Option C | | Option D |
| | Per Claim Charge | | | % of Incurred Losses & Claims Adjustment Expense | | % of Paid Loss & Claims Adjustment Expense | | %of Standard Premium |
| | Other than Medical | Medical Only | Notice Only | % of Incurred Losses & ALAE | Maximum charge per covered claim. | % of Paid Losses & ALAE | Maximum charge per covered claim. | |
|---|---|---|---|---|---|---|---|---|
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | Zero Percent (0%) |

**Amounts paid as Service Fees are subject to the terms and conditions of the Claims Agreement.**

**Schedule I**

**Payment of Losses – Cash Funded Deductible Program**
| This section is not applicable to program OR |
|---|

**Payment of Losses – Cash Funded Deductible Program**

| Policy | Effective Date | Cash Funded Deductible Amount |
|---|---|---|
| Workers' Compensation Insurance | January 1, 2023 | $500,000 |

The Cash Funded Deductible Program Loss Fund Amount required for all polices under this agreement is:
**$66% of Weekly Manual Premium to be maintained at a level of no less than 200% of Open Case Reserves + 1 Deductible (all years)].**

The current balance of the Cash Funded Deductible Program Loss Fund is $32,052,406.

The remaining balance due will be paid according to the schedule below.

*Cash Funded Deductible Amount Installment Schedule*

| Installment | Amount due | Percentage due |
|---|---|---|
| Weekly | Weekly | 66% of Weekly Manual Premium |
| N/A | N/A | N/A |
| N/A | N/A | N/A |
| N/A | N/A | N/A |
| N/A | N/A | N/A |
| N/A | N/A | N/A |

**Schedule J**

**Cash Call**
**Cash Call Threshold** $

WC 99 04 60
Ed. 11/18

**It is agreed that this Schedule replaces and supersedes any previous Program Values Schedule effective
this date: January 1, 2023**

**IN WITNESS WHEREOF,** the parties hereto have read and agreed to this Agreement and have directed its execution in
duplicate by their respective authorized officers.

**United Wisconsin Insurance Company**

By_____/s Theodore G. Bryant (on behalf of )_____
(Signature) Its Duly Authorized Officer

Theodore G. Bryant, Executive Vice-President of SUNZ Insurance Solutions,
On behalf of United Wisconsin Insurance Company, as Authorized by the Office of the
President

State of [ _Flori d_ɑ_ ]

County of [ _Manatee_ ]

On this _5ᵗʰ_ day of _January_, 20_23_, before me, _Sun Weis_____, the undersigned officer,
personally appeared _Theodore Bryant_, who acknowledged him/herself to be authorized by the Office of the President
of **United Wisconsin Insurance Company**, a corporation, and that he/she, being so authorized by the Office of the President,
executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation to said instrument,
on behalf of the corporation, by such authority.

_____        **OR**        _____
Corporate Secretary                                    Notary Public
(Corporate Seal)                                       My commission expires on:_____

JONATHAN WEIS
(seal)
Commission # GG 906138
Expires October 5, 2023
Bonded Thru Budget Notary Services

***CORPORATE NAME OF CUSTOMER ("CUSTOMER")***

By_S.a_____
(Signature) Its Duly Authorized Officer

Sheldon Altschuler
_____
(Printed/Typed Name)

Title:_____President_____

State of

County of

On this _14_ day of _December_, 20_22_ before me _Sheldon Altschuler_ the undersigned officer, personally
appeared _before me_, who acknowledged him/herself to be the _President_ of
_Work Centric LLC_, a corporation, and that he/she, as such officer, being so authorized, executed the foregoing
instrument for the purposes therein contained, by signing the name of the corporation to said instrument, on behalf of the
corporation, by authority of his/her office.

