# EXHIBIT 9



**Author's Direct Info**
tbryant@sunzinsurance.com
941.900.4455

October 5, 2023

**Sent Via Next-Day and Email**
Found@immediate.com
David@workcentric.com
Sheldon@workcentric.com

Docks Sutherland - CEO
Embraceor, LLC / Workcentric 2, LLC / WorkCentric 3, LLC / WC TopCo, LLC
1900 Reston Metro Plaza, Suite 600
Reston, VA  20190

David Harvey -  COO / Executive Vice-President
Embraceor, LLC / Workcentric 2, LLC / WorkCentric 3, LLC / WC TopCo, LLC
1900 Reston Metro Plaza, Suite 600
Reston, VA  20190

Sheldon Altschuler - President
Embraceor, LLC / Workcentric 2, LLC / WorkCentric 3, LLC / WC TopCo, LLC
1900 Reston Metro Plaza, Suite 600
Reston, VA  20190

Re:     **DEMAND FOR IMMEDIATE PAYMENT TO SHELDON ALTSCHULER**

Mr Altschuler.

This letter is a demand for immediate payment pursuant to the personal guaranty you provided to SUNZ as set forth in the Guaranty for the Insurance Program ("Guaranty"), a copy of which is attached to this letter.

Pursuant to your Guaranty, this letter demands immediate payment of the following amounts owed by the Program Owners:

| | | | |
|---|---|---|---:|
| Premium | : | $ | 2,344,557.94 |
| Loss Fund | : | $ | 38,552,285.34 |
| Taxes / Surcharges | : | $ | 456,024.92 |
| Audit Premium | ; | $ | 1,617,903.51 |
| | **TOTAL** | **$** | **42,970,771.71** |

These amounts are, as you know, continuing to develop consistent with the loss activity within your company's insurance program with SUNZ.  This current Total amount represents your immediate payment obligation.

---

Your personal guaranty requries you pay SUNZ all financial obligations owed to SUNZ by Embraceor, LLC; WorkCentric 2, LLC; WorkCentric 3, LLC and WC TopCo LLC (defined as "Program Owners"). Indeed, your financial obligation to pay all liabilities for the Program Owners is set forth in Section 1 of the Guaranty:

1. <u>GUARANTY OF PAYMENT</u>.

   A. *Guarantor hereby guarantees and becomes surety to Sunz for the full, prompt and unconditional payment of all Liabilities (as defined below), immediately when and as the same shall become due, and the full, prompt and unconditional performance of each term and condition to be performed by Program Owners under the Quotation Agreement and Loss Fund Management Agreement, both in its current form and such renewal agreements as may be executed by the parties. In the event of more than one Guarantor, each shall be jointly and severally liable for the full amount of Liabilities.*

   B. *This Guaranty is a personal and primary obligation of Guarantor and shall be a continuing inexhaustible Guaranty. This is a guaranty of payment and not of collection. Sunz may require Guarantor to pay and perform its liabilities and obligations under this Guaranty and may proceed immediately against Guarantor without being required to bring any proceeding or take any action against the Program Owners, any other guarantor or any other person, entity or property prior thereto. The liability of Guarantor hereunder is independent to and separate from the liability of Program Owners, any other guarantor or person, and the availability of any other collateral security or funds available for the Liabilities.*

Section 2(A) of the Guaranty defines Liabilities as follows:

2. <u>DEFINITIONS</u>.

   A. *"Liabilities" means any and all liabilities or obligations arising under or otherwise related to (a) the Loss Fund Management Agreement and any renewal Loss Fund Management Agreement, (b) the Quotation Agreement and any renewal Quotation Agreement, (c) regulatory or statutory penalties, fines, or charges asserted against or otherwise applicable to any Program Owner or insured, and (d) any deductible insurance policy(ies) and endorsements thereto (collectively "Insurance Policy(ies)") issued to Program Owners.*

Consistent with Section 5 of the Guaranty, the amounts set forth above representing the current Liabilities of the Program Owners, SUNZ demands your immediate payment of all Liabilities as an ongoing obligation.

SUNZ reserves all rights under the Guaranty including all other agreements relative to the insurance program SUNZ provided to Program Owners including the promissory note dated July 18, 2023 and the attendant security agreement.

Further, as set forth in Section 6(A) of your Guaranty, the rights and remedies of Sunz, as provided therein and in the Quotation Agreement, Loss Fund Management Agreement, and related Insurance Policy(ies), and any renewal of such agreements, shall be cumulative and concurrent, may be pursued separately, successively or together, may be exercised as often as occasion therefore shall arise, and shall be in addition to any other rights or remedies conferred upon Sunz at law or in equity.

