**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

SUNZ INSURANCE SOLUTIONS, LLC,

      Plaintiff,

v.                          Case No. 8:23-CV-2517-SDM-CPT

DOCKS SUTHERLAND, ET AL.,

      Defendants.

_____

**MOTION OF DEFENDANTS DOCKS SUTHERLAND
AND DAVID HARVEY TO DISMISS AMENDED COMPLAINT**

Defendants Docks Sutherland and David Harvey, by their undersigned counsel, move the Court, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), to dismiss the Amended Complaint as to them, and in support state as follows:

1.     The Amended Complaint for Damages ("Amended Complaint") filed by Plaintiff SUNZ Insurance Solutions, LLC ("SUNZ") names as Defendants, *inter alia*, Docks Sutherland ("Sutherland") and David Harvey ("Harvey"). (ECF No. 60).

2.     In its Amended Complaint, SUNZ asserts the following four causes of action against Sutherland and/or Harvey:

     a.  Count VII – Breach of Fiduciary Duty as to Sutherland (Derivatively on Behalf of WorkCentric);

     b.  Count VIII – Breach of Fiduciary Duty as to Harvey (Derivatively on Behalf of WorkCentric);

c. Count IX – Aiding and Abetting Breach of Fiduciary Duty as to Sutherland (Derivatively on Behalf of WorkCentric); and

d. Count X – Tortious Interference as to Sutherland and Harvey.

3.    SUNZ alleges in its Amended Complaint that it was a creditor of various of the entity defendants ("Entity Defendants") while they were in the zone of insolvency, and that therefore (a) Sutherland as a controller of various of the Entity Defendants and (b) Harvey as president of each of the Entity Defendants, owed SUNZ a fiduciary duty. SUNZ asserts derivatively that Sutherland breached this purported duty by causing unspecified Entity Defendant(s) to transfer funds from the Entity Defendants to themselves. SUNZ further asserts derivatively that Sutherland aided and abetted these purported breaches of duty through unspecified means. Finally, SUNZ asserts that both Sutherland and Harvey tortiously interfered with SUNZ's agreements with the Entity Defendants by dissipating Entity Defendant funds that could have been used to satisfy alleged contractual obligations to SUNZ.

4.    The derivative claims (Counts VII, VIII, and IX) must each be dismissed because (1) SUNZ lacks standing to sue derivatively as a creditor; and (2) SUNZ has failed even to attempt to show that a demand upon the current management of WorkCentric to file litigation against Sutherland and Harvey would be futile.

5.    Counts VII and VIII of the Complaint for breach of fiduciary duty must be dismissed because: (1) the alleged preferential payments do not constitute a breach of fiduciary duty; and (2) SUNZ's allegations of duty and breach are impermissibly vague and conclusory.

6.      Count IX of the Complaint for aiding and abetting breach of fiduciary duty must be dismissed because: (1) the underlying claim for breach of fiduciary duty (which is an element of aiding and abetting) must be dismissed; (2) SUNZ fails to plead knowing participation; and (3) officers cannot aid and abet one another in the commission of a tort.

7.      Count X of the Complaint for tortious interference with contract must be dismissed as a matter of law because officers of a company are not personally liable for causing the company to breach a contract.

8.      SUNZ also asserts various claims against the Entity Defendants. (*See* ECF No. 1 at Counts I–V). However, since SUNZ now exercises control the Entity Defendants, SUNZ's claims against entities it controls constitute collusive litigation over which the Court lacks subject-matter jurisdiction.

WHEREFORE, Sutherland and Harvey respectfully request that this Honorable Court enter an order granting Defendants' Motion to Dismiss. Further, and in support of this Motion, the Defendants refer this Honorable Court to the Memorandum of Law attached hereto and by reference made part hereof.

## MEMORANDUM OF LAW

## I.      INTRODUCTION

Although the procedural history of this case is undeniably circuitous, the issues raised by this Motion as to Defendants Docks Sutherland and David Harvey are straightforward and governed by well-settled law. This dispute arises from an intricate workers' compensation insurance program with large deductibles, loss fund

requirements, multiple corporate entities, and a pledge agreement that SUNZ argues permitted it to take control of the Entity Defendants in October 2023. SUNZ alleges that in the lead-up to its takeover of the Entity Defendants, those entities were insolvent and that therefore Defendant Sutherland owed fiduciary duties to the Entity Defendants' creditors.

