UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SUNZ INSURANCE SOLUTIONS, LLC,

    Plaintiff,

                                     Case No. 8:23-cv-2517-SDM-CPT

v.

DOCKS SUTHERLAND, et al.

    Defendants.

_____/

## PLAINTIFF'S RESPONSE TO DAVID HARVEY AND DOCKS SUTHERLAND'S MOTION TO DISMISS (DOC. 68)

Knowing Sunz Insurance Solutions, LLC ("SUNZ") would begin collecting in a matter of days on the Entity Defendants' undisputed debt in excess of $25 million – a debt that could never be paid – David Harvey and Docks Sutherland caused WorkCentric to transfer $1.2 million to themselves and to an obscure LLC they owned and controlled. When pressed by WorkCentric's own accountants, Harvey and Sutherland could supply only the thinnest of pretenses for this transfer. In now moving to dismiss the claims against them (Doc. 86) (the "Motion"), however, Sutherland and Harvey insist "there can be no contention" this conduct was "outside the scope of their employment or against the best interests of the Entity Defendants." (*Id.* at 19.)

Not so. This and the other conduct alleged in the Amended Complaint (Doc. 60) ("Complaint") permit only one reasonable inference: Harvey and Sutherland funneled WorkCentric's money to themselves and their companies in a desperate attempt to abscond with WorkCentric's assets before SUNZ came knocking.

This self-interested conduct was outside Sutherland and Harvey's authority, caused the Entity Defendants to breach their contracts with SUNZ, and injured SUNZ and the Entity Defendants (by, at the very least, the $1.2 million gratuitously dispensed). The Complaint plausibly alleges Sutherland and Harvey breached their fiduciary duties to the Entity Defendants and tortiously interfered with the contracts between the Entity Defendants and SUNZ. Thus, the Court should deny the Motion.

## BACKGROUND

WorkCentric, LLC; WorkCentric 2, LLC; WorkCentric 3, LLC; and Embraceor, LLC (collectively, "WorkCentric") operated as professional employment organizations and staffing companies that offered workers' compensation insurance coverage to client-companies, among other services. (Doc. 60 ¶ 42-44.) To that end, WorkCentric executed several contracts with SUNZ – the managing general agent of workers' compensation insurers – as part of a large-deductible workers' compensation insurance program, (*Id.* ¶¶ 43-53.) These contracts included a Loss Fund Management Agreement ("LFMA") under which WorkCentric agreed to pay money to fund its obligation to pay the first $500,000 of every claim filed by an injured worker under the program (*Id.* ¶ 50), and multiple security agreements under which WorkCentric pledged its assets to SUNZ to further secure the large-deductible obligation (*Id.* ¶ 51).

In August 2021, Sutherland purchased an indirect interest in WorkCentric through WC TopCo, LLC, and WC Container LLC (collectively, with WorkCentric, the "Entity Defendants"). (*Id.* ¶ 84.) At that time, Harvey became more involved in the management of WorkCentric, at least as the manager of WC TopCo –

2

WorkCentric's manager. (*Id.* ¶ 87.) With Sutherland and Harvey at the helm, WorkCentric's financial position declined and it sought accommodations while amassing defaults under the agreements underlying the insurance program, most notably the LFMA. (*Id.* ¶¶ 89-121.) These defaults were caused or exacerbated by Sutherland sending WorkCentric's money to other entities that were unaffiliated with WorkCentric but owned by Sutherland. (*Id.* ¶¶ 99, 248.)

Eventually, after SUNZ served a notice of default, WorkCentric and WC TopCo (collectively, the "Obligors") executed a Forbearance Agreement admitting they owed SUNZ "not less than $25,800,582.90," which was "due and owing to Sunz and shall arise without offset, defense, or counterclaim" if SUNZ's forbearance terminated. (Doc. 60-10 at 8.) Sutherland discussed the Forbearance with SUNZ, and Harvey ultimately signed on behalf of each entity. (Doc. 60 ¶¶ 244-45.)

