UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SUNZ INSURANCE SOLUTIONS, LLC,

    Plaintiff,

v.                                        Case No. 8:23-CV-2517-SDM-CPT

DOCKS SUTHERLAND, ET AL.,

    Defendants.
_____

**JOINT MOTION OF DEFENDANTS DOCKS SUTHERLAND
AND DAVID HARVEY TO DISMISS ALTSCHULER CROSSCLAIMS**

Defendants Docks Sutherland and David Harvey, through their undersigned counsel, hereby file this Motion to Dismiss Crossclaims pursuant to the Doctrine of *Forum Non Conveniens* and Rule 12(b)(6) of the Federal Rules of Civil Procedure, and in support thereof state as follows:

1. On June 10, 2025, Defendant Sheldon Altschuler ("Altschuler") filed his Answer and Affirmative Defenses to Amended Complaint and Crossclaim Against WorkCentric Defendants, Docks Sutherland, and David Harvey ("Crossclaims"). (ECF No. 69).

2. In his Crossclaims, Altschuler asserts three causes of action against Sutherland and/or Harvey:

    a. Count III – Fraudulent Misrepresentation;

    b. Count IV – Breach of Fiduciary Duty; and

    c. Count V – Equitable Indemnity.

3.  The central allegations of this case are discussed in detail in Defendants' pending Motion to Dismiss the Amended Complaint filed by Plaintiff SUNZ Insurance Solutions, LLC ("SUNZ")) (ECT No. 68). Altschuler, the former owner of the WorkCentric Entities, now cross-claims, asserting that he had signed a personal guarantee ("Guaranty") backstopping the WorkCentric Entities' agreements with SUNZ. (ECF No. 69 at ¶ 13–14.) He alleges that he later sold the WorkCentric Entities to Sutherland via an Agreement and Plan of Merger ("Merger Agreement") but that his Guaranty remained in effect.[1] (ECF No. 69 at ¶ 11.) Altschuler further alleges that "[A]t all relevant times, Sutherland and Harvey assured Altschuler (1) that he was responsible only in his capacity as the Seller's Representative for the WorkCentric Entities, and (2) that, in any event, there were sufficient assets and revenues of the WorkCentric Entities to satisfy any debt or obligation of the WorkCentric Entities." (ECF No. 69 at ¶ 15.)

4.  Altschuler alleges that on October 5, 2023, SUNZ demanded payment upon his Guaranty. (ECF No. 69 at ¶ 18.) Now, Altschuler alleges under the legal theories described above, that Defendants Sutherland and Harvey are functionally liable to him for his own personal guarantee.

5.  All of Altschuler's Crossclaims as to Defendants Sutherland and Harvey must be dismissed pursuant to the doctrine of *forum non conveniens* because the Merger Agreement contains a mandatory choice of forum in Delaware.

---

[1] In reality, as described below, Altschuler did not sell the WorkCentric Entities to Sutherland personally.

2

6. Count III for fraudulent misrepresentation must be dismissed because: (1) Altschuler fails to plead with particularity as required be Fed. R. Civ. P. 9(b); (2) Altschuler has failed to plead the elements of fraudulent misrepresentation; and (3) the Merger Agreement and Guaranty are each fully integrated agreements and therefore Altschuler could not have relied on outside representations.

7. Count IV for breach of fiduciary duty must be dismissed because there is no fiduciary relationship between Altschuler and these Defendants.

8. Count V for equitable indemnity must be dismissed because (1) Altschuler has not pleaded the existence of a special relationship giving rise to indemnity obligations; (2) Altschuler's liability is not vicarious or technical, but instead is a direct result of his choice to sign the Guaranty; and (3) his claim is not yet ripe because there is no judgment entered against him.

WHEREFORE, Sutherland and Harvey respectfully request that this Honorable Court enter an order granting Defendants' Motion to Dismiss. Further, and in support of this Motion, the Defendants refer this Honorable Court to the Memorandum of Law attached hereto and by reference made part hereof.

## MEMORANDUM OF LAW

**I. INTRODUCTION**

Altschuler's threadbare Crossclaims against Defendants Sutherland and Harvey are a transparent but failed attempt to reallocate, after the fact, the consequences of a personal guarantee he knowingly and voluntarily executed. In doing so, he seeks to shift his own contractual liability to the very parties who acquired his business: parties

with whom he negotiated and documented an arms-length transaction governed by a fully integrated Merger Agreement. That Agreement includes a mandatory Delaware forum selection clause that Altschuler now attempts to sidestep by asserting vague and conclusory claims in a Florida federal court.