_____        **OR**        _____
Corporate Secretary                                    Notary Public
(Corporate Seal)                                       My commission expires on:_6/23/2024_   (seal)

STACIE D SANZONE
Notary Public - State of Maryland
Carroll County
My Commission Expires Jun 23, 2024

WC 99 04 60
Ed. 11/18

# Schedule A  - Policy Listing

| Policy Number | Effective Date |  | Policy Number | Effective Date |
|---|---|---|---|---|
| WC558-00008-023-SZ | 01/01/2023 |  | WC558-00673-023-SZ | 01/01/2023 |
| WC558-00059-023-SZ | 01/01/2023 |  | WC558-00687-023-SZ | 01/01/2023 |
| WC558-00073-023-SZ | 01/01/2023 |  | WC558-00728-023-SZ | 01/01/2023 |
| WC558-00077-023-SZ | 01/01/2023 |  | WC558-00757-023-SZ | 01/01/2023 |
| WC558-00086-023-SZ | 01/01/2023 |  | WC558-00769-023-SZ | 01/01/2023 |
| WC558-00131-023-SZ | 01/01/2023 |  | WC558-00776-023-SZ | 01/01/2023 |
| WC558-00236-023-SZ | 01/01/2023 |  | WC558-00781-023-SZ | 01/01/2023 |
| WC558-00240-023-SZ | 01/01/2023 |  | WC558-00800-023-SZ | 01/01/2023 |
| WC558-00241-023-SZ | 01/01/2023 |  | WC558-00809-023-SZ | 01/01/2023 |
| WC558-00244-023-SZ | 01/01/2023 |  | WC558-00835-023-SZ | 01/01/2023 |
| WC558-00245-023-SZ | 01/01/2023 |  | WC558-00847-023-SZ | 01/01/2023 |
| WC558-00252-023-SZ | 01/01/2023 |  | WC558-00854-023-SZ | 01/01/2023 |
| WC558-00257-023-SZ | 01/01/2023 |  | WC558-00864-023-SZ | 01/01/2023 |
| WC558-00270-023-SZ | 01/01/2023 |  | WC558-00872-023-SZ | 01/01/2023 |
| WC558-00330-023-SZ | 01/01/2023 |  | WC558-00879-023-SZ | 01/01/2023 |
| WC558-00344-023-SZ | 01/01/2023 |  | WC558-00882-023-SZ | 01/01/2023 |
| WC558-00351-023-SZ | 01/01/2023 |  | WC558-00895-023-SZ | 01/01/2023 |
| WC558-00356-023-SZ | 01/01/2023 |  | WC558-00898-023-SZ | 01/01/2023 |
| WC558-00361-023-SZ | 01/01/2023 |  | WC558-00905-023-SZ | 01/01/2023 |
| WC558-00410-023-SZ | 01/01/2023 |  | WC558-00925-023-SZ | 01/01/2023 |
| WC558-00417-023-SZ | 01/01/2023 |  | WC558-00935-023-SZ | 01/01/2023 |
| WC558-00418-023-SZ | 01/01/2023 |  | WC558-00958-023-SZ | 01/01/2023 |
| WC558-00435-023-SZ | 01/01/2023 |  | WC558-00984-023-SZ | 01/01/2023 |
| WC558-00457-023-SZ | 01/01/2023 |  | WC558-00987-023-SZ | 01/01/2023 |
| WC558-00462-023-SZ | 01/01/2023 |  |  |  |
| WC558-00478-023-SZ | 01/01/2023 |  |  |  |
| WC558-00498-023-SZ | 01/01/2023 |  |  |  |
| WC558-00509-023-SZ | 01/01/2023 |  |  |  |
| WC558-00515-023-SZ | 01/01/2023 |  |  |  |
| WC558-00532-023-SZ | 01/01/2023 |  |  |  |
| WC558-00556-023-SZ | 01/01/2023 |  |  |  |
| WC558-00565-023-SZ | 01/01/2023 |  |  |  |
| WC558-00568-023-SZ | 01/01/2023 |  |  |  |
| WC558-00577-023-SZ | 01/01/2023 |  |  |  |
| WC558-00594-023-SZ | 01/01/2023 |  |  |  |
| WC558-00628-023-SZ | 01/01/2023 |  |  |  |
| WC558-00645-023-SZ | 01/01/2023 |  |  |  |
| WC558-00669-023-SZ | 01/01/2023 |  |  |  |

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective                        Policy No.                    Endorsement No.
Insured                                                                          Premium:

Insurance Company                            Countersigned by _____