Sunz shall have the right to take any action it deems appropriate without the necessity of resorting to any collateral securing obligations owed to it under this Guaranty, the Quotation Agreement, the Loss Fund Management Agreement, any related Insurance Policy(ies) issued to Program Owners, or any renewal thereof.

You must make the required payment by **5:00 pm on Friday, October 13, 2023**.

**PROTECT AND PRESERVE ALL EVIDENCE**

Lastly, given the serious nature of this situation, you are hereby placed on notice to preserve all potential evidence related to the above-referenced claims and allegations, including all electronic data. Specifically, you must not destroy, delete, modify or discard any documents, electronic mail, text messages, files or information, in electronic, paper or any form of media, on any work or home computer, laptop or cell phone, related to the following:

(a) the matters set forth in this letter including exhibits hereto;

(b) all materials related to, referencing, concerning, or mentioning workers' compensation insurance bound or issued by SUNZ or any affiliate of SUNZ;

(c) any communications or statements to third parties related to the matters set forth in this letter related to Liabilities of the Program Owner;

(d) all communications between your respective companies and any third parties related to the matters set forth in this letter including exhibits hereto;

(e) all information, data, compilations, or materials of any kind related to communications or statements made about obtaining workers compensation insurance through SUNZ or any affiliate of SUNZ; and

(f) any other evidence relating to the matters set forth in this letter including exhibits hereto.

Sheldon Altschuler / Docks Sutherland / Davie Harley
October 5, 2023
Page 4 of 11

The items to be preserved include but are not limited to, the following "Preserved Information":

1. All e-mail and information about e-mail, including e-mail from third-party sources and/or webmail (e.g. Hotmail, Yahoo!mail, GMail, AOL, etc.), including message contents, header information and logs of electronic mail systems usage, sent or received by anyone referring or relating to the transmittal or delivery of Company information, confidential or otherwise, communications relating to the Company, its Customers or employees;

2. All word processing files and file fragments containing information referring or relating to the transmittal of Company information, confidential or otherwise, or communications relating to the Company, the retention of Company information, or communications with any other insurance company;

3. Off-line and cloud data storage, backups, and archives, thumb drives, diskettes, laptops, "smart" phones or cellular phones, and other removable electronic media containing data referring or relating to the transmittal of Company information, confidential or otherwise, communications relating to the Company, its Customers or employees or communications with any other insurance company;

4. All Company documents in your possession or control, including all copies; and

5. All documents, memos, calendars, recordings, pictures, videos, or other forms of evidence in your possession or control which in any way relate to the matters identified above.

You should anticipate that much of the information subject to disclosure or responsive to discovery in this matter is stored on your current and former computer systems and other media and devices (including personal digital assistants, voice-messaging systems, online repositories and cell phones).

Electronically stored information (hereinafter "ESI") should be afforded the broadest possible definition and includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically or optically stored as:

- Digital communications (e.g., e-mail, voice mail, instant messaging);

- Word processed documents (e.g., Word or WordPerfect documents and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., QuickBooks, Money, Peachtree data files);

- Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);

- Sound Recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., .AVI and .MOV files);

- Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, Yahoo, blog tools);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies);

- Presentations (e.g., PowerPoint, Corel Presentations)

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Computer Aided Design/Drawing Files; and,

- Back Up and Archival Files (e.g., Zip, .GHO)

ESI resides not only in areas of electronic, magnetic and optical storage media reasonably accessible to you, but also in areas you may deem *not* reasonably accessible. You are obliged to *preserve* potentially relevant evidence from *both* these sources of ESI, even if you do not anticipate *producing* such ESI.

The demand that you preserve both accessible and inaccessible ESI is reasonable and necessary. Pursuant to amendments to the Federal Rules of Civil Procedure that have been approved by the United States Supreme Court (as amended. binding and effective as of December 1, 2020), you must identify all sources of ESI you decline to produce and demonstrate to the court why such sources are not reasonably accessible. For good cause shown, the court may then order production of the ESI, even if it finds that it is not reasonably accessible. Accordingly, even ESI you deem reasonably inaccessible *must be preserved in the interim* so as not to deprive me of my right to secure the evidence or the Court or Arbitrator of its right to adjudicate the issue.

**Preservation Requires Immediate Intervention**

You must act <u>immediately</u> to preserve potentially relevant ESI including, without limitation, information with the *earlier* of a Created or Last Modified date on or after January 1, 2019 through the date of this demand and concerning the Preserved Information.

Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. You must also intervene to prevent loss due to routine operations and employ proper techniques and protocols suited to protection of ESI.