However, the Court need not wade too deeply into these complex allegations, as SUNZ's derivative claims against these individual Defendants are plainly barred by Delaware law prohibiting creditor derivative claims against limited liability companies. Indeed, it is well settled by the Supreme Court of Delaware that the Delaware LLC statute "denies derivative standing to LLC creditors," and this finding has been adopted by courts throughout the county. *See CML V, LLC v. Bax*, 28 A.3d 1037, 1046 (Del. 2011). Further, even if SUNZ could somehow state a derivative claim, it has failed to plead demand futility as to the current management of the Entity Defendants (and indeed it cannot do so because it purports to control the Entity Defendants). Therefore, the majority of SUNZ's claims against Sutherland and Harvey (Counts VII, VIII, and IX, all derivative) must be dismissed out of hand.

SUNZ's only direct claim, for tortious interference, is also legally defective and must be dismissed for two reasons. First, Sutherland and Harvey are alleged to be the controller and officer (respectively) of the Entity Defendants, and therefore cannot be held liable for breach of a contract to which they are not an actual party, but are alleged to be effectively a party by virtue of their position in the contracting entities. Further,

SUNZ fails to come forward with allegations that Sutherland or Harvey actually performed acts that interfered with SUNZ's contracts.

Ultimately, SUNZ, as a creditor with contractual remedies, cannot repurpose fiduciary duty and tort doctrines to recast business disappointment as tortious conduct.

Finally, since SUNZ now exercises complete control over the Entity Defendants, its litigation against them in the form of Counts I through V are collusive and do not present a true case or controversy. Therefore, this Court lacks subject-matter jurisdiction over these claims and they must be dismissed.

## II.    BACKGROUND

### A.    Facts as Pleaded by SUNZ

Accepting the allegations of the Amended Complaint as true for purposes of this Motion only, the Amended Complaint alleges that SUNZ acted as the appointed managing general agent ("MGA") with respect to workers' compensation insurance policies issued to Defendants Embraceor, LLC, WorkCentric, LLC, WorkCentric 2, LLC, and WorkCentric 3, LLC (collectively "WorkCentric"). (ECF No. 60 at ¶¶ 34–35). WorkCentric operates as a professional employer organization ("PEO"). (ECF No. 60 at ¶ 37.) As the MGA, SUNZ billed and collected all money due under the insurance policies at issue, including premium, loss fund, and deductible reimbursements. (ECF No. 60 at ¶¶ 40–41.)

The insurance arrangement included a large deductible component, whereby WorkCentric assumed responsibility for the first $500,000 of each workers' compensation claim. (ECF No. 60 at ¶¶ 60–83.) To secure this obligation,

WorkCentric agreed to maintain a "Loss Fund" from which SUNZ would pay claims within the deductible layer. (ECF No. 60 at ¶¶ 63–64.) The Loss Fund was to be derived from a formula involving a multiple of open case reserves and incurred expenses. (ECF No. 60 at ¶ 74.)

In one of many allegations that oversimplify, lump together, or outright ignore the distinctness of the corporate entities at issue in this case, SUNZ incorrectly asserts that "Sutherland purchased WorkCentric from Sheldon Altschuler."[1] (ECF No. 60 at ¶ 84.) SUNZ alleges that, subsequently, "WorkCentric's financial position began to decline and WorkCentric sought accommodations and forbearances from SUNZ." (ECF No. 60 at ¶ 89.) SUNZ's allegations reflect that, beginning in 2023, WorkCentric's Loss Fund deficit began to increase as a result of SUNZ increasing the Loss Fund requirements. (ECF No. 60 at ¶¶ 103, 106, 113, 116, 120–21.)

As WorkCentric's Loss Fund deficit worsened, throughout 2023 WorkCentric and SUNZ renegotiated their financial arrangement through several successive agreements described in the Complaint. These agreements are largely irrelevant for purposes of this Motion, and save for one of them (the Pledge Agreement executed on October 11, 2023 ("Pledge Agreement")), Sutherland was never a party to them in his personal capacity. (ECF No. 60 at Ex. 10.) Indeed, other than the specific Pledge Agreement signed on October 11, 2023 (which is one of several Pledge Agreements

---

[1] Though this Motion does not rely on this fact, for the Court's context, WorkCentric LLC was in fact transferred from Altschuler and merged into WC Merger Sub 1 LLC (a subsidiary of Defendant WC TopCo LLC) by virtue of an August 14, 2021 Agreement and Plan of Merger.

involving the Entity Defendants), Sutherland was not a signatory of any of the agreements at issue in this case.