At the same time, the Entity Defendants executed a Pledge Agreement pledging all ownership interests in themselves as security for the admitted debt to SUNZ. (*Id.* at 19.) The Entity Defendants pledged their ownership interests as well as "all Proceeds" of such interests and "all distributions … income, profits, and other property, interests or proceeds from time to time receivable, received or otherwise distributed or owing to the Pledgors in respect of, or in exchange for, any or all of the" ownership interests. (*Id.*). Sutherland signed this agreement as a Pledgor but only with respect to the pledge of interests. (*Id.*) Again, Harvey signed on behalf of each entity. (*Id.* at 26-27.)

The Obligors defaulted under the Forbearance and Pledge Agreements with multiple prompt – if not immediate – failures to comply with the terms of each

3

contract, including by ignoring required loss-fund payments. (Doc. 60 ¶ 146.) On October 18, 2023, SUNZ served a notice of default under the Forbearance Agreement seeking cure not later than October 30, 2023. (*Id.* ¶ 150.) After receiving the notice of default, Sutherland instructed WorkCentric's accountants to pay $200,000.00 to Harvey and $1 million to Two Baboons, LLC, an entity controlled by or affiliated with Sutherland and Harvey (collectively, the "Transfers"). (*Id.* ¶¶ 154-55.)

There was no initial explanation for the Transfers, which WorkCentric's own accountants found suspicious because they had no idea what services Two Baboons provided. (Doc. 60-11.) Despite the accountants' objections, Harvey and Sutherland persisted, and Harvey eventually asserted without support that the transfer to Two Baboons was for unspecified "website services" extending back to 2021. (*Id.*) Thus, Two Baboons and Harvey were paid $1.2 million, leaving "nothing" to "be paid to SUNZ." (*Id.*). As a result, WorkCentric did not cure, breaching the Forbearance Agreement and Pledge Agreement. (Doc. 60 ¶¶ 157-60.)

After WorkCentric's breach of the Forbearance Agreement, SUNZ attempt to collect its collateral in accordance with the Security Agreements to satisfy the admitted debt in excess of $25 million. (Doc. 60 ¶ 158.) However, the Defendants frustrated these efforts by prohibiting access to WorkCentric records, which greatly impaired SUNZ's ability to maintain WorkCentric's going concern value. (*Id.* ¶¶ 158-59.)

In the Complaint, SUNZ sues Sutherland and Harvey for Breach of fiduciary duty (Counts VII and VIII) and tortious interference with a contractual relationship (Count X). Additionally, "[t]o the extent Sutherland did not owe a fiduciary duty

directly to the entity defendants," SUNZ sues Sutherland for aiding and abetting Harvey's breach of fiduciary duty. (Count IX).

Sutherland and Harvey move (Doc. 68) to dismiss every claim. Because each count against Sutherland and Harvey states a claim, and because the claims against the Entity Defendants are justiciable, the Court should deny the Motion.

ARGUMENT

## I. The Fiduciary Duty Claims Should Not be Dismissed.

### A. SUNZ Alleges Its Derivative Standing.

SUNZ sufficiently alleges its derivative standing to sue Sutherland and Harvey. By virtue of the breach of the Pledge Agreement, SUNZ is able to exercise all rights of the Entity Defendants. (Doc. 60-10, ¶ 8(a)) (permitting SUNZ, upon any Default, to "exercise all rights of the Pledgors [*i.e.*, the Entity Defendants] as members of the Borrowers [*i.e.*, all Entity Defendants except WC Container LLC] and/or become a successor member to the Borrowers"); (Doc. 60-14, p.86:1-4 ("a breach of the pledge agreement, which gave certain rights to Sunz, and among those rights is the right, in 8(a), to exercise all rights of the pledgors as members of the borrowers …"). Notably, the breaches of the October 11, 2023 Forbearance Agreement and Pledge Agreement were immediate, as they contained representations by the Entity Defendants that were untrue. (Doc. 60-14, p.83:17-84:1). Even if SUNZ did not know it immediately, the Entity Defendants breaches were immediate and un-curable as of the execution on October 11, 2023. (*Id.*). Accordingly, as of October 11, 2023, before several of the wrongful actions by Sutherland and Harvey, including, but not limited to, the self-

5

serving transfers on October 27, 2023, SUNZ had "all rights of the pledgors as members of the borrowers."