The Crossclaims fail as a matter of law and should be dismissed on two independent grounds. First, under the doctrine of *forum non conveniens*, the Court must enforce the Merger Agreement's mandatory preselected forum of Delaware. Altschuler's allegations arise entirely out of that Agreement, and no extraordinary circumstances justify disregarding the parties' chosen forum. Second, each of the Crossclaims is facially deficient under Rule 12(b)(6): (i) the fraudulent misrepresentation claim fails to meet Rule 9(b)'s heightened pleading standard and, by any standard, fails to adequately plead the elements of such a claim, and further is barred by the contract's integration clause; (ii) the fiduciary duty claim invents a fiduciary relationship the contract expressly disclaims; and (iii) the equitable indemnity claim is similarly inadequately pleaded and unripe.

The Court should not indulge Altschuler's attempt to reallocate his own contractual obligations as tort liability or to circumvent a binding forum selection clause. His Crossclaims should be dismissed in their entirety.

## II.  BACKGROUND

### A.  Factual Allegations

The Court is familiar with the facts of the case by virtue of Defendants' pending motion to dismiss SUNZ's Amended Complaint. (*See* ECF No. 68.) Defendants'

recitation of the background facts as alleged in the Amended Complaint and the Crossclaims will, accordingly, be brief. Defendants take these allegations as true, as they must, solely for purposes of this Motion to Dismiss.

Plaintiff SUNZ had a business relationship with Defendants Embraceor, LLC, WorkCentric, LLC, WorkCentric 2, LLC, and WorkCentric 3, LLC (collectively "WorkCentric Entities" or "WorkCentric") whereby SUNZ acted as their Managing General Agent ("MGA") with respect to workers' compensation insurance policies. (ECF No. 60 at ¶¶ 34–35.) WorkCentric is a professional employer organization ("PEO"). (ECF No. 60 at ¶ 37.) The insurance arrangement included a large deductible component, whereby WorkCentric assumed responsibility for the first $500,000 of each workers' compensation claim. (ECF No. 60 at ¶¶ 60–83.) To secure this obligation, WorkCentric agreed to maintain a "Loss Fund" from which SUNZ would pay claims within the deductible layer. (ECF No. 60 at ¶¶ 63–64.) The Loss Fund was to be derived from a formula involving a multiple of open case reserves and incurred expenses. (ECF No. 60 at ¶ 74.)

While Altschuler still owned WorkCentric, SUNZ alleges that Altschuler signed the Guaranty.[2] (*See* ECF No. 60 at ¶ 52; ECF No. 60-4.) The Guaranty made Altschuler a surety to SUNZ "for the full, prompt and unconditional payment of all Liabilities" under the parties' agreements. (ECF No. 60-4 at 1.)

---

[2] The Guaranty is undated, and neither Sutherland nor Altschuler are parties to it. However, SUNZ is clear in its Amended Complaint that the document was signed while Altschuler still owned WorkCentric, and Altschuler fails to allege otherwise.

5

Altschuler incorrectly asserts that "in August 2021, Altschuler sold his interest in the WorkCentric Entities to Sutherland through an Agreement and Plan of Merger."[3] (ECF No. 69 at ¶ 11.) He alleges that as a result of the sale, he "temporarily remained involved with the business of the WorkCentric Entities as an employee and remained personally responsible for certain debts and obligations of the WorkCentric Entities," an example of which is the Guaranty he had executed. (ECF No. 69 at ¶¶ 12–13.)

Altschuler alleges, without identifying any specific statement given at any particular time, by any particular means, that Sutherland and Harvey collectively "assured" him that "(1) that he was responsible only in his capacity as the Seller's Representative for the WorkCentric Entities, and (2) that, in any event, there were sufficient assets and revenues of the WorkCentric Entities to satisfy any debt or obligation of the WorkCentric Entities." (ECF No. 69 at ¶ 15.)

Altschuler alleges that Sutherland and Harvey "mismanaged the business of the WorkCentric Entities, caused the WorkCentric Entities to fail to pay critical obligations, and diverted revenues and assets to their own ends, in violation of the Agreement and Plan of Merger and related agreements and their fiduciary obligations." (ECF No. 69 at ¶ 17.)