*Be advised that sources of ESI are altered and erased by continued use of your computers and other devices.* Booting a drive, examining its contents or running any application will irretrievably alter

the evidence it contains and may constitute unlawful spoliation of evidence. Consequently, alteration and erasure may result from your failure to act diligently and responsibly to prevent loss or corruption of ESI.

*Nothing in this demand for preservation of ESI should be understood to diminish your concurrent obligation to preserve document, tangible things and other potentially relevant evidence.*

**Suspension of Routine Destruction**

You are directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. You are further directed to immediately identify and modify or suspend features of your information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations include:

- Purging the contents of e-mail repositories by age, capacity or other criteria;

- Using data or media wiping, disposal, erasure or encryption utilities or devices;

- Overwriting, erasing, destroying or discarding back up media;

- Re-assigning, re-imaging or disposing of systems, servers, devices or media;

- Running antivirus or other programs effecting wholesale metadata alteration;

- Releasing or purging online storage repositories;

- Using metadata stripper utilities;

- Disabling server or IM logging; and,

- Executing drive or file defragmentation or compression programs.

**Guard Against Deletion**

You should anticipate that your employees, officers or others may seek to hide, destroy or alter ESI and act to prevent or guard against such actions. Especially where company machines have been used for Internet access or personal communications, you should anticipate that users may seek to delete or destroy information they regard as personal, confidential or embarrassing and, in so doing, may also delete or destroy potentially relevant ESI.

This concern is not one unique to you or your employees and officers. It is simply an event that occurs with such regularity in electronic discovery efforts that any custodian of ESI and their counsel are obliged to anticipate and guard against its occurrence.

**Preservation by Imaging**

You should take affirmative steps to prevent anyone with access to your data, systems and archives from seeking to modify, destroy or hide electronic evidence on network or local hard drives (such as by deleting or overwriting files, using data shredding and overwriting applications, defragmentation, re-imaging or replacing drives, encryption, compression, steganography or the like).

With respect to local hard drives, one way to protect existing data on local hard drives is by the creation and authentication of a forensically qualified image of all sectors of the drive. Such a forensically qualified duplicate may also be called a bitstream image or clone of the drive. Be advised that a conventional back up of a hard drive is not a forensically qualified image because it only captures active, unlocked data files and fails to preserve forensically significant data that may exist in such areas as unallocated space, slack space and the swap file.

With respect to the hard drives and storage devices of each of you and of each person acting in the capacity or holding the job title named below, as well as each other person likely to have information pertaining to the instant action on their computer hard drive(s), demand is made that you immediately obtain, authenticate and preserve forensically qualified images of the hard drives in any computer system (including portable and home computers) used by those persons listed below during the period from January 1, 2019 to the present, as well as recording and preserving the system time and date of each such computer:

a. Docks Sutherland (all emails used for communication and all electronic communications of every sort whether sent through a company communication platform or third-party system)

b. David Harvey (all emails used for communication and all electronic communications of every sort whether sent through a company communication platform or third-party system)

c. Sheldon Altschuler (all emails used for communication and all electronic communications of every sort whether sent through a company communication platform or third-party system)

d. Chief Operating Officer

e. Executive Vice-President(s) and/or Vice-President(s)

f. Chief Information Officer

g. Chief Financial Officer

h. Executives and senior managers in charge of claims administration

i. Executives and senior managers in charge of underwriting

Once obtained, each such forensically qualified image should be labeled to identify the date of acquisition, the person or entity acquiring the image and the system and medium from which it was obtained. Each such image should be preserved without alteration.

**System Sequestration or Forensically Sound Imaging**

We suggest that, with respect to the individuals and entities outlined above, removing their ESI systems, media and devices from service and properly sequestering and protecting them may be an appropriate and cost-effective preservation step.

**Preservation in Native Form**

You should anticipate that certain ESI, including but not limited to spreadsheets and databases, will be sought in the form or forms in which it is ordinarily maintained. Accordingly, you should preserve ESI in such native forms, and you should not select methods to preserve ESI that remove or degrade the ability to search your ESI by electronic means or make it difficult or burdensome to access or use the information efficiently in the litigation. You should additionally refrain from actions that shift ESI from reasonably accessible media and forms to less accessible media and forms if the effect of such actions is to make such ESI not reasonably accessible.

**Metadata**

You should further anticipate the need to disclose and produce system and application metadata and act to preserve it. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Application metadata is information automatically included or embedded in electronic files but which may not be apparent to a user, including deleted content, draft language, commentary, collaboration and distribution data and dates of creation and printing. Be advised that metadata may be overwritten or corrupted by careless handling or improper steps to preserve ESI. For electronic mail, metadata includes all header routing data and Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, CC and BCC fields.