The Pledge Agreement is not relevant to the legal issues currently before the Court, though it provides context. Therein, SUNZ alleges that Sutherland (along with the other obligors) granted SUNZ a "continuing first priority security interest" in the Pledged Collateral, which included the obligors' interests in WC Container LLC, WC TopCo LLC, Embraceor LLC, WorkCentric, LLC, WorkCentric 2, LLC, and Workcentric 3, LLC ("Obligors"). (ECF No. 60 at Ex. 10, p.29.)

Days later, on October 18, 2023, SUNZ declared a default under the Pledge Agreement.[2] (ECF No. 60 at ¶ 149.) Subsequently, SUNZ alleges that the Entity Defendants paid $200,000 to Harvey and more than $1 million to a separate entity SUNZ contends is controlled by or affiliated with Sutherland and Harvey. (ECF No. 60 at ¶ 154.) In reference to these transfers, Exhibit 11 to the Amended Complaint characterizes the payment to the entity as payment for invoices "for website and software development." (ECF No. 60-11 at p.2.)

B.    SUNZ's Original Complaint

SUNZ's original Complaint asserted a purported direct claim for breach of fiduciary duty against Sutherland, and a direct claim for aiding and abetting a breach

---

[2] SUNZ purports to have subsequently taken control of WorkCentric under the Pledge Agreement, and purports to have named a different entity as WorkCentric's (and the other related entities') manager. (SUNZ Motion to Lift Stay, ECF No. 28 at ¶¶ 22–23.) While SUNZ alleges that a bankruptcy court found this action to be a proper exercise of its rights under the Pledge Agreement on April 1, 2024, Defendants Sutherland and Harvey dispute the scope of the ruling and deny that it is applicable or preclusive in this Court, particularly as to them. (See ECF No. 28 at ¶¶ 23–24.)

of fiduciary duty against Harvey. (*See* ECF No. 1.) On April 28, 2025, Sutherland and Harvey jointly moved to dismiss the Complaint on many of the grounds included in this motion, but also because Delaware law forbids creditors from bringing direct claims against directors of insolvent business entities. *See North American Catholic Educational Programming Foundation, Inc. v. Gheewalla*, 930 A.2d 92, 102 (Del. 2007) ("[I]ndividual *creditors* of an *insolvent* corporation have *no right to assert direct* claims for breach of fiduciary duty against corporate directors.").

### C.    SUNZ's Amended Complaint

SUNZ voluntarily amended its Complaint on April 19, 2025 to plead the following claims. (ECF No. 60.)

#### 1.    Count VII: Breach of Fiduciary Duty (Derivatively Against Sutherland)

SUNZ alleges that Sutherland was the ultimate owner and controlling member of each WorkCentric entity, and that these entities were insolvent as of no later than April 1, 2023. (ECF No. 60 at ¶¶ 218–19). SUNZ claims that by virtue of this control and the entities' insolvency, Sutherland owed fiduciary duties to WorkCentric. (ECF No. 60 at ¶ 219.) SUNZ further alleges that Sutherland breached those duties by causing WorkCentric to make over $1 million in payments to Harvey and to an entity it alleges is affiliated with Sutherland and Harvey. (ECF No. 60 at ¶¶ 220–221.). SUNZ alleges that these payments were supported by invoices generated in October 2023, for software and development services. (ECF No. 60 at ¶¶ 155, 157.) SUNZ alleges that these transfers occurred while WorkCentric was insolvent and in default, and that they

deprived WorkCentric of assets needed to meet its obligations to SUNZ (ECF No. 60 at ¶ 222.) SUNZ alleges that Sutherland's conduct caused harm to WorkCentric (ECF No. 60 at ¶ 223.)

### 2. Count VIII: Breach of Fiduciary Duty (Derivatively Against Harvey)

SUNZ alleges that Harvey served as President of each WorkCentric entity and acted as an agent of the entities' managers. (ECF No. 60 at ¶ 228.) SUNZ alleges that Harvey owed fiduciary duties to WorkCentric once the entities became insolvent. (ECF No. 60 at ¶ 228.) SUNZ further alleges that Harvey facilitated the same set of transfers described in Count VII. (ECF No. 60 at ¶¶ 155, 157, 230.). SUNZ further alleges that these payments were made while Harvey knew WorkCentric was insolvent and in breach of its obligations, and that this conduct caused harm to WorkCentric. (ECF No. 60 at ¶ 231.)