Thus, Defendants' reliance on *CML* is misplaced because, *CML* shows SUNZ has standing here. *CML V, LLC v. Bax*, 6 A.3d 238, 241 (Del. Ch. 2010), *aff'd*, 28 A.3d 1037 (Del. 2011), *as corrected* (Sept. 6, 2011) (holding plaintiff in a derivative action "must be a member or an assignee of a limited liability company interest at the time of bringing the action and: (1) At the time of the transaction of which the plaintiff complains; or (2) The plaintiff's status as a member or an assignee of a limited liability company interest had devolved upon the plaintiff by operation of law or pursuant to the terms of a limited liability company agreement from a person who was a member or an assignee of a limited liability company interest at the time of the transaction.") (citing 6 *Del. C.* § 18-1002). As set forth above, by virtue of the Entity Defendants immediate breach of the Forbearance Agreement and Pledge Agreement, the rights necessary to sue in a derivative capacity "had devolved upon the plaintiff by operation of law or pursuant to [a contract from] a member" before the wrongful acts took place.

Similarly, the Motion misses the mark in arguing the Complaint fails to allege demand is futile because the Entity Defendants might now pursue the fiduciary duty claims. (Doc. 68 at 13-14.) The Complaint alleges the futility of seeking Sutherland and Harvey's consent to sue themselves before first asserting the claims for breach of fiduciary duty. (Doc. 60 ¶ 33.) The Motion offers no support for its implicit suggestion that a complaint must allege new demand or futility at every amendment. Indeed, *In re Trade Desk, Inc. Derivative Litig.*, 2025 WL 503015, at *30 (Del. Ch. Feb. 14, 2025)

confirms futility is assessed "as of the filing of the <u>original</u> complaint." *Id.* (emphasis added). Defendants' attacks on standing fail to justify dismissal as a matter of law.

### B. SUNZ States a Claim for Breach of Fiduciary Duty.

Sutherland and Harvey further insist upon dismissal of the breach of fiduciary duty claims because "causing preferential payments to issue … does not constitute a breach of fiduciary duty." (Doc. 68 at 14.) Despite their attempts to re-characterize the alleged conduct, the Complaint plainly states a claim for breach of fiduciary duty.

The alleged transfer of $1.2 million to themselves, either directly or indirectly, is not a mere "preferential payment" as the Motion suggests. (Doc. 68 at 14-15.) "A manager is not permitted to use their position of trust and confidence to further their private interests. Nor can fiduciaries intentionally act with a purpose other than that of advancing the best interests of the corporation." *Largo Legacy Grp., LLC v. Charles*, , 2021 WL 2692426, at *13 (Del. Ch. June 30, 2021) (internal quotations omitted). Sutherland and Harvey leveraged their authority to further their private interests by causing WorkCentric to transfer money to themselves or to entities they owned. In addition to deprivation of $1.2 million, the transfers left WorkCentric wholly unable to attempt a cure or extend the forbearance agreement, further damaging the Entity Defendants. In sum, both breached their fiduciary duties to the Entity Defendants.

### C. SUNZ States an Aiding and Abetting Breach of Fiduciary Duty Claim.

Sutherland and Harvey also improperly insist Count IX, alleging Sutherland aided and abetted Harvey's breach of fiduciary duty, must be dismissed because SUNZ fails to allege an underlying breach (Doc. 68 at 15), because Sutherland was apparently

81990501;4

'too involved' in the breach to constitute aiding and abetting (*Id.* at 16), and because Sutherland and Harvey "cannot aid and abet each other" (*Id.* at 16-17).

As discussed above, the Complaint states a claim for breach of fiduciary duty by Harvey and therefore alleges a sufficient predicate breach in Count IX. To this end, SUNZ is entitled to allege Sutherland aided and abetted Harvey's breach of fiduciary duty "in the alternative, in the event that the Court should determine" that Sutherland himself owed no fiduciary duty to WorkCentric. *Largo Legacy Grp., LLC v. Charles*, 2021 WL 2692426, at *18 (Del. Ch. June 30, 2021).