---

[3] Again, WorkCentric LLC was in fact transferred from Altschuler and merged into WC Merger Sub 1 LLC (a subsidiary of Defendant WC TOPCO LLC) by virtue of an August 14, 2021 Agreement and Plan of Merger. (*See* Exhibit A.)

Altschuler alleges that on October 5, 2023, SUNZ demanded payment from him under the Guaranty, in the amount of over $42 million, based on the assertion that the WorkCentric Entities had failed to meet their obligations. (ECF No. 69 at ¶ 18.)

### B. Altschuler's Crossclaims

Altschuler seeks to hold Sutherland and Harvey liable for the Guaranty he alone signed. In service of this goal he brings three cross-claims against Sutherland and Harvey:

#### 1. Count III: Fraudulent Misrepresentation

Altschuler alleges that "Sutherland and Harvey made false representations to Altschuler regarding the financial stability and ability of the WorkCentric Entities to meet their obligations, including those arising out of their agreements with Sunz." (ECF No. 69 at ¶ 30.) Altschuler alleges that he relied on these purported representations "when agreeing to enter into the Agreement and Plan for Merger and other agreements, including the Guaranty." (ECF No. 69 at ¶ 31.) He alleges that Defendants knew or should have known that the representation was false, and that he has suffered damages in the form of amounts owed under the Guaranty. (ECF No. 69 at ¶¶ 32–33.)

#### 2. Count IV: Breach of Fiduciary Duty

Altschuler alleges that Sutherland and Harvey owed him fiduciary duties "arising out of their relationship as business successors under the Agreement and Plan of Merger, and due to their access to and control over assets and obligations for which Altschuler allegedly remained personally liable." (ECF No. 69 at ¶ 35.) Altschuler

7

alleges that Defendants breached these duties by "engaging in acts of self-dealing, misappropriation of business funds, failure to meet financial obligations, and abandonment of the WorkCentric Entities." (ECF No. 69 at ¶ 36.) Finally, Altschuler alleges only that he "has suffered actual damages," without further detail. (ECF No. 69 at ¶ 37.)

### 3. Count V – Equitable Indemnity

Altschuler's threadbare equitable indemnity count consists of the following three paragraphs:

> 38. Altschuler incorporates paragraphs 1 through 20 as if fully set forth herein.
>
> 39. Altschuler is entitled to equitable indemnity from Sutherland and Harvey for liabilities and obligations incurred solely due to Sutherland's and Harvey's misconduct and breach of obligations related to the WorkCentric Entities.
>
> 40. Altschuler has incurred, and will continue to incur, financial harm as a result of claims being asserted by third parties based on the debts Sutherland and Harvey failed to pay.

(ECF No. 69 at ¶¶ 38–40.)

## III. THE CROSSCLAIMS MUST BE DISMISSED PURSUANT TO A MANDATORY CHOICE OF FORUM

Altschuler's claims plainly arise out of the Merger Agreement, and though he does not attach that agreement, it requires that any suit be brought exclusively in the

courts of the State of Delaware.[4] (Ex. A at § 11.11.) The Crossclaims therefore must be dismissed pursuant to the doctrine of *forum non conveniens.*

### A.  Altschuler's Claims Arise Out of the Merger Agreement

There can be no question that Altschuler's claims arise from the Merger Agreement. Indeed, the Merger Agreement is the sole document that Altschuler points to that governs the relationship between him and WorkCentric. Further, each of the claims clearly relates to the Merger Agreement:

- Altschuler's Count III for fraudulent misrepresentation is expressly premised on Altschuler's purported reliance on representations when entering into the Merger Agreement. (ECF No. 69 at ¶ 31.)

- Altschuler's Count IV for breach of fiduciary duty alleges (incorrectly) that the purported fiduciary duty arose from the Merger Agreement. (ECF No. 69 at ¶ 35.)