**Servers**

With respect to servers like those used to manage electronic mail (e.g., Microsoft Exchange, Lotus Domino) or network storage (often called a user's "network share"), the complete contents of each user's network share and e-mail account should be preserved. There are several ways to preserve the contents of a server depending upon, e.g., its RAID configuration and whether it can be downed or must be online 24/7. If you question whether the preservation method you pursue is one that we will accept as sufficient, please call to discuss it.

**Home Systems, Laptops, Online Accounts and Other ESI Venues**

Though we expect that you will act swiftly to preserve data on office workstations and servers, you should also determine if any home or portable systems may contain potentially relevant data. To

the extent that officers, board members or employees have sent or received potentially relevant e-mails or created or reviewed potentially relevant documents away from the office, you must preserve the contents of systems, devices and media used for these purposes (including not only potentially relevant data from portable and home computers, but also from portable thumb drives, CD-R disks and the user's PDA, smart phone, voice mailbox or other forms of ESI storage.).

Similarly, if employees, officers or board members used online or browser-based email accounts or services (such as AOL, Gmail, Yahoo Mail or the like) to send or receive potentially relevant messages and attachments, the contents of these account mailboxes (including Sent, Deleted and Archived Message folders) should be preserved.

**Ancillary Preservation**

You must preserve documents and other tangible items that may be required to access, interpret or search potentially relevant ESI, including logs, control sheets, specifications, indices, naming protocols, file lists, network diagrams, flow charts, instruction sheets, data entry forms, abbreviation keys, user ID and password rosters or the like.

You must preserve any passwords, keys or other authenticators required to access encrypted files or run applications, along with the installation disks, user manuals and license keys for applications required to access the ESI.

You must preserve any cabling, drivers and hardware, other than a standard 3.5" floppy disk drive or standard CD or DVD optical disk drive, if needed to access or interpret media on which ESI is stored. This includes tape drives, bar code readers, Zip drives and other legacy or proprietary devices.

**Paper Preservation of ESI is Inadequate**

*As hard copies do not preserve electronic searchability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions.* If information exists in both electronic and paper forms, you should preserve both forms.

**Agents, Attorneys and Third Parties**

Your preservation obligation extends beyond ESI in your care, possession or custody and includes ESI in the custody of others that is subject to your direction or control. Accordingly, you must notify any current or former agent, attorney, employee, custodian or contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of your obligation to do so, and you must take reasonable steps to secure their compliance.

Included in these third parties are the principles, executives, owners, board members, and senior managers at your companies who participated with you in the financial default described in this letter.

Your failure to notify such third parties will be treated identically as failure to produce.

**System Sequestration or Forensically Sound Imaging**

In the event you deem it impractical to sequester systems, media and devices, we believe the breadth of preservation required, coupled with the modest number of systems implicated, dictates that forensically sound imaging of the systems, media and devices is expedient and cost effective. As we anticipate the need for forensic examination of one or more of the systems and the presence of relevant evidence in forensically accessible areas of the drives, we demand you employ forensically sound ESI preservation methods. Failure to use such methods poses a significant threat of spoliation and data loss.

By "forensically sound," we mean duplication, for purposes of preservation, of all data stored on the evidence media while employing a proper chain of custody and using tools and methods that make no changes to the evidence and support authentication of the duplicate as a true and complete bit-for-bit image of the original. A forensically sound preservation method guards against changes to metadata evidence and preserves all parts of the electronic evidence, including in the so-called "unallocated clusters," holding deleted files.

**Preservation Protocols – Suitable Protocol**

We are desirous of working with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol, if you will furnish an inventory of the systems and media to be preserved. Else, if you will promptly disclose the preservation protocol you intend to employ, perhaps we can identify any points of disagreement and resolve them. A successful and compliant ESI preservation effort requires expertise.

If you do not currently have such expertise at your disposal, we urge you to engage the services of an expert in electronic evidence and computer forensics. Perhaps our respective experts can work cooperatively to secure a balance between evidence preservation and burden that's fair to both sides and acceptable to the Court.

**Do Not Delay Preservation**

We are available to discuss reasonable preservation steps. Please let me know if you would like me to get you in contact with them. However, *you should not defer preservation steps pending such discussions if ESI may be lost or corrupted as a consequence of delay.*

Should your failure to preserve potentially relevant evidence result in the corruption, loss or delay in production of evidence to which we are entitled, such failure would constitute spoliation of evidence, and we will not hesitate to seek sanctions.

**Confirmation of Compliance**

Please confirm to me by <u>Friday, October 13, 2023</u>, you have taken the steps outlined in this letter to preserve ESI and tangible documents potentially relevant to this action. If you have not undertaken the steps outlined above, or have taken other actions, please describe what you have done to preserve potentially relevant evidence.