### 3. Count IX: Aiding and Abetting Breach of Fiduciary Duty (Derivatively Against Sutherland)

SUNZ brings this claim against Sutherland as an alternative to its direct fiduciary duty claim, to the extent Sutherland is ultimately found not to owe fiduciary duties to the WorkCentric entities. (ECF No. 60 at ¶ 234.) SUNZ alleges that Harvey, as an officer and manager of the WorkCentric entities, owed fiduciary duties and breached them by engaging in self-dealing and diverting company funds (ECF No. 60 at ¶ 235.). SUNZ further alleges that Sutherland had knowledge of Harvey's fiduciary status and knowingly participated in and substantially assisted Harvey's breach by authorizing or directing the challenged transactions, including transfers of company

funds to Harvey and related parties. (ECF No. 60 at ¶ 236.) This claim is pleaded in the alternative and is contingent on a finding that Sutherland was not himself a fiduciary (ECF No. 60 at ¶ 234.).

4. **Count X: Tortious Interference with Contract (Direct Claim Against Sutherland and Harvey)**

SUNZ alleges that Sutherland and Harvey were aware of WorkCentric's contractual obligations to SUNZ under the Forbearance Agreement and related documents. (ECF No. 60 at ¶¶ 244–45.) SUNZ claims that Sutherland and Harvey intentionally caused WorkCentric to breach those obligations by diverting company funds for their own benefit, thereby rendering WorkCentric unable to perform. (ECF No. 60 at ¶¶ 247–250.) SUNZ alleges in a conclusory fashion that this conduct was "undertaken in bad faith for Harvey and Sutherland's personal benefit, was outside the scope of any agency relationship with the Entity Defendants, and was otherwise without privilege or defense." (ECF No. 60 at ¶ 249.).

## III. ARGUMENT

### A. Delaware Law Governs

As to the claims against Sutherland and Harvey, Delaware law must govern. SUNZ's respective claims for breach of fiduciary duty and aiding and abetting are quintessential claims relating to the "internal affairs" of the Entity Defendants. *See Mukamal v. Bakes*, 378 F. App'x 890, 896 (11th Cir. 2010) ("The fiduciary duties owed to a corporation by its officers and directors concern the internal affairs of a corporation."). "The Florida Business Corporation Act provides that the internal

affairs of a corporation are governed by the laws of the state of incorporation." *Id.* at 897. (citing Fla. Stat. § 607.1505(3)). Indeed, the Act "does not authorize [the State of Florida] to regulate the organization or internal affairs of a foreign corporation authorized to transact business in this state." *Id.* (quoting Fla. Stat. § 607.1505(3)). Additionally, the Restatement (Second) of Conflict of Laws "provides that the internal affairs of corporations are governed by the laws of the state of incorporation." *Id.* (citing Restatement (Second) of Conflicts of Laws §§ 302–9 (1971).

Here, each of the Entity Defendants are Delaware limited liability companies, and therefore any claims arising from their internal affairs are governed by Delaware law.[3]

## B. The Derivative Claims Must Be Dismissed

Counts VII, VIII, and IX of the Amended Complaint must be dismissed because they are each brought derivatively where (1) creditor derivative claims against Delaware limited liability companies are prohibited; and (2) SUNZ has failed to plead demand futility.

### 1. Delaware Law Prohibits Creditor Derivative Claims Against Limited Liability Companies

SUNZ's derivative claims are expressly prohibited by binding precedent from the Supreme Court of Delaware. *See CML V, LLC v. Bax*, 28 A.3d 1037, 1046 (Del.

---

[3] SUNZ alleges that each of the Entity Defendants are Delaware limited liability companies. (ECF No. 60 at ¶¶ 19–24.) Therefore, although the Amended Complaint is inexcusably vague as to which Entity Defendant(s) SUNZ alleges made preferential payment, it is clear that any possible claim must be governed by Delaware law.

2011) ("Section 18-1002 of the LLC Act, by its plain language, limits derivative standing to 'member[s]' or 'assignee[s],' and thereby denies derivative standing to LLC creditors."). Federal courts have regularly dismissed derivative claims against Delaware LLCs on these grounds. See *Shah v. Sheth*, 2019 WL 3943679, at *3 (N.D. Ill. Aug. 21, 2019) ("Creditors of an LLC have no standing to bring a derivative breach of fiduciary duty claim against an LLC even if it is insolvent."); *M-Tek Kiosk, Inc. v. Clayton*, 2016 WL 2997505, at *9 (M.D.N.C. May 23, 2016) ("[C]reditors of an LLC have no standing to bring even a derivative suit."); *800 Cooper Fin., LLC v. Liu*, 2022 WL 855647, at *7 (D.N.J. Mar. 22, 2022) (same).