The Complaint also alleges Sutherland's knowing and substantial participation in any breach of fiduciary duty by Harvey. Indeed, it alleges Sutherland himself was the impetus for the Transactions, even if Harvey ultimately contrived the explanation for the activity and caused them to occur. (Doc. 60 ¶¶ 154-56; Doc. 60-11.) Harvey breached his fiduciary duty to WorkCentric by authorizing the Transactions; Sutherland aided and abetted that breach by proposing them in the first place.[1]

Finally, the assertion that Sutherland cannot aid and abet Harvey is belied by the very cases cited in the Motion. Although officers and agents generally "cannot aid and abet … each other[,] …. [t]here is an exception to this rule where an agent steps out of his role as an officer or agent and acts pursuant to personal motives." *Largo*

---

[1] Here too, Sutherland and Harvey's arguments fail in the face of the right to assert aiding and abetting as an alternative claim. *See Largo Legacy*, 2021 WL 2692426, at *18 (permitting aiding and abetting breach of fiduciary duty claim against the principle of a company's manager, in the event the principle owed no direct duty). Sutherland and Harvey were both substantially involved in the Transactions. (Doc. 60 ¶ 239.) If Sutherland himself owed no fiduciary duty to WorkCentric, he substantially assisted Harvey's breach of his own fiduciary duty.

81990501;4

*Legacy*, 2021 WL 2692426, at *18 (citing *Amaysing Techs. Corp. v. Cyberair Communications, Inc.*, 2005 WL 578972, at *7 (Del. Ch. Mar. 3, 2005)).

As in *Largo Legacy*, Sutherland and Harvey forced WorkCentric to "g[i]ve valuable Company property to an entity [Sutherland] controlled for no consideration to the detriment of the Company and Plaintiff." *Id.* Thus, the Complaint states a claim against Sutherland for aiding and abetting a breach of fiduciary duty. *Id.*

## II.     Count X States a Claim for Tortious Interference.

In arguing for dismissal of the tortious interference claim (Count X), Sutherland and Harvey rest exclusively on affirmative defenses and factual disputes inappropriate on a motion to dismiss. Thus, the Court should deny the request to dismiss Count X.

To state a claim for tortious interference, a complaint must allege (1) the existence of a contractual or business relationship conferring legal rights on the plaintiff, (2) each defendant's knowledge of the relationship, (3) each defendants' intentional and unjustified interference with the relationship causing a breach, and (4) damages resulting from the breach of the relationship. *KMS Rest. Corp. v. Wendy's Intern., Inc.*, 361 F.3d 1321, 1325 (11th Cir. 2004).[2]

---

[2] Harvey and Sutherland "take no position at this time whether the tortious interference claim is governed by Florida or Delaware law" because the two are materially the same at this juncture. (Doc. 68 at 18 n.4.) SUNZ maintains Florida law governs the tortious interference claims because Sutherland and Harvey caused WorkCentric to breach agreements governed by Florida law and injured Sunz in Florida. *See Open Sea Distribution Corp. v. Artemis Distribution, LLC*, 692 F. Supp. 3d 1151, 1175 n.8 (M.D. Fla. 2023) ("In determining the choice of law for a tort, the place where the injury occurred ordinarily is 'the decisive consideration.'") (quoting *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980)).

81990501;4

The Complaint satisfies this standard: (1) the Entity Defendants executed several agreements with SUNZ, including the Forbearance Agreement in which they agreed they owed SUNZ not less than $25,800,582.90 (Doc. 60 ¶¶ 242-43; Doc. 60-10 at 8); (2) Sutherland and Harvey knew of these relationships (Doc. 60 ¶¶ 244-45); (3) Sutherland and Harvey intentionally and unjustifiably interfered with these relationships by, among other things, contriving a basis to funnel WorkCentric's money to themselves and entities they owned while knowing such conduct would leave no money to pay SUNZ (*Id.* ¶¶ 246-49); and (4) this interference injured SUNZ, at least to the extent of the money funneled away from WorkCentric (*Id.* ¶ 250).

In the face of these allegations, Sutherland and Harvey assert only two challenges to the tortious interference claims. (Doc. 68 at 18-19.) Both fail.

## A.    Sutherland and Harvey's Conduct was Not Privileged

First, Sutherland and Harvey insist upon dismissal of the tortious interference claim because they "are not strangers" to the contractual relationship between WorkCentric and SUNZ. (Doc. 68 at 18-19.) This argument is improper on a motion to dismiss, especially in light of the substantial allegations that Harvey and Sutherland's interference enriched themselves at WorkCentric's expense.