---

[4] The provision provides, in relevant part, that:

> THE PARTIES SUBMIT TO THE EXCLUSIVE JURISDICTION OF THE STATE COURTS LOCATED IN DELAWARE OR THE COURTS OF THE UNITED STATES LOCATED IN DELAWARE IN RESPECT OF THE INTERPRETATION AND ENFORCEMENT OF THE PROVISIONS OF THIS AGREEMENT AND, EXCEPT AS OTHERWISE PROVIDED THEREIN, ANY RELATED AGREEMENT, CERTIFICATE OR OTHER DOCUMENT DELIVERED IN CONNECTION HEREWITH AND BY THIS AGREEMENT WAIVE, AND AGREE NOT TO ASSERT, ANY DEFENSE IN ANY ACTION FOR THE INTERPRETATION OR ENFORCEMENT OF THIS AGREEMENT AND ANY RELATED AGREEMENT, CERTIFICATE OR OTHER DOCUMENT DELIVERED IN CONNECTION HEREWITH, THAT THEY ARE NOT SUBJECT THERETO OR THAT SUCH ACTION MAY NOT BE BROUGHT OR IS NOT MAINTAINABLE IN SUCH COURTS OR THAT THIS AGREEMENT MAY NOT BE ENFORCED IN OR BY SUCH COURTS OR THAT THEIR PROPERTY IS EXEMPT OR IMMUNE FROM EXECUTION, THAT THE ACTION IS BROUGHT IN AN INCONVENIENT FORUM, OR THAT THE VENUE OF THE ACTION IS IMPROPER.

(Ex. A at § 11.11.)

- Altschuler's Count V for equitable indemnity alleges that his entitlement to indemnity arises from the parties' relationship to the WorkCentric entities, which is again governed by the Merger Agreement. (ECF No. 69 at ¶ 39.) Further, as demonstrated below, the equitable indemnity claim is preempted by the Merger Agreement.

Therefore, each of Altschuler's claims relates to and requires interpretation of the Merger Agreement, and is governed by the Merger Agreement.[5]

### B. The Court Must Dismiss for *Forum Non Conveniens*

Generally, a party seeking dismissal for *forum non conveniens* must show (1) an adequate alternative forum is available; (2) the public and private factors weigh in favor of dismissal; and (3) that the plaintiff may reinstate their suit in the alternative forum without prejudice.[6] *Lightning Partners*, 2022 WL 485228 at *2. However, where there is a valid forum selection clause, "the calculus changes" and "'the party defying the forum selection clause' 'has the burden of establishing that transfer to the forum for which the parties bargained [or dismissal] is unwarranted.'" *Id*. (quoting *Atl.*

---

[5] Notably, Altschuler incorrectly pleads that he sold WorkCentric to Sutherland himself. (ECF No. 69 at ¶ 11.) However, even if Altschuler corrects himself and argues that Sutherland and Harvey are nonparties to the Merger Agreement and are therefore not entitled to enforce the forum selection clause, this would be unavailing because corporate affiliates such as Sutherland and Altschuler are permitted to invoke forum selection clauses. *See HNA LH OD, LLC v. Loc. House Int'l, Inc.,* 2021 WL 4459404, at *5 (S.D. Fla. Sept. 29, 2021) ("each Defendant is an affiliate and the non-signatories may invoke the forum-selection clause."); *CDK Ventures LLC v. Al Monserrat*, 2023 WL 11885840, at *2 (S.D. Fla. Feb. 27, 2023) (holding that corporate officer can enforce forum selection clause.)

[6] Where, as here, the parties' choice of forum permits filing in either state or federal court, the proper vehicle for a motion to enforce such choice of forum is by dismissal for *forum non conveniens* rather than a motion to transfer. *See Lightning Partners, Inc. v. SPS Com., Inc.,* 2022 WL 485228, at *2 (M.D. Fla. Feb. 17, 2022) (citing *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. Of Texas*, 571 U.S. 49, 61 (2013)) (granting motion to dismiss).

*Marine*, 571 U.S. at 63). Also, the private interest factors are deemed "to weigh entirely in favor of the preselected forum" because "when parties agree to a forum-selection clause, they waive the right to challenge a preselected forum as inconvenient or less convenient for themselves or their witnesses, or for the pursuit of the litigation." *Id.* (cleaned up). In sum, "[o]nly under extraordinary circumstances unrelated to the convenience of the parties should a court decline to enforce a forum selection clause." *Stiles v. Bankers Healthcare Grp., Inc.*, 637 F. App'x 556, 562 (11th Cir. 2016) (quoting *Atl. Marine*, 134 S.Ct. at 581–83).