The Company treats this matter with the utmost seriousness and will seek any and all available civil remedies and sanctions against you and/or anyone working in conjunction with you to commit the wrongful and illegal conduct described herein.  The failure to preserve any relevant or otherwise discoverable materials, including without limitation electronic data, may result in penalties or sanctions under federal law, Florida law, and California Law.

This letter is not a complete statement of the Company's rights in connection with this matter, and nothing herein shall constitute or be deemed a waiver, estoppel, admission or prejudice of any kind to the Company's rights and defenses under the law or otherwise.  All rights are reserved.

**PLEASE GOVERN YOURSELF ACCORDINGLY.**

Sincerely,

Theodore G. Bryant
Exec. V.P. / Chief Legal Officer

Enclosures

TGB/jw

cc:     Steven F. Herrig
        Rick Leonard
        David Brodsky
        Donna Ross

# GUARANTY FOR THE INSURANCE PROGRAM

This Guaranty is executed and effective as of the Effective Date as defined on the signature page, by the undersigned with a physical address as indicated, referred to herein as "Guarantor."

Name:   Sheldon Altschuler

Address:   1900 Reston Metro Plaza, Suite 600, Reston, VA 20190

Email:   sheldon@workcentric.com

WHEREAS Sunz Insurance Solutions, LLC ("Sunz") and Program Owners (as such term is defined in the Loss Fund Management Agreement and any renewal of such agreement) entered into a Loss Fund Management Agreement and Quotation Agreement (collectively the "Agreements," both in their current form and such renewal agreements as may be executed by the parties thereto) whereby Sunz and Program Owners agreed to the terms and conditions of an insurance program;

WHEREAS Sunz seeks further assurances Program Owners will be able to satisfy its financial obligations to Sunz, both current and ongoing;

WHEREAS Guarantor desires to provide further assurances that Program Owners will be able to satisfy their financial obligations to Sunz related to Program Owners' large deductible workers' compensation insurance program; and

WHEREAS Guarantor desires to provide Sunz with additional collateral and security consistent with and limited to only what is required to be maintained for claims that do not exceed the deductible.

IT IS THEREFORE GUARANTEED THAT:

1. GUARANTY OF PAYMENT.

    A.  Guarantor hereby guarantees and becomes surety to Sunz for the full, prompt and unconditional payment of all Liabilities (as defined below), immediately when and as the same shall become due, and the full, prompt and unconditional performance of each term and condition to be performed by Program Owners under the Loss Fund Management Agreement, both in its current form and such renewal agreements as may be executed by the parties.  In the event of more than one Guarantor, each shall be jointly and severally liable for the full amount of Liabilities.

    B.  This Guaranty is a personal and primary obligation of Guarantor and shall be a continuing inexhaustible Guaranty.  This is a guaranty of payment and not of collection.  Sunz may require Guarantor to pay and perform its liabilities and obligations under this Guaranty and may proceed immediately against Guarantor without being required to bring any proceeding or take any action against the Program Owners, any other guarantor or any other person, entity or property prior thereto.  The liability of Guarantor hereunder is independent to and separate from the liability of Program Owners, any other guarantor or person, and the availability of any other collateral security or funds available for the Liabilities.

2. DEFINITIONS.

    A.  "Liabilities" means any and all liabilities or obligations arising under the Loss Fund Management Agreement, any renewal Loss Fund Management Agreement, and arising under any large

      deductible insurance policy(ies), and endorsements thereto (collectively "Insurance Policy(ies)"), issued to Program Owners.

   B. "Event(s) of Default" means any of those acts, events or omissions as set forth in Section 4 of this Guaranty.

3. REPRESENTATION & WARRANTIES. Guarantor represents and warrants to Sunz as follows:

    A. <u>Organization, Powers</u>. Guarantor (i) is an adult individual and is <u>sui juris</u>; (ii) has the power and authority to own its properties and assets and to carry on its business as now being conducted and as now contemplated; and (iii) has the power and authority to execute, deliver and perform, and by all necessary action has authorized the execution, delivery and performance of, all of its obligations under this Guaranty, each agreement to which it is a party, and any other document to which it is a party in connection with the Agreements.

    B. <u>Execution of Guaranty</u>. This Guaranty and each other agreement to which Guarantor is a party related to or in connectionwith the Agreements have been duly executed and delivered by Guarantor. Execution, delivery and performance of this Guaranty and each other agreement to which Guarantor is a party related to or in connectionwith the Agreements will not: (i) violate any of its organizational documents, provision of law, order of any court, agency or instrumentality of government, or any provision of any indenture, agreement or other instrument to which it is a party or by which it or any of its properties is bound; (ii) result in the creation or imposition of any lien, charge or encumbrance of any nature; or (iii) require any authorization, consent, approval, license, exemption of, or filing or registration with, any court or governmental authority.