In *CML*, the Court upheld dismissal of derivative claims brought by creditors against the debtor-LLC's officers. *Id*. at 1040. The Court interpreted the Delaware Limited Liability Company Act ("LLC Act"), which in relevant part provides that "[i]n a derivative action, the plaintiff must be a member or assignee of a limited liability company interest at the time of bringing the action." *Id*. at 1041 (quoting 6 *Del. C.* § 18-1002, defining a "Proper Plaintiff"). The Court held that "[t]his provision is unambiguous on its face; therefore, its plain language controls." *Id*. Although the creditor argued that this provision of the LLC Act should be read similarly to its counterpart in the Delaware General Corporate Law (which courts have held to permit creditor derivative claims against *corporations*), the Court disagreed. Instead, the Court ruled that, unlike the Delaware General Corporate Law, the LLC Act expressly "created an independent restriction on *all* derivative actions on behalf of LLCs" that,

"in the LLC context, the 'Proper Plaintiff' '*must* be a member or an assignee of a limited liability company interest.'" *Id*. at 1042 (quoting 6 *Del. C.* § 18-1002).

The Supreme Court of Delaware further rejected the creditor's claims that this limitation upon derivative standing is inequitable. Specifically, the creditor argued that because the debtor LLC was "insolvent, the creditors, as ultimate risk bearers, are the only interest holders with incentive to enforce fiduciary duties through legal action, and that without the intervention of equity a failure of justice will result." *Id*. at 1046. However, the Court disagreed, holding that the creditor "could have negotiated its remedies by contract. It did not. Instead, it chose to lend on what later turned out to be unfavorable terms." *Id*.

Because under Delaware law creditors lack standing to sue a limited liability company derivatively, Counts VII, VIII, and IX (all pleaded derivatively) must be dismissed.

## 2. SUNZ Fails to Plead Demand Futility

SUNZ fails to plead that it would be futile to demand that the current management of WorkCentric file litigation, and therefore its derivative claims must be dismissed. Before bringing a derivative suit, a plaintiff (who must be an eligible "proper plaintiff") must make a demand upon the company's "directors or comparable authority" to undertake the desired action. *See* Fed. R. Civ. P. 23.1. "The pre-suit demand may be excused by a proper pleading of demand futility." *McCabe v. Foley*, 424 F. Supp. 2d 1315, 1319 (M.D. Fla. 2006). A plaintiff must plead demand futility with particularity, and "the adequacy of the pleading is determined by the law of the state

of incorporation, here Delaware." *See id*. Importantly, the inquiry centers on whether demand upon the company would have been futile as of the date the complaint is filed." *Id*. at 1320 (assessing demand futility as of the date of the filing of the complaint). *See also In re Trade Desk, Inc. Derivative Litig.,* 2025 WL 503015, at *9 (Del. Ch. Feb. 14, 2025) (holding that the demand futility analysis "assesses the ability of the Board in place as of the date of the filing of a complaint.").

Here, SUNZ does not allege that a demand upon the current management of WorkCentric would be futile. Instead, SUNZ alleges that a demand upon Harvey and Sutherland would be futile. However, this is insufficient because SUNZ also pleads that an entity called WorkCentric 1, LLC took over management of the Entity Defendants prior to the filing of the Amended Complaint. (ECF No. 60 at ¶ 167.) Because SUNZ fails to plead (with particularity or otherwise) that it either demanded that WorkCentric 1, LLC file litigation or that such demand is excused, the derivative claims must each be dismissed.