In arguing they cannot be liable for tortious interference, Sutherland and Harvey assert a qualified "privilege to interfere." *See Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1099 (Fla. 1st DCA 1999). "Justification or privilege to interfere with a contract is a <u>defense</u> to a tortious interference action." *Abele v. Sawyer*, 750 So. 2d 70, 75 (Fla. 4th DCA 1999) (emphasis added). Such an affirmative defense is an improper basis to

10

dismiss a claim unless the privilege is "apparent on the face of the complaint." *Hudson Drydocks Inc. v. Wyatt Yachts Inc.*, 760 F.2d 1144, 1146 n.3 (11th Cir. 1985); *see Abele* 750 So. 2d at 75 (applying analogous pleading standard and reversing dismissal of tortious interference claim because "the complaint does not allege facts showing that [the defendant's interference] was privileged …").

Moreover, the privilege asserted by Sutherland and Harvey "is not absolute" and is unavailable if they "act[ed] solely with ulterior purposes and without an honest belief that [their] actions would benefit" the corporate party to the contract. *Cox*, 732 So. 2d at 1099; *see also SIG, Inc. v. AT & T Digital Life, Inc.*, 971 F. Supp. 2d 1178, 1199 (S.D. Fla. 2013) (agent's qualified privilege is unavailable if the interference exceeded "the scope of his employment or [was] against the best interests of his corporation"). For example, in *O.E. Smith's Sons, Inc. v. George*, 545 So. 2d 298, at 298-99 (Fla. 1st DCA 1989), a company ceased doing business with the plaintiff after a personal dispute between the plaintiff and a vice-president of the company ("George"). *Id.* at 298. As a result, the plaintiff sued George for tortious interference. *Id.* at 299. Reversing summary judgment for George based on the qualified privilege asserted here, *O.E. Smith's Sons* notes: "[I]t is for the trier of fact to determine whether [the cessation of business] was for the furtherance of the corporation's interests or for George's personal interests." *Id.* at 300.

In light of this exception, Sutherland and Harvey's claim of privilege must be rejected at this juncture if there is any question of fact whether the two acted in their own self-interest and not in WorkCentric's interest. *See Paragon Ins. Holdings, LLC v.*

*Phillips*, 2025 WL 1370178, at *3 (M.D. Fla. May 12, 2025) (citing *Alexis v. Ventura*, 66 So. 3d 986, 988 (Fla. 3d DCA 2011) (denying dismissal of tortious interference claim because "an allegation that the defendant was not acting on the employer's behalf or was acting to its detriment satisfies the 'third party' requirement").

As alleged in the Complaint, Harvey and Sutherland repeatedly acted solely in their own self interest and to WorkCentric's obvious detriment, most egregiously, by contriving invoices to gratuitously divert WorkCentric's money to themselves and to other entities they owned – forcing WorkCentric to breach several contracts <u>in addition</u> to losing more than $1 million. (Doc. 60 ¶¶ 154-75, 247; Doc. 60-11.) This is paradigmatic tortious interference that destroys the qualified privilege Sutherland and Harvey assert. *See, e.g.*, *O.E. Smith's Sons, Inc.*, 545 So. 2d at 298-99; *Sloan v. Sax*, 505 So. 2d 526, 528 (Fla. 3d DCA 1987) (finding no privilege where employee induced corporation's breach because of employee's personal animosity toward counter-party); *In re Zohar III, Corp.*, 631 B.R. 133, 167 n.142 (Bankr. D. Del. 2021) (citing *Navarro v. Fiorita*, 271 A.D. 62, 62 N.Y.S.2d 730 (App. Div. 1946), *aff'd,* 296 N.Y. 783, 71 N.E.2d 468 (1947) ("A corporate officer engaged in converting corporate assets is not 'acting generally within the scope of his authority'; and if his action wrongs not merely his principal but also a third party, the third party should be entitled to a remedy.")).

Indeed, the Complaint specifically alleges: "This interference was undertaken in bad faith for Harvey and Sutherland's personal benefit, was outside the scope of any agency relationship with the Entity Defendants, and was otherwise without privilege or defense." (Doc. 60 ¶ 249.) These allegations, as well as other allegations of Harvey

81990501;4

and Sutherland's self-enrichment at WorkCentric's expense (Doc. 60 ¶ 248), create at least a question of fact whether the two were acting "with ulterior purposes and without an honest belief that [their] actions would benefit" WorkCentric. *Cox*, 732 So. 2d at 1099; *see Paragon Ins. Holdings, LLC*, 2025 WL 1370178, at *3. As such, the Court should not grant the Motion based on Sutherland and Harvey's unsupported assertion of privilege. *See Abele* 750 So. 2d at 75.