Here, no such extraordinary circumstances exist. Even if Altschuler were to argue that it would be inconvenient for him to file his claims separately in one of the *fora* preselected by the parties, this would not be sufficient to overcome the forum selection clause. *See Geico Marine Ins. Co. v. Amzim Marine Servs., LLC*, 641 F. Supp. 3d 1292, 1304 (M.D. Fla. 2022) ("It is axiomatic that related claims should proceed in the same forum. However . . . the interests of efficiency do not outweigh the presumption in favor of enforcing the forum selection clause.").

## IV. THE CROSSCLAIMS MUST BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must "accept the *factual* allegations in the Complaint as true and construe them in the light most favorable to the plaintiff."

11

*Turner v. Williams*, 65 F.4th 564, 577 (11th Cir. 2023) (cleaned up). "However, 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.'" *Id*. (quoting *Iqbal*, 556 U.S. at 678). A court requires "more than labels and conclusions," and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (cleaned up).

> **A.  Altschuler's Claim for Fraudulent Misrepresentation Must Be Dismissed (Count III)**
>
> **1.  Altschuler Fails to Plead with Particularity**

Altschuler fails to identify any specific purported misrepresentation with particularity. Because particularity is required under Fed. R. Civ. P. 9(b), the claim must be dismissed. Rule 9(b) requires a plaintiff to plead: "(1) precisely what statements were made in what documents or oral representations or what omissions were made;" "(2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) [it];" "(3) the content of such statements and the manner in which they misled the plaintiff," and "(4) what the defendants obtained as a consequence of the fraud." *Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1223 (S.D. Fla. 2010) (quoting *Ziemba v. Cascade Int'l Inc.*, 256 F.3d 1194, 1202 (11th Cir.2001)).

Here, Altschuler has pleaded none of these things. He has (1) failed to plead any specific oral or written representations, (2) failed to plead the time and place of any representation or which of the Defendants allegedly made it; (3) failed to allege the

specific content of any such representation and how it misled him; and (4) failed to allege that Defendants obtained anything as a result of the fraud. Instead of alleging facts reflecting the actual statements he alleges Defendants made, he describes only his own interpretations and the conclusions that he drew from those alleged statements (*i.e.* the financial performance of the WorkCentric Entities). Because this utterly fails to meet the Rule 9(b) standard, this claim must be dismissed.

### 2. Altschuler Has Not and Cannot Plead the Elements of Fraudulent Misrepresentation

Altschuler has not and cannot plead the elements of fraudulent misrepresentation. Fraudulent misrepresentation requires: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Douse v. Bos. Sci. Corp.*, 314 F. Supp. 3d 1251, 1262 (M.D. Fla. 2018) (quoting *Butler v. Yusem*, 44 So.3d 102, 105 (Fla. 2010)).

First, Altschuler has not pleaded a false statement of a material fact. At best, Altschuler pleads that the Defendants made statements about the future financial performance of the WorkCentric Entities. However, as a matter of law, future-looking statements are not actionable for purposes of a fraudulent misrepresentation claim. *See Cavic v. Grand Bahama Dev. Co.,* 701 F.2d 879, 883 (11th Cir. 1983) ("to constitute actionable fraud, a false representation must relate to an existing or pre-existing

13

fact. . . . a promise of future action or a prediction of future events cannot, standing alone, be a basis for fraud because it is not a representation. . . .").

Second, Altschuler fails even to attempt alleging that Defendants had any intention to induce him to act upon any representation.

Third and finally, Altschuler has failed to plead how he actually relied on anything Defendants represented to him. And, indeed, here, he cannot plead that he relied on outside representations in executing the Merger Agreement. *See Francois v. Hatami,* 565 F. Supp. 3d 1259, 1267 (S.D. Fla. 2021) (quoting *Colite Int'l v. Robert L. Lipton, Inc.*, 2006 WL 8431505, at *12 (S.D. Fla. Jan. 20, 2006) ("a plaintiff 'cannot justifiably rely on representations that explicitly contradict provisions in a subsequently drafted contract.")) Here, the Merger Agreement contains an integration clause stating that it is the "complete agreement, between and among the Parties and supercede[s] any prior understandings, agreements or representations by, between or among the Parties, written or oral, which may have related to the subject matter hereof in any way." (Ex. A at § 11.08.) The Guaranty similarly contains an integration clause. (*See* ECF No. 60-4 at ¶ 6(B).) Therefore, Altschuler cannot have relied on any outside statements in executing the Merger Agreement. Accordingly, even if Altschuler could identify a specific misrepresentation, his reliance on it would be foreclosed as a matter of law.