    C. <u>Obligations of Guarantor</u>. This Guaranty and each other agreement to which Guarantor is a party related to or in connectionwith the Agreements are the legal, valid and binding obligations of Guarantor, enforceable against it in accordance with their terms, except as the same may be limited by bankruptcy, insolvency, reorganization or other laws or equitable principles relating to or affecting the enforcement of creditors' rights generally. Guarantor entered into this Guaranty for commercial purposes.

    D. <u>Litigation</u>. There is no action, suit, or proceeding at law or in equity or by or before any governmental authority, agency or other instrumentality now pending or, to the knowledge of Guarantor, threatened against or affecting Guarantor or any of its properties or rights which, if adversely determined, would materially impair or affect: (i) the value of any collateral securing the Liabilities; or (ii) Guarantor's right to carry on its business substantially as now conducted (and as now contemplated).

    E. <u>No Defaults</u>. As of the date of execution of this Guaranty, Guarantor is not in default in the performance, observance or fulfillment of any of the obligations, covenants or conditions contained herein or in any material agreement or instrument to which it is a party or by which it or any of its properties is bound.

    F. <u>No Untrue Statements</u>. No document, certificate or statement furnished to Sunz by or on behalf of Guarantor contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements contained herein and therein not misleading. Guarantor acknowledges all such statements, representations and warranties shall be deemed to have been relied upon by Sunz as an inducement to enter into the Insurance Policy(ies) and Loss Fund Management Agreement with Program Owners including any such renewal Insurance Policy(ies) and renewal Loss Fund Management Agreements.

G. In the event of default under this Guaranty, Guarantor acknowledges, certifies, and promises to stipulate to an automatic confession of judgment in the amount required to bring it into compliance with the terms and conditions of this Guaranty. Further, Guarantor will not assert, plead or enforce against Sunz any defense of waiver, statute of limitation, res judicata, statute of frauds, incapacity, minority, usury or unenforceability that may be available to Guarantor in respect to the matters contained in this Guaranty.

4. EVENTS OF DEFAULT. The term "Event of Default" means any of the following:

A. Any event of default as set forth in the Loss Fund Management Agreement or any Insurance Policy(ies) or any renewal of either agreement;

B. Guarantor's default in the timely performance of any term, agreement or condition in this Guaranty;

C. If any representation, warranty, certificate, financial statement or other information made or given by the Guarantor is materially incorrect or misleading or omits to state any fact necessary to keep the statements from being materially misleading.

D. Guarantor expressly acknowledges and agrees that a default in any of the provisions of this Guaranty shall constitute a default in any other agreement which may now or in the future exist between Guarantor and Sunz, and that similarly a breach of any such other agreement between Guarantor and Sunz shall constitute an event of default in this Guaranty.

5. Rights Upon Event of Default

Upon an Event of Default, all liabilities of Guarantor hereunder shall become immediately due and payable without demand or notice and, in addition to any other rights or remedies provided by law or equity, Sunz may:

A. Enforce the obligations of Guarantor under this Guaranty;

B. To the extent not prohibited by and in addition to any other remedy provided by law, setoff against any of the Liabilities any sum owed by Sunz in any capacity to Guarantor whether due or not including, but not limited to, commissions owed by Sunz to Guarantor;

C. Perform any covenant or agreement of Guarantor in default hereunder (but without obligation to do so) and in that regard, pay such money as may be required or as Sunz may reasonably deem expedient. Any costs, expenses or fees, including reasonable attorneys' fees and costs, incurred by Sunz in connection with the foregoing or in the enforcement of any rights hereunder shall be included in the Liabilities guaranteed hereby, and shall be due and payable on demand, together with interest at the highest rate permitted by law or eighteen percent (18%), whichever is greater, such interest to be calculated from the date of such advance to the date of repayment thereof. Any such action by Sunz shall not be deemed to be a waiver or release of Guarantor hereunder and shall be without prejudice to any other right or remedy of Sunz; or

D. Obtain judgment upon stipulation by Guarantor, as set forth in this Guaranty.

Notwithstanding anything to the contrary herein, settlement of any claim by Sunz against Guarantor or under the terms of the Insurance Policy(ies) or Loss Fund Management Agreement, or any renewal of such agreements, whether in any proceeding or not, and whether voluntary or involuntary, shall not reduce the amount due under the terms of this Guaranty, except to the extent of the amount actually paid to Sunz by Guarantor or any other obligated party and legally retained by Sunz in connection with the settlement (unless otherwise provided for herein).