### C. SUNZ's Breach of Fiduciary Duty Claims Must Be Dismissed (Counts VII and VIII)

SUNZ alleges that Sutherland and Harvey breached their fiduciary duties by causing preferential payments to issue; however, even taking the allegation as true for purposes of this Motion, this does not constitute a breach of fiduciary duty. *See Mukamal*, 378 Fed. App'x. at 899 (dismissing breach of fiduciary claim under Delaware law where plaintiff alleged preferential payments). In *Mukamal*, the Eleventh Circuit upheld dismissal of a similar claim for preferential payment. However, the

court held that "injury only to the Debtors' creditors," rather than to the company or its members, is insufficient. *Id.* at 900. Instead, the plaintiff "must allege facts that indicate either [the company] or its minority shareholders, not [the company]'s creditors, were injured by the action of the Individual Defendants." *Id.* Similarly, here, SUNZ has failed to allege that WorkCentric or its members were damaged. Instead, the damages SUNZ pleads are damages *to SUNZ*: that the transfers "caused WorkCentric to be unable to pay money due to SUNZ." (ECF No. 60 at ¶ 222). Because this is precisely the kind of claim that was dismissed in *Mukamal*, the Court should similarly dismiss the fiduciary duty claims against Sutherland and Harvey.

### D. SUNZ's Claim for Aiding and Abetting Breach of Fiduciary Duty Must Be Dismissed (Count IX)

#### 1. The Court Must Dismiss the Predicate Count VIII, and Therefore Must Also Dismiss the Dependent Count IX

If the Court dismisses the underlying allegation of a breach of fiduciary duty, it must also dismiss the aiding and abetting claim arising from these same allegations. Under Delaware law, in order to state a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must allege: "(1) the existence of a fiduciary relationship, (2) that the fiduciary breached its duty, (3) that a defendant, who is not a fiduciary, knowingly participated in the breach, and (4) that damages to the plaintiff resulted from the concerted action of the fiduciary and the non-fiduciary." *Mukamal*, 378 Fed. App'x. at 902 (citing *Gotham Partners L.P. v. Hallwood Realty Partners, et al.*, 817 A.2d 160, 172 (Del. 2002)). Therefore, since there is no underlying breach of fiduciary duty, a count for aiding and abetting cannot be sustained. *Id.* (upholding dismissal of aiding

and abetting count "[b]ecause the underlying breach of fiduciary duty claims fail[ed]," and therefore "the claims that Wellspring and the Individual Defendants aided and abetted those breaches must follow suit.")

### 2. SUNZ Fails to Plead Aiding and Abetting

The "knowing participation" element of aiding and abetting requires a plaintiff to plead "facts making it reasonably conceivable that the defendant knowingly supported a breach of duty *and* that his resulting assistance to the primary actor constituted substantial assistance in causing the breach." *Blatt v. Goldner*, 2024 WL 4228433, at *9 (S.D. Fla. Aug. 21, 2024), *report and recommendation adopted*, 2024 WL 4225481 (S.D. Fla. Sept. 18, 2024) (quoting *In re Oracle Corp. Derivative Litig.*, 2020 WL 3410745, at *10 (Del. Ch. June 22, 2020)). Here, SUNZ fails to plead that Sutherland knowingly participated in *Harvey's* breach of duty or that Sutherland's assistance was substantial. Instead, SUNZ pleads that it was Sutherland himself who instructed and caused WorkCentric's accountants to initiate the alleged transaction. (ECF No. 60 at ¶ 239.) In other words, SUNZ has pleaded that Sutherland caused the alleged transactions on his own, and therefore did not "aid" Harvey in doing anything at all.

### 3. Officers and Agents Cannot Aid and Abet Each Other in the Commission of a Tort

SUNZ has pleaded itself out of Court by pleading that Sutherland acted in his capacity as a controller of the WorkCentric entities in purportedly aiding and abetting a breach of fiduciary duty to the WorkCentric entities. "Generally, a corporation cannot be deemed to have conspired with its. . . officers or agents." *RGIS Int'l*

*Transition Holdco, LLC v. Retail Servs. Wis Corp.*, 2024 WL 568515, at *5 (Del. Super. Ct. Feb. 13, 2024). Further, "officers and agents cannot aid and abet their principal or each other in the commission of a tort." *Id.* (quoting *Largo Legacy Grp., LLC v. Charles*, 2021 WL 2692426, at *18 (Del. Ch. June 30, 2021)). In contravention of this limitation to aiding and abetting claims, SUNZ's allegations of aiding and abetting arise exclusively from Sutherland's acts in instructing the WorkCentric entities to initiate a payment. As discussed above, SUNZ's only allegation here is that Sutherland instructed the WorkCentric entities to take an action. (*See* ECF No. 60 at ¶ 237.) Yet this is precisely the type of allegation that was dismissed in *RGIS Int'l*. 2024 WL 568515 at *6 (dismissing aiding and abetting count where complaint describes defendants "acting *within* their capacities as CEO and CFO of the Selling Entity Defendants while purportedly perpetrating a fraud against RGIS.").