## B.    The Complaint Sufficiently Alleges Interference

Second, Sutherland and Harvey argue the Complaint "fails to plead that the contracts were actually interfered-with." (Doc. 68 at 19.) This argument is an attempt to re-write WorkCentric's contracts with SUNZ, which should be summarily rejected.

At the threshold, Sutherland and Harvey are precluded from challenging whether WorkCentric breached its contracts with SUNZ, because the Bankruptcy Court for the District of Delaware ("Bankruptcy Court") has already concluded that it did. (Doc. 60 ¶ 167; *see* Doc. 28-6 at 84-85.) Issue preclusion "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to [a] prior judgment.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001)). This preclusion applies against parties that "have had a full and fair opportunity to litigate" the issue in a prior action. *Id.* (quoting *Montana v. United States*, 440 U.S. 147, 153-54 (1979)). To that end, even if a party was not named as a litigant in the prior action, issue preclusion nonetheless applies against them if they "were adequately represented by someone with the same

81990501;4

interests who [wa]s a party" or if they "assume[d] control over the" prior litigation. *Id.* at 894-95 (internal quotations omitted) (alternation in original).

In the Bankruptcy Action, Sutherland and Harvey had a full and fair opportunity to litigate WorkCentric's breach of its contracts with SUNZ. Attorney Seidel, prior counsel for all Defendants in this action, including Sutherland and Harvey, appeared in the Bankruptcy Action purportedly on behalf of WorkCentric but in reality representing the interests of "former management" *i.e.*, Sutherland and Harvey. (*See generally* Doc. 28-6.) Thus, even if not technically named, Sutherland and Harvey "assumed control" of Seidel's litigation of the Bankruptcy Action on behalf of WorkCentric's former management or were "adequately represented" by Seidel's litigation on behalf of former management. *Taylor*, 553 U.S. at 894-95.

Seidel argued extensively against the conclusion that WorkCentric had breached any agreement with SUNZ, a condition precedent to SUNZ's appointment of a new manager of WorkCentric. (*Id.* at 61-66.) The Bankruptcy Court rejected that argument and expressly held WorkCentric had committed several breaches, allowing SUNZ to replace the manager of WorkCentric and the other Entity Defendants. (*Id.* at 82-85; Doc. 60-13.) After an unsuccessful appeal, that conclusion is now incorporated in a final order expressly preserved by the Bankruptcy Court. (Doc. 60-15.) Having exercised their full and fair opportunity to litigate breach, and lost, Sutherland and Harvey are precluded from now attempting to re-litigate whether WorkCentric breached its agreements with SUNZ.

81990501;4

Even ignoring the Bankruptcy Court's preclusive conclusion that WorkCentric breached its contracts with SUNZ, the Complaint plainly alleges such breaches and alleges how Sutherland and Harvey's interference caused such breaches. (Doc. 60 at 29-33.) Pertinently, the interference caused a breach of the Forbearance Agreement and Pledge Agreement, which are specifically discussed in Count X as those agreements incorporate the obligations of all other agreements, but also caused independent breaches of other underlying agreements as alleged in the factual paragraphs and exhibits incorporated into Count X. (*Id.*, ¶¶ 151-59, 241.)

On this point, the Motion's claim that "the Forbearance Agreement provision … puts no obligation at all upon WorkCentric" (Doc. 68 at 20) rests on an incorrect interpretation of that contract. Contrary to their assertions, the Forbearance Agreement plainly confers additional rights upon SUNZ and provides that "any breach of any promise or covenant by the Obligors contained in" the Forbearance Agreement constitutes a default of the Forbearance Agreement. SUNZ's agreement to forbear so long as WorkCentric refrained from "transfer[ing] any of the Collateral to any third party, outside the ordinary course of … business," is a bargained-for exchange and thus a covenant in the Forbearance Agreement, and WorkCentric's failure to satisfy that covenant constitutes a breach.