### B. Altschuler's Claim for Breach of Fiduciary Duty Must Be Dismissed (Count IV)

Altschuler has failed to plead the existence of any fiduciary duty owed to him by Defendants. To state a claim for breach of fiduciary duty, a plaintiff must plead: (1) the defendant owed a fiduciary duty to the plaintiff; (2) the defendant breached that duty; and (3) the plaintiff suffered damages proximately caused by the defendant's breach. *Tifer v. New York Life Ins. Co.*, 2019 WL 3254640, at *2 (M.D. Fla. July 18, 2019). Contract parties do not generally owe each other fiduciary duties. *See id.* (holding, for example, that insurance carriers owe no fiduciary duties to their insureds). In fact, here, the Merger Agreement specifically disclaims any such relationship, providing that "all Parties to this Agreement specifically acknowledge that no Party has any special relationship with another Party that would justify any expectation beyond that of an ordinary Parent and an ordinary seller in an arm's-length transaction." (Ex. A at § 11.08.) Therefore, because no fiduciary relationship exists and the Merger Agreement disclaims such duties, Altschuler's breach of fiduciary duty claim must be dismissed.

### C. Altschuler's Equitable Indemnity Claim Must Be Dismissed (Count V)

A claim for equitable indemnity requires a party to "allege that he is without fault, that another party is at fault, and that a special relationship between the two parties makes the party seeking indemnification vicariously, constructively, derivatively, or technically liable for the acts or omissions of the other party." *Tsafatinos v. Fam. Dollar Stores of Fla., Inc.*, 116 So. 3d 576, 581 (Fla. Dist. Ct. App.

2013). However, here, Altschuler does not even attempt to plead the existence of any special relationship, nor could he, given the express disclaimer in Section 11.08 of the Merger Agreement, and so the Court must dismiss this claim out of hand. Further, Altschuler's potential liability is not vicarious or technical (and he does not allege as such); it is instead a direct liability that he incurred by virtue of his voluntary execution of the Guaranty.

Finally, Altschuler's equitable indemnity claim must be dismissed because such a claim does not accrue "until a judgment has been rendered against an indemnitee." *Garcia v. Myrtil*, 404 So. 3d 436, 438 (Fla. Dist. Ct. App. 2023). Therefore, this claim is unripe and must be dismissed.

## V.    CONCLUSION

For the foregoing reasons, this Honorable Court should enter an order dismissing Defendant Altschuler's Crossclaim Counts III, IV, and V with prejudice pursuant to the doctrine of *forum non conveniens* and Rule 12(b)(6).

Dated: June 30, 2025                                   Respectfully Submitted,

/s/ _____***Matthew R. Lasky, Esq.***_____

**Thomas J. Francella, Jr., Esquire**
Florida Bar No. 37479
**Scott M. Hare, Esquire**
(Admitted *Pro Hac Vice*)
**Matthew R. Lasky, Esquire**
(Admitted *Pro Hac Vice*)

16

        RAINES FELDMAN LITTRELL LLP
        433 Plaza Real, Suite 275
        Boca Raton, FL 33432
        T: (302) 772-5805

        TFrancella@raineslaw.com
        SHare@raineslaw.com
        MLasky@raineslaw.com

*Attorneys for Defendants Docks Sutherland and David Harvey*

**Certification of Compliance with Local Rule 3.01(g)**

Pursuant to Local Rule 3.01(g), undersigned counsel for Defendants Docks Sutherland and David Harvey hereby certifies that he conferred with counsel for Defendant Altschuler by email on June 29, 2025. The parties participated in good faith, but were unable to reach an agreement to resolve this Motion to Dismiss.

Dated: June 30, 2025                    Respectfully Submitted,

/s/_____**Matthew R. Lasky, Esq.**_____

**Thomas J. Francella, Jr., Esquire**
Florida Bar No. 37479
**Scott M. Hare, Esquire**
(Admitted *Pro Hac Vice*)
**Matthew R. Lasky, Esquire**
(Admitted *Pro Hac Vice*)

RAINES FELDMAN LITTRELL LLP
433 Plaza Real, Suite 275
Boca Raton, FL 33432
T: (302) 772-5805

TFrancella@raineslaw.com
SHare@raineslaw.com
MLasky@raineslaw.com

*Attorneys for Defendants Docks Sutherland and David Harvey*