6. <u>MISCELLANEOUS</u>.

   A. <u>Remedies Cumulative</u>.  The rights and remedies of Sunz, as provided herein and in the Loss Fund Management Agreement and related Insurance Policy(ies), and any renewal of such agreements, shall be cumulative and concurrent, may be pursued separately, successively or together, may be exercised as often as occasion therefore shall arise, and shall be in addition to any other rights or remedies conferred upon Sunz at law or in equity.  The failure, at any one or more times, of Sunz to exercise any such right or remedy shall in no event be construed as a waiver or release thereof.  Sunz shall have the right to take any action it deems appropriate without the necessity of resorting to any collateral securing obligations owed to it under this Guaranty, the Loss Fund Management Agreement, any related Insurance Policy(ies) issued to Program Owners, or any renewal of such agreements.

   B. <u>Integration</u>.  This Guaranty, the Loss Fund Management Agreement and the relevant Insurance Policy(ies) issued pursuant to the Loss Fund Management Agreement, including any renewals of such agreements, constitute the sole agreement of the parties with respect to the transaction contemplated hereby and supersede all oral negotiations and prior or contemporaneous writings with respect to the guaranty provided by Guarantor.

   C. <u>Attorneys' Fees and Expenses</u>.  If Sunz retains the services of counsel by reason of an Event of Default hereunder, or on account of any matter involving this Guaranty, all costs of any action at law, suit in equity or arbitration or other proceeding and all reasonable attorneys' fees incurred at all pretrial, trial, appellate, post-judgment and collection levels and such other reasonable expenses so incurred shall forthwith, on demand, become due and payable to the substantially prevailing party and shall be secured hereby.

   D. <u>No Implied Waiver</u>.  Sunz shall not be deemed to have modified or waived any of its rights or remedies hereunder unless such modification or waiver is in writing and signed by Sunz, and then only to the extent specifically set forth therein.  A waiver in one event shall not be construed as continuing or as a waiver of or bar to such right or remedy on a subsequent event.

   E. <u>No Third-Party Beneficiary</u>.  Except as otherwise provided herein, Sunz and Guarantor do not intend the benefits of this Guaranty to inure to any third party and no third party shall have any status, right or entitlement under this Guaranty.

   F. <u>Partial Invalidity</u>.  The invalidity or unenforceability of any one or more provisions of this Guaranty shall not render any other provision invalid or unenforceable.  In lieu of any invalid or unenforceable provision, there shall be added automatically a valid and enforceable provision as similar in terms to such invalid or unenforceable provision as may be possible.

   G. <u>Binding Effect</u>.  The covenants, conditions, waivers, releases and agreements contained in this Guaranty shall bind, and the benefits thereof shall inure to, the parties hereto and their respective heirs, executors, administrators, successors and assigns; provided, however, that this Guaranty cannot be assigned by Guarantor without the prior written consent of Sunz which may be withheld at the discretion of Sunz, and any assignment or attempted assignment by Guarantor without the prior written consent of Sunz shall be void and of no effect with respect to the Sunz.

   H. <u>Modifications</u>.  This Guaranty may not be supplemented, extended, modified or terminated except by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

   I. <u>Jurisdiction and Venue</u>. If any suit, action or proceeding is brought by or against Sunz with respect to this Guaranty, the parties agree that such suit, action or proceeding may only be brought in the

State Court of Manatee County, State of Florida, or in the United States District Court for the Middle District of Florida and each of the parties to this Guaranty accepts for itself the exclusive jurisdiction of the aforesaid courts. The parties waive irrevocably any objection they may now or in the future have to the venue of any such suit, action or proceeding and irrevocably waive any claim that any such suit, action or proceeding brought in such court has been brought in an inconvenient forum. Guarantor irrevocably consents to service of process in any suit, action or proceeding in such court by the mailing of the pleadings by registered or certified mail, postage prepaid, to Guarantor's address as set forth above.

J. <u>Notices</u>. All notices and communications under this Guaranty shall be in writing and shall be given by either (a) hand-delivery, (b) first class certified mail return receipt requested (postage prepaid), or (c) reliable overnight commercial courier (charges prepaid), to the addresses listed in this Guaranty. Notice shall be deemed to have been given and received: (i) if by hand delivery, upon delivery; (ii) if by mail, three (3) calendar days after the date first deposited in the United States mail; and (iii) if by overnight courier, on the date scheduled for delivery. A party may change its address by giving written notice to the other party as specified herein.

K. <u>Governing Law</u>. This Guaranty shall be governed exclusively by and construed solely in accordance with the substantive laws of the State of Florida without reference to conflict of laws principles.