### E. SUNZ's Claim for Tortious Interference with Contract Must Be Dismissed (Count X)

The elements of tortious interference of contract are: "(1) the existence of a business relationship under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damages resulting from the breach of the relationship." *Weisman v. S. Wine & Spirits of Am., Inc.*, 297 So. 3d 646, 650 (Fla. Dist.

Ct. App. 2020) (citing *Bortell v. White Mountains Ins. Grp., Ltd*., 2 So. 3d 1041, 1048 (Fla. 4th DCA 2009).[4]

### 1. Sutherland and Harvey are Not Strangers to the Underlying Agreements

SUNZ signed the Forbearance Agreement and Pledge Agreement with Sutherland and Harvey as signatories, and are now deploying a tortious interference claim against them personally in an attempt to enforce better rights than they bargained for. However, because a tortious interference claim cannot be stated against them as affiliates of the contracting party, this count must be dismissed.

"Generally, a tortious interreference claim 'exists only against persons who are not parties to the contractual relationship.'" *Cox v. CSX Intermodal, Inc.,* 732 So. 2d 1092, 1099 (Fla. Dist. Ct. App. 1999) (quoting *West v. Troelstrup*, 367 So.2d 253, 255 (Fla. 1st DCA 1979). Under this doctrine, "an employee or representative of a contracting party 'must be considered as a party to the [contractual] relationship.'" *Id*. This doctrine also extends to individuals with an interest in the entity. *Bridge Fin., Inc. v. J. Fischer & Assocs*., Inc., 310 So. 3d 45, 50 (Fla. Dist. Ct. App. 2020). Such a person is "not liable for tortious interference unless he acted outside the scope of his employment or against the best interests of his corporation." *SIG, Inc. v. AT & T Digital Life, Inc.*, 971 F. Supp. 2d 1178, 1199 (S.D. Fla. 2013)

---

[4] Defendants take no position at this time whether the tortious interference claim is governed by Florida or Delaware law. Given there appears to be no material differences between the two for purposes of this motion, Defendants defer to Florida law.

Here, there can be no contention that Sutherland or Harvey acted outside the scope of their employment or against the best interests of the Entity Defendants. Indeed, there is no allegation that Sutherland and/or Harvey were unauthorized in directing the alleged transactions, and there is no allegation that such transfers were against the best interests of the Entity Defendants (particularly given that SUNZ pleads that Sutherland himself was the ultimate controller of the Entity Defendants). In reality, SUNZ is alleging that *SUNZ* was harmed, and articulates no harm to the Entity Defendants. *See SIG, Inc.*, 971 F.Supp.2d at 1199 (dismissing complaint where "Plaintiffs set forth no allegations averring that . . . Defendants exceeded their authority as corporate officers or that [the alleged tortious acts] harmed the interests of [the company]."). Therefore, the tortious interference claim must be dismissed.

## 2. SUNZ Fails to Establish an Underlying Interference

SUNZ's tortious interference claim fails to establish the third element (that the contractual relationship was interfered with) because SUNZ fails to plead that the contracts were actually interfered-with. For this count, SUNZ attempts to allege the breach of a Forbearance Agreement and a Pledge Agreement between it and the Entity Defendants. Specifically, SUNZ identifies an obligation not to "transfer . . . any of the Collateral to any third party. . ." (ECF No. 60-10, Forbearance Agreement at ¶ 3) and an obligation not to "sell, convey, assign, transfer or otherwise dispose of, or grant any option, right or warrant with respect to, any of the Pledged Collateral," including all "profits and other property" of each Pledgor. (ECF No. 60-10 Pledge Agreement at ¶¶ 1, 7.) SUNZ alleges that the WorkCentric entities breached these agreements by

19

transferring funds out of WorkCentric to Harvey and to an entity allegedly controlled by Harvey and/or Sutherland. (ECF No. 60 at ¶ 247.)

However, these allegations fail to establish a breach of contract because WorkCentric was not under a contractual obligation, either under the Forbearance Agreement or the Pledge Agreement, to refrain from the alleged transactions.