Even if the Transfers merely terminated the forbearance period, the Forbearance Agreement further provides that WorkCentric's debt to SUNZ, in excess of $25 million, immediately became due and owing upon that termination. (Doc. 60-10 at 8.) Thus, by forcing the Transfers, Sutherland and Harvey knew they would

15

immediately terminate the Forbearance Agreement while simultaneously knowing

WorkCentric would just as immediately default on its admitted and owing debt to

SUNZ. Thus, Sutherland and Harvey independently interfered with the contractual

relationship by causing WorkCentric to default on its admitted debt to SUNZ upon

the termination of the forbearance period. (*See* Doc. 28-6 at 85 ("But, in addition, the

termination of the forbearance agreement, when it did occur, constituted a default,

provided that there was no more forbearance of the defaults that had already occurred

in the transaction documents.").)

Moreover, the Transfers independently caused WorkCentric to breach other

agreements with Sunz, including the Security Agreements, which prohibit disposition

of collateral without SUNZ's prior written consent (Doc. 60-3 at 7), and the Loss Fund

Management Agreement, which required WorkCentric to maintain the Loss Fund

balance. (Doc. 60-2 at 6.) Again, this conduct caused a breach of both the specific

underlying agreements and the Forbearance Agreement and Pledge Agreement, which

incorporate the obligations imposed by the those underlying agreements. (*See, e.g.*,

Doc. 60-10 at 9 (defining a default as "the breach of any promise or covenant … in

this Agreement or the Transaction Documents").

Similarly, the Transfers independently breached the Pledge Agreement, which

prohibits WorkCentric from selling or disposing of the Pledged Collateral, defined to

include "all distributions, … income, profits and other property, interests or proceeds

from time to time receivable, received or otherwise distributed or owing to the Pledgors

in respect of … the Pledged Interests." (Doc. 60-10 at 19.) In other words, the Pledged

Collateral includes any distributions made to WorkCentric's owners. As the Complaint alleges, Sutherland and Harvey contrived a basis – well outside the ordinary course of business – to transfer WorkCentric's assets to Sutherland (its beneficial owner) and secret those assets from creditors through another entity owned by Sutherland but unaffiliated with WorkCentric. As such, the money transferred to Two Baboons constitutes property or proceeds "transferred … in respect of," Sutherland's ultimate beneficial ownership of WorkCentric, that is, Pledged Collateral. The disposition of that Pledged Collateral breached the Pledge Agreement.[3]

Finally, in insisting the Complaint fails to allege interference with a contract, the Motion focuses exclusively on the October 2023 transfers and ignores the other allegations of Sutherland and Harvey's interference. Most notably, the Complaint also alleges Defendants barred SUNZ and its collateral agents from accessing records necessary for the collection of SUNZ's collateral. (Doc. 60, ¶¶ 158-59.) This conduct caused WorkCentric to breach the Security Agreements, which permit SUNZ to access precisely those documents in furtherance of collecting its collateral after a default. (Doc. 60-3 at 10.) Similarly, the Complaint alleges Sutherland and Harvey continually diverted WorkCentric's money to themselves and entities under their control, causing WorkCentric's repeated breaches of the underlying contracts. (Doc. 60, ¶ 90.)

---

[3] To this end, Sutherland and Harvey functionally concede they cannot challenge this allegation on a motion to dismiss and instead attempt to preempt "later" arguments regarding the Pledge Agreement. (Doc. 68 at 21 n.5.) In doing so, however, the Motion mischaracterizes SUNZ's interpretation of the Pledge Agreement. The Transfers were not the regular payment of normal invoices. Rather, they were an end-run distribution hidden in the random payment of purported years-old invoices submitted by a company owned by the (at the time) beneficial owner of WorkCentric. At the very least, Sutherland and Harvey's dispute whether the Transfers constituted "Pledged Collateral" is a question of fact.

17

In sum, the Complaint alleges in detail how Sutherland and Harvey repeatedly operated WorkCentric in their own self-interest and to WorkCentric's detriment, which caused WorkCentric to breach its contracts with SUNZ and necessarily damaged SUNZ (by at least the $1.2 million Sutherland and Harvey pilfered from WorkCentric in October 2023). Thus, Count X states a claim.