L. <u>Joint and Several Liability</u>. If Guarantor consists of more than one person or entity, the word "Guarantor" shall mean each of them and their liability shall be joint and several. The liability of Guarantor shall also be joint and several with the liability of any other guarantor under any other guaranty. All defined terms should be equally applicable to both the singular and plural of any of the terms herein defined.

M. <u>Continuing Enforcement</u>. If, after receipt of any payment of all or any part of the Liabilities, Sunz is compelled or agrees, for settlement purposes, to surrender such payment to any person or entity for any reason (including, without limitation, a determination that such payment is void or voidable as a preference or a fraudulent conveyance, an impermissible setoff, or a diversion of trust funds), then this Guaranty shall continue in full force and effect or be reinstated, as the case may be, and Guarantor shall be liable for, and shall indemnify, defend and hold harmless Sunz with respect to the full amount so surrendered. The provisions of this Section shall survive the termination of this Guaranty and shall remain effective notwithstanding the payment of the Liabilities or this Guaranty, the release of any security interest, lien or encumbrance securing the Liabilities or any other action which Sunz may have taken in reliance upon its receipt of such payment. Any cancellation, release or other such action shall be deemed to have been conditioned upon any payment of the Liabilities having become final and irrevocable.

N. <u>Waiver of Jury Trial</u>. GUARANTOR AGREES THAT, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ANY SUIT, ACTION OR PROCEEDING, WHETHER CLAIM OR COUNTERCLAIM, BROUGHT BY SUNZ OR GUARANTOR ON OR WITH RESPECT TO THIS GUARANTY OR ANY OF THE AGREEMENTS OR THE DEALINGS OF THE PARTIES WITH RESPECT HERETO OR THERETO, SHALL BE TRIED ONLY BY A COURT AND NOT BY A JURY. GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND INTELLIGENTLY, AND WITH THE ADVICE OF COUNSEL, WAIVES, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION OR PROCEEDING. FURTHER, GUARANTOR WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER, IN ANY SUCH SUIT, ACTION OR PROCEEDING, ANY SPECIAL, EXEMPLARY, PUNITIVE, CONSEQUENTIAL OR OTHER DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES. GUARANTOR ACKNOWLEDGES AND AGREES THAT THIS SECTION IS A SPECIFIC AND MATERIAL

DocuSign Envelope ID: 62B70CD6-51F6-4F61-8508-CB9D41A2A3BC

ASPECT OF THIS GUARANTY AND A SUBSTANTIAL BASIS AND INDUCEMENT FOR SUNZ TO ENTER INTO THE AGREEMENTS AND THIS GUARANTY, OR ANY OF THEM.

7. <u>CONFIRMATION OF ARBITRATION AND CONFIRMATION OF CHOICE OF LAW PURSUANT TO CALIFORNIA INSURANCE CODE SECTION 11658.5</u>.

   A. The Parties have negotiated and agreed that Your Insurance Program is deemed made in the State of Florida and involves interstate commerce.  The choice of arbitration law negotiated pursuant to California Insurance Code section 11658.5 is the laws of the State of Florida.

   B. Any arbitration shall take place in Bradenton, Florida unless the Parties mutually agree in writing to an alternative site.  The choice of arbitration venue negotiated pursuant to California Insurance Code section 11658.5 is Florida.

   C. Program Owner acknowledges Sunz provided it with a "NOTICE OF DISPUTE RESOLUTION TERMS TO BE INCLUDED IN CERTAIN AGREEMENTS PURSUANT TO CALIFORNIA INSURANCE CODE SECTION 11658.5" and the terms of this Agreement reflect the final agreement of Program Owner and Sunz relating to the resolution of disputes under this Agreement.

   D. For purposes of California, no claim coming within the authority of the Insurance Commissioner shall be subject to arbitration.

**Signatures on Following Page**

IN WITNESS WHEREOF, Guarantor(s), intending to be legally bound, has duly executed and delivered this Guaranty Agreement as of Insert Effective Date (the "Effective Date").

**GUARANTOR(S):**

**GUARANTOR NO. 1**

**Sign** _S. a_____

Printed Name: __Sheldon Altschuler__

Title: __President__

Date: Click or tap to enter a date.

**GUARANTOR NO. 2**

**Sign** _____

Printed Name:_____

Title:_____

Date:_____

**GUARANTOR NO. 3**

**Sign** _____

Printed Name:_____

Title:_____

Date:_____

**GUARANTOR NO. 4**

**Sign** _____

Printed Name:_____

Title:_____

Date:_____

**Attachment Clause on Following Page**

## Attachment Clause

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective Policy No. Endorsement No.
Insured Insurance Company

 Countersigned by _____