First, the Forbearance Agreement provision SUNZ relies upon puts no obligation at all upon WorkCentric, and therefore certainly cannot impose any duty not to engage in the alleged transactions. Paragraph 3 of the Forbearance Agreement states that SUNZ will forbear from exercising certain remedies until the earliest of several events, where one of those events is the transfer of the Collateral. (ECF No. 60-10, p.9, ¶ 3(f).) Therefore, this paragraph simply allows SUNZ to accrue certain rights upon the occurrence of a transfer, and does not mean that such a transfer is a breach of the Forbearance Agreement.

Second and similarly, the alleged transfers were not a breach of the Pledge Agreement. SUNZ relies on Paragraph 7 of that agreement, which provides that each "Pledgor" shall not sell or dispose of "any option, right or warrant with respect to, any of the Pledged Collateral pledged by such Pledgor." (ECF No. 60-10 at p.22.) However, there is no allegation that Sutherland or Harvey sold or disposed of any Pledged Collateral: they did not sell any interests in the Pledgors (*i.e.* the Entity

Defendants), and they did not sell any distributions owed to the Entity Defendants.[5]

Therefore, there has been no breach of the Pledge Agreement caused by Sutherland or

Harvey.

### F. The Court Lacks Subject-Matter Jurisdiction Over SUNZ's Collusive Claims Against the Entity Defendants

There can be no adversity between SUNZ and the Entity Defendants (over

which it exercises control), and therefore there is no justiciable case or controversy as

to Counts I through V. (SUNZ Motion to Lift Stay, ECF No. 28 at ¶¶ 22–24; ECF No.

60 at ¶ 167.) "A motion to dismiss based on a lack of subject matter jurisdiction under

Rule 12(h)(3). . . may be raised by any party at any time." *Altadis USA ex rel. Gulf Life*

*Ins. Co. v. NPR, Inc.*, 2004 WL 444539, at *2 (M.D. Fla. Feb. 5, 2004). Where there is

"no adversity of legal interests, among plaintiffs and defendants, as required by Article

III of the Constitution," a court lacks subject-matter jurisdiction and must dismiss the

litigation. *Winthrop Intel. LLC v. Harvard Cider Co., LLC*, 2021 WL 288764, at *1 (D.

Colo. Jan. 28, 2021). *See also Johnson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 719

F.3d 601, 603, 605 (7th Cir.2013) (noting a lack of federal district court subject matter

jurisdiction due to lack of a case or controversy, when the plaintiff and the defendant

agreed on all of the major legal issues).

---

[5] To the extent SUNZ later argues that the definition of Pledged Collateral under Paragraph 1(b) of the Pledge Agreement (combined with Paragraph 7 therein) stretches to include a prohibition on the Pledgors from utilizing their assets to pay vendor invoices and the like, this would not be a reasonable reading of the Pledge Agreement.

Here, SUNZ has alleged that it exercises control over the Entity Defendants. (SUNZ Motion to Lift Stay, ECF No. 28 at ¶¶ 22–24; ECF No. 60 at ¶ 167.) Therefore, there can be no adversity between SUNZ and the Entity Defendants, and therefore SUNZ's litigation against the Entity Defendants must be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, this Honorable Court should enter an order dismissing Counts VII, VIII, IX, and X of SUNZ's Amended Complaint with prejudice pursuant to Rule 12(b)(6), and dismissing Counts I, II, III, IV, and V of SUNZ's Amended Complaint with prejudice pursuant to Rule 12(b)(1).

<u>Certification of Compliance with Local Rule 3.01(g)</u>

Pursuant to Local Rule 3.01(g), undersigned counsel for Defendants Docks Sutherland and David Harvey hereby certifies that he conferred with counsel for Plaintiff by emails on June 8 and 9, 2025, and by telephone conference on June 9, 2025. The parties participated in good faith, but were unable to reach an agreement to resolve this Motion to Dismiss.

Dated: June 9, 2025                     Respectfully Submitted,

                                        /s/ *Scott Michael Hare*
                                        **Thomas J. Francella, Jr., Esquire**
                                        Florida Bar No. 37479
                                        **Scott M. Hare, Esquire**
                                        (Admitted *Pro Hac Vice*)
                                        **Matthew R. Lasky, Esquire**
                                        (Admitted *Pro Hac Vice*)

                                        RAINES FELDMAN LITTRELL LLP
                                        433 Plaza Real, Suite 275
                                        Boca Raton, FL 33432

T: (302) 772-5805

TFrancella@raineslaw.com
SHare@raineslaw.com
MLasky@raineslaw.com

*Attorneys for Defendants Docks Sutherland and David Harvey*