## III. The Claims Against the Entity Defendants are Justiciable.

Finally, Sutherland and Harvey insist the claims against the Entity Defendants should be dismissed because there is "no justiciable case or controversy." (Doc. 68 at 21-22.) At the threshold, it is unclear what interest Sutherland and Harvey could assert with respect to claims against other defendants.[4] Even if the Court countenances this argument, however, it is incorrect.

Cases are dismissed for lack of adversity where one party, usually a governmental entity, expresses a manifest "lack of interest in defending" the action. *Diamond v. Charles*, 476 U.S. 54, 63-64 (1986). For example, in *Johnson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 719 F.3d 601 (7th Cir. 2013), a "Michigan state court" ordered "a freeze on distributions" from the plaintiff's pension account. *Id.* at 602. The plaintiff then sued Merrill Lynch, the account's custodian, in federal court and sought an injunction ordering Merrill Lynch to distribute money to the plaintiff because her pension account was "exempt from garnishment." *Id.* Merrill Lynch agreed the

---

[4] Here, the Motion demands too much of *Altadis USA ex rel. Gulf Life Ins. Co. v. NPR, Inc.*, 2004 WL 444539, at *2 (M.D. Fla. Feb. 5, 2004). (Doc. 68 at 21.) In *Altadis*, one defendant moved to dismiss the entire action and argued the Court lacked admiralty jurisdiction. *Altadis* offers no support for the implicit insistence a party may challenge the Court's jurisdiction over claims not asserted against it.

81990501;4

plaintiff's account was exempt from garnishment and agreed the plaintiff would receive distributions but for the express order of the Michigan state court. *Id.* Thus, the Seventh Circuit affirmed dismissal for lack of justiciability because the plaintiff's "injury is fairly traceable to a Michigan state court order, *and not the defendant*." *Id.* (emphasis in original).

Unlike in *Johnson*, nothing here suggests the Entity Defendants' "lack of interest in defending" the claims against them. *Diamond*, 476 U.S. at 63-64. SUNZ alleges the Entity Defendants have breached several contracts and thus owe SUNZ not less than $25,800,582.90. (Doc. 60-10 at 8.) The Entity Defendants deny both liability for breach and damages. (Doc. 67.) This is not a case where the Entity Defendants agree with SUNZ on all issues and stand ready and willing to satisfy any judgment.[5] Instead, the claims against the Entity Defendants plainly assert a concrete, adverse controversy.

The adversity is not removed by SUNZ's exercise of its rights under the Pledge Agreement to appoint an independent entity, WorkCentric 1, LLC, as the manager of each entity defendants. Simply put, with respect to this litigation, SUNZ and the Entity Defendants are adverse. SUNZ's contractual relationship with WorkCentric 1 and prior judicial recognition of the Entity Defendants' liability does not preclude SUNZ from reducing its claims to judgment, and the Entity Defendants' are entitled to

---

[5] Even if the Entity Defendants conceded liability, the claims against them would still present a justiciable controversy. First, as discussed above, SUNZ maintains that all parties – especially the Entity Defendants – are precluded from attempting to re-litigate whether the Entity Defendants breached their contracts with SUNZ. *Supra*, § II.B. Thus, conceding liability here would simply be a prudent response to overwhelming, preclusive evidence of that liability. And even if liability were conceded, issues regarding damages and the specifics of any judgment, including attorney's fees, terms of payment and interest, and the satisfaction of such judgment, would still remain disputed.

81990501;4

dispute those claims to the extent possible (subject, most obviously, to the preclusive effect of the Bankruptcy Court's prior final order). Thus, the claims against the Entity Defendants are justiciable and invoke the Court's limited subject matter jurisdiction.

## CONCLUSION

Because Sutherland and Harvey's arguments fail, the Court should deny the Motion. To the extent the Court concludes any claim should be dismissed, SUNZ requests leave to amend to address such conclusion.

Date:  June 30, 2025

Respectfully submitted,

*/s/ Jason L. Margolin*
**JASON L. MARGOLIN, ESQ.**
Florida Bar No. 69881
Lead Trial Counsel
jason.margolin@akerman.com
**KEENAN MOLASKEY, ESQ.**
Florida Bar No. 1031827
keenan.molaskey@akerman.com
**AKERMAN LLP**
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
Phone:  (813) 223-7333
*Counsel for Plaintiff*

81